IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

NORTHRUP GRUMMAN SHIP SYSTEMS,
NC., formerly known as INGALLS
SHIPBUILDING, INC.                                                                PLAINTIFF

VERSUS                                               CIVIL ACTION NO. 1:02cv785WJG-JMR

THE MINISTRY OF DEFENSE OF THE
REPUBLIC OF VENEZUELA, and
BANK OF NEW YORK                                                                  DEFENDANTS

MEMORANDUM OPINION

THIS CAUSE comes before the Court on the motions of the Defendant, The Ministry of Defense of the Republic of Venezuela [Venezuela] to vacate [68-1] the Court's order of dismissal dated October 4, 2005[1], and for leave to file a supplemental memorandum [107-1] in support of the motion to vacate. Also pending before the Court is a motion to dismiss [45-1] and a motion to compel arbitration [96-1] filed by Venezuela.

An order of dismissal was entered in this case after the parties apparently agreed to, and announced, a settlement of the case to the Court. (Ct. R., Doc. 65.) That order was subsequently amended on October 11, 2005, to address an issue concerning the Bank of New York [BONY]. (Ct. R., Doc. 66.) Venezuela submitted its motion to vacate the order of dismissal and the amended order of dismissal on October 19, 2005. (Ct. R., Doc. 68.) Richard F. Scruggs and David Zach Scruggs of the Scruggs Law Firm, P.A. [Scruggs Firm] were noticed with a copy of

---

[1]This includes the amended order of dismissal dated October 6, 2005.

the motion, (*Id.* p. 7), which includes allegations that Scruggs had no authority to announce a settlement of the suit on behalf of Venezuela. (*Id.*, p. 3.)

Venezuela claims that the settlement discussions which occurred on July 27, 2005, involved negotiations concerning Northrup Grumman's monetary claims and other non-monetary claims advanced by Venezuela. (Ct. R., Doc. 68, pp. 2-3.) Venezuela further states there was not a settlement of the case because there are other outstanding issues to resolve in the case. (*Id.*, p. 3.)

Northrup Grumman seeks to enforce the settlement agreement, arguing that the case centers around Northrup Grumman's claim for monetary damages and the settlement satisfies its claims. (Ct. R., Doc. 69, pp. 2-3.) Northrup Grumman contends that Venezuela has no other litigation claims against Northrup Grumman to be compromised in settlement and that Venezuela has no reason to seek an evidentiary hearing on the matter. (*Id.*, p. 3.)

Beginning in early 2004, Northrup Grumman and Venezuela began extensive discussions and negotiations to attempt a resolution of the disputes between the parties. (Ct., R., Doc. 69, p 4.) The Scruggs Firm contends that during September 2005, Richard Scruggs was contacted by Podhurst Orseck, P.A. [Podhurst Firm], which also represented Venezuela, to request that an effort be made to resolve the monetary issues between the parties as quickly as possible. (Ct. R. Doc. 79, p. 7.) The Scruggs Firm contends that both Richard Scruggs and the Podhurst Firm discussed and confirmed with Aquiles Mendez , the Venezuelan Government's outside counsel in Venezuela, the specific terms and settlement authority available to Richard Scruggs in his negotiations with Northrup Grumman.

Richard Scruggs participated in settlement discussions in which several "avenues of potential settlement" were discussed. (Ct. R., Doc. 79, p. 5.) Richard Scruggs avers that he made specific inquiry with the Attorney General of Venezuela through Mendez and others to reconfirm the parameters of his settlement authority. (*Id.*, pp. 6-7.) Richard Scruggs states that a monetary settlement was reached with Northrup Grumman within the parameters of the authority conveyed to him in a telephone conference with himself, Podhurst[2], Mendez and Steven Marks, an attorney with Podhurst. (Ct. R., Doc. 80, p. 4.) Copies of the settlement confirmations were sent to all parties, including Venezuela, when the agreements were reached on August 6, 2005. (*Id.*)

Venezuela filed the motion to vacate the order of dismissal pursuant to the alleged settlement, and to admit Ricardo M. Martinez-Cid, also a member of the Podhurst Firm, *pro hac vice* on October 19, 2005. (Ct. R., Docs. 67, 68.) Venezuela maintains that it is a foreign state under the Foreign Sovereign Immunities Act [FSIA], 28 U.S.C. § 1603(a). (Ct. R., Doc. 46, p. 11.) Gladys Maria Gutierrez Alvarado, Attorney General of the Bolivarian Republic of Venezuela, submitted an affidavit which contends that before the Republic of Venezuela can be bound to a settlement there must be express authorization from the Attorney General of Venezuela and written instruction from the Ministry of Defense. (Ct. R., Doc. 111, pp. 4, 6-8.)

Venezuela maintains that Venezuelan law should be applied in this suit, and that under Venezuelan law, express authority is required to empower an attorney to compromise and dispose of litigation rights. (Ct. R., Doc. 113, Exh. D.) Venezuela argues that Northrup

---

[2]Though unclear from the cited record, the Court presumes "Podhurst" is a reference to Aaron Podhurst, a member of the firm.

Grumman has not produced documents which confer settlement authority to Richard Scruggs as required under Venezuelan law. (Ct. R., Doc. 113, p. 8.) Venezuela asserts that none of the documents provided by Podhurst or Scruggs contain the requisite evidence of Richard Scruggs' authority to settle this matter. (*Id*.) Venezuela contends that a September 9, 2005, letter from Marks to the Venezuelan Attorney General does not constitute express written authority from the Attorney General or any other authorized official of Venezuela or its Ministry of Defense to enter the settlement. (*Id*., p. 9.) Any alleged authority conveyed via telephone from member of the Podhurst Firm and Mendez, a Venezuelan attorney in private practice, is also not sufficient to bind Venezuela to a settlement, according to Venezuela. (*Id*.)

The Scruggs Firm contends that under the choice-of-law rules, the rule of the forum state control a dispute over which law applies. (Ct. R, Doc. 112, p. 2.) The Scruggs Firm asserts that under Mississippi's choice-of-law rules, a lawsuit over a contract for legal services rendered in Mississippi applies Mississippi law. (*Id*.) The Scruggs Firm maintains that Venezuela's notice regarding choice-of-law issues is untimely. (*Id*., p. 1.)

The Scruggs Firm argues that even if Venezuela law applies, Richard Scruggs received express authority to settle the case on three different occasions from Venezuela, including Venezuela's December 4, 2004, "Power of Attorney"; its representative's telephone call to Richard Scruggs on September 9, 2005; and Marks' letter dated September 9, 2005, to the Venezuelan Attorney General. (Ct. R., Doc. 112, p. 2.)

Northrup Grumman asserts that Marks' conduct following the negotiation was consistent with the belief that a settlement was reached. (Ct. R., Doc. 109, p. 7.) Neither Marks nor any other Venezuelan attorney disavowed the settlement. (Ct. R., Doc. 69, p. 6.)

Discussion

I.  Lack of Jurisdiction

Venezuela maintains that the suit should be dismissed for lack of jurisdiction because it is a foreign sovereign. (Ct. R., Doc. 46, p. 11.) Under the FSIA, 28 U.S.C. § 1605, a district court has *in personam* jurisdiction over a foreign state only under certain circumstances. A nation is generally immune from suit in another nation's courts in matters arising from its public or sovereign acts, but not private or commercial acts. *Saudi Arabia v. Nelson*, 507 U.S. 349, 359-60 (1993). The FSIA outlines that this presumption of immunity erodes when the suit concerns the sovereign's commercial activities and transactions. 28 U.S.C. §§ 1602, 1604, 1605(a)(2). Contracts for the procurement of goods and services typically satisfy the commercial activity requirement of the FSIA. *See Walter Fuller Aircraft Sales, Inc. v. Republic of the Phil.*, 965 F.2d 1375, 1384-5 (5th Cir. 1992).

In order for this Court to exercise jurisdiction over this suit under the commercial activities exception, there must be a connection between Northrup Grumman's cause of action and the commercial activities of Venezuela. *See United States v. Moats*, 961 F.2d 1198, 1205-6 (5th Cir. 1992). This case centers around an alleged breach of contract for the performance of specified work on two frigates in accordance with specifications provided by Venezuela, supplying a direct connection between the cause of action and the commercial activity. (Ct. R., Doc. 1.) The Court, therefore, concludes that the motion to dismiss for lack of jurisdiction should be denied.

II. <u>Motion to Set Aside Order of Dismissal</u>

Venezuela maintains that its notice of intent to rely on foreign law outlines all of the requirements which would be necessary to bind it to a settlement. (Ct. R., Doc. 113.) Northrup Grumman has not submitted documentation which confers settlement authority under Venezuelan law to Richard Scruggs, according to Venezuela. (*Id.*, p. 8.) Venezuela asserts that the Court's order of dismissal dated October 4, 2005, should be vacated because Richard Scruggs lacked legal power to bind Venezuela to a settlement. (Ct. R., Doc. 68.) Venezuela further contends that under Venezuelan law, it can only be bound by agents acting within the scope of their actual express written authority. (Ct. R., Doc. 113, p. 2.) Venezuela contends that Richard Scruggs did not have the "express authorization of the Attorney General to enter into the settlement agreement. (*Id.*)

Venezuela argues that there were certain non-monetary terms, critical to the culmination of a settlement, which were neither addressed in the negotiations nor the monetary settlement which Northrup Grumman seeks to enforce. (Ct. R., Doc. 74, p. 2.) A mediation conference was held July 27, 2005, and other efforts were made to compromise the dispute including several meetings with the parties and a representative of the Venezuelan Attorney General. (*Id.*, p. 4.) Venezuela contends that there was no meeting of the minds and that Richard Scruggs acted without authority. (*Id.*)

Richards Scruggs indicated that he was authorized to settle the monetary portion of this lawsuit in September 2005. (Ct. R., Doc. 94, Exh. C.) According to Richard Scruggs' affidavit, he was given settlement authority in a telephone conversation. Marisol Plaza Irigoyen, acting in her capacity as Attorney General of the Republica Bolivariana de Venesuala, conferred a special

power of attorney on November 15, 2003, to Aaron Podhurst, Steven Marks and Richard Scruggs to defend Venezuela in this suit. (Ct. R., Doc. 79-2.) This was in accordance with article 115 of the code of civil procedure and article 44 of the decree giving powers to the attorney general's office. (*Id.*)

Under Federal Rule of Civil Procedure 44.1 "[a] party who intends to raise an issue concerning the law of a foreign country shall give notice by pleadings or other reasonable written notice." FED. R. CIV. P. 44.1. The purpose of the rule is "to avoid unfair surprise either to the opposing party or to the court." 9 Wright & Miller, *Fed. Prac. & P.,* § 2443 at 640 (1995). It is typically sufficient for a party to give notice in motion papers. *See Thyssen Steel Co. v. M/V Kavo Yerakas*, 911 F. Supp. 263, 266 (S.D. Tex. 1996). The Court finds that in this case, the length of time which has passed since the case was filed and the progress made to date in the case militates against the use of Venezuelan law in this case. Even if the Court was inclined to consider the notice of intent to rely on Venezuela's law, further analysis of the issue is necessary.

Under Mississippi choice of law rules, the "center of gravity" concept prevails. *Mitchell v. Craft,* 211 So.2d 509, 512 (Miss. 1968); *Craig v. Columbus Compress & Warehouse Co.,* 210 So.2d 645, 649 (Miss. 1968). This means that in deciding which substantive rules should be used in reaching a decision, the substantive laws of the state with the most substantial contacts with the parties and the subject matter of the action should be followed. *See Craig,* 210 So.2d at 649. In conflicts of law questions which involve contractual matters, Mississippi applies the factors outlined in Section 188 of the Restatement(Second) of Conflicts of Laws. *O'Rourke v. Colonial Ins. Co. of Ca.,* 624 So.2d 84, 86 (Miss. 1993).

Section 188 provides as follows:

(2) In the absence of an effective choice of law by the parties, the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

These contacts are to be evaluated according to their relative importance with respect to the particular issue. *Boardman v. United Servs. Auto, Assoc.,* 470 So.2d 1024, 1032 (Miss 1985). In addition, several other factors are relevant to a choice of law determination. These factors include: (1) the needs of the interstate and international systems; (2) the relevant policies of the forum; (3) the relevant policies of other interested states and the relevant interest of those states in the determination of a particular issue; (4) the protection of justified expectations; (5) the basic policies underlying the particular field of law; (6) certainty, predictability, and uniformity of results; (7) ease and determination in application of law to be applied. *Spragins v. Louise Plantation, Inc.,* 391 So.2d 97, 100 (Miss. 1980).

In this case at least part of the contract was executed in Pascagoula, Mississippi, as evidenced by the acts of final acceptance of the ships. (Ct. R., Doc. 19.) The contract was performed in Pascagoula; and the funds for payment of the contract were deposited in New York. While the ships are no longer located at Northrup Grumman, the work was performed at Pascagoula. Though the contract calls for arbitration over the contract to be held in Venezuela,

the Court has previously determined that Venezuela is not an appropriate forum for such. (Ct. R., Doc. 43.)

As the party moving to apply foreign law, Venezuela had the burden of proving its substance to a reasonable certainty such that the district court could apply it to the documents at issue. Absent such proof, the district court should apply the law of the forum. *Banque Libanaise Pour Le Commerce v. Khreich,* 915 F.2d 1000, 1006 (5th Cir. 1990). In determining whether a party has adequately proved the substance of foreign law, the district court is given wide latitude. *In re Avantel, S.A.*, 343 F.3d 311, 321-2 (5th Cir. 2003).

The Court is not convinced that Venezuela has carried its burden of proving that the relevant factors predominated in favor of applying Venezuelan law. Although it is unclear exactly where the contract was signed, and it appears that negotiations were held in Venezuela at some point, the final acceptance of the ships and all the work under the contract was performed in Pascagoula. The relationship between the parties was centered in Mississippi.

Furthermore, it appears that Venezuelan law is similar to Mississippi law regarding authority to settle a suit. Under Mississippi law, a settlement is a contract and is judged by principles of contract law. *In re Estate of Davis,* 832 So.2d 534 (Miss. Ct. App. 2001). Under Mississippi law, it is presumed that an attorney who has represented a party is authorized to take all action necessary to conduct the litigation. *Great Atl. & Pac. Tea Co. v. Majure,* 176 Miss. 356, 168 So. 468 (1936).

Despite Venezuela's assertions to the contrary, Richard Scruggs was given the power of attorney to act on behalf of Venezuela in this lawsuit on December 4, 2003. (Ct. R., Doc. 79-2, Exh. A.) There is no evidence that the power of attorney was revoked at any time prior to the

settlement negotiations.  The burden of showing that the attorney had no authority to act is upon the party denying such authority.  *Hirsch Bros. & Co. v. R.E. Kennington Co.,* 155 Miss. 242, 124 So. 344 (1929).  In this case, Venezuela has not met its burden of establishing that Richard Scruggs did not have authority to act on its behalf in the settlement, because Richard Scruggs has shown that Venezuela conveyed a power of attorney on the Scruggs firm through its Attorney General, as required under Venezuelan law.  The Court, therefore, concludes that whether Mississippi law or Venezuelan law is applied to the circumstances surrounding the settlement, Richard Scruggs acted with authority in reaching the settlement.  The Court further concludes that the settlement outlined in the order of dismissal dated October 11, 2005, should be enforced.

Venezuela, in taking the position against the settlement, has refused to pay the Scruggs Firm or the Podhurst for work performed in this case.  This refusal prompted the motion to intervene filed by the Scruggs and Podhurst law firms in an effort to collect a fee for the services provided on behalf of Venezuela in this case.   Accordingly, in addition to enforcing the settlement, the Court concludes that the Scruggs and Podhurst firms should be paid a fee in accordance with the contract agreement.

Finally, the Court concludes that Venezuela's motion to vacate the Court's order of dismissal should be denied and that the monetary settlement of this case should be remain in place. This finding renders moot the motions to file a supplemental memorandum and to compel arbitration, and the Court further concludes that the motions should be denied as moot.  Finally, the Court concludes that this case should be dismissed, with the Court retaining jurisdiction over the enforcement of the settlement.

## Conclusion

For the reasons given above, this Court finds that the motions to dismiss [45-1]; to vacate [68-1]; to compel arbitration [96-1]; and for leave to file a supplemental memorandum should be denied. In addition, the Court finds that Scruggs and Podhurst should be allowed a fee in accordance with the contract agreement. The Court further finds that this case should be dismissed, with the Court retaining jurisdiction over the enforcement of the settlement in this case. A separate Final Judgment in conformity with and incorporating by reference the foregoing Memorandum Opinion shall issue this date. Each party shall bear its respective costs associated with these motions.

THIS the 21st day of September, 2007.

*Walter J. Gex III*
UNITED STATES SENIOR DISTRICT JUDGE