IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION


NORTHROP GRUMMAN SHIP SYSTEMS,
INC., formerly known as INGALLS
SHIPBUILDING, INC.                                                                           PLAINTIFF

VERSUS                                                           CIVIL ACTION NO. 1:02cv785WJG-JMR

THE MINISTRY OF DEFENSE OF THE
REPUBLIC OF VENEZUELA, and BANK
OF NEW YORK                                                                                 DEFENDANTS


O R D E R

      THIS CAUSE comes before the Court on remand from the Fifth Circuit Court of Appeals [Fifth Circuit] for a determination of the enforceability of the arbitration-forum clause contained in the contract between these parties.  (Ct. R., Doc. 154, p. 19.)  Also pending before the Court is the motion [157] of Defendant, The Ministry of Defense of the Republic of Venezuela [Republic], to compel arbitration and dismiss the complaint; and the cross-motion [160] of Plaintiff, Northrop Grumman Ship Systems, Inc. [Northrop Grumman], to compel arbitration in this district and to retain jurisdiction.  An associated motion [165] by the Republic for leave to file a counterclaim for declaratory relief is also pending before the Court.

      The Court held a hearing on the matter and the parties spent considerable time submitting affidavits, briefs, and other information in support of their respective positions on the matter. Northrop Grumman asserts that although the Republic seeks the enforcement of the forum clause providing for arbitration to take place in Venezuela, there is a strong likelihood that the

Venezuelan government would interfere in the proceedings should they take place in Caracas as provided in the contract. (Ct. R., Doc. 161, p. 2.) Northrop Grumman contends that relations between the United States of America the Republic have deteriorated to the point that the United States government prohibits exports to Venezuela. (*Id*.) The Court should retain jurisdiction over the case, according to Northrop Grumman, because the case involves an action to enforce a maritime lien *in rem* against a vessel, which distinguishes this case from an action for breach of contract which would be subject to arbitration proceedings. (*Id*., p. 15.)

Northrop Grumman asserts that the forum selection clause can be set aside when enforcement of such a clause is deemed "unreasonable." (Ct. R., Doc. 161, p. 7.) Northrop Grumman contends that if it establishes that "trial in the contractual forum will be so gravely difficult and inconvenient" that it would be deprived of its "day in court," the forum selection clause can be ignored. (*Id*., citing *M/S BREMEN v. Zapata Off-Shore Co.*, 407 U.S. 1, 18 (1972)). Based on the declarations of legal experts Antonio Canova Gonzalez and Manuel A. Gomez , the Venezuelan legal system is currently inadequate. (*Id*., pp. 8-9.)

The Arms Export Control Act assigns to the President of the United States the power to control the export and import of defense articles and services. The regulations promulgated under the Arms Export Control Act and administered by the Directorate of Defense Trade Controls, [DTC], which is part of the Department of State, are known as the International Traffic in Arms Regulations [ITAR]. ITAR includes specific limitations on which persons are eligible to receive "significant military equipment" and related 'technical data," which may include unclassified data. Such information may not be disclosed by United States persons to a "foreign person" without a license from the State Department. 22 C.F.R. §§ 120, *et seq.*

Northrop Grumman contends that current export restrictions prevent the introduction of critical evidence in this case.  (*Id*., p. 10.)  As of August 2006, all previous licenses were revoked, and in October 2008, the ban on the export of such information was extended for Venezuela and a handful of other countries.  (*Id*., p. 11.)

Technical data is central to the dispute in this matter, and the current prohibition on exports to Venezuela would prevent Northrop Grumman from presenting evidence that flawed specifications were provided which required that Northrop Grumman provide technical work outside the scope of its contractual duties.  (*Id*., p. 11.)  There is no dispute that some of the relevant documents in this case are subject to ITAR protection and require an ITAR license to be disclosed to foreign persons.  In order for any party, including counsel, a judge, or an arbitration panel, to access ITAR protected documents, those parties would be required to obtain a license from the relevant entity.  Although all of this information was considered by the Court in the present analysis, absence of approval from the DTC would be better resolved in the arbitration proceedings than in this forum selection clause inquiry.  The approval – or lack thereof – would be relevant to the dispute no matter where the arbitration is held.

Under the terms of clause 29 of the contract, acts of the United States and the Venezuelan governments arising after the effective date of the contract – December 18, 1997 –  which might prevent a party from fulfilling a contractual obligation constitute a *force majeure* event, according to Northrop Grumman.  (*Id*., p. 12.)  Northrop Grumman contends that the change in United States export policy, which was unforeseen at the time of the execution of the contract between these parties, creates a situation of impracticability.  (*Id*., p. 13.)  In addition, certain legal conditions, as outlined by Professor Gomez, establish that conducting arbitration in Caracas

would not be practicable.  (*Id*.)  As such, Northrop Grumman seeks to have arbitration held in the Southern District of Mississippi.  (*Id*., p. 14.)

Northrop Grumman argues that the Court should retain jurisdiction over the matter, regarding whether the case may be sent to arbitration, making the Court available to adjudicate disputes and to confirm the arbitration award when issued.  (*Id*., pp. 14-15.)  In addition, the complaint includes claims against the Republic which are not subject to arbitration, including the claim for a maritime lien and for a constructive trust over the funds held by the stakeholder Defendant, The Bank of New York Mellon Corporation [BONY].  (*Id*., pp. 15-16.)

The Republic asserts that the agreement to arbitrate in Caracas should be enforced.  (Ct. R., Doc. 158, p. 4.)  Contrary to Northrop Grumman's assertions, there are no legal constraints external to the agreement which would preclude arbitration of this matter in Caracas, according to the Republic.  (*Id*., pp. 9-10.)  The contract clause provides that the arbitration panel be composed of three independent arbitrators who are members of the International Chamber of Commerce.  (*Id*., p. 10.)  As there are no longer any travel restrictions issued by the United States Department of State, and as the United States and the Republic have resumed full diplomatic relations, any perceived impediments to arbitrating in Caracas have been removed, according to the Republic.  (*Id*., pp. 10-12.)  The Republic argues that the forum selection clause should be found enforceable and the courts of Venezuela should be designated as competent to try any issues remaining after arbitration.  (*Id*., p. 14.)

Federal policy favors the enforcement of arbitration provisions, particularly concerning the field of international commerce.  *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625-31 (1985).  Forum selection clauses in international agreements are

"prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *BREMEN*, 407 U.S. at 10.  The party resisting the forum selection clause must meet a heavy burden of proof in establishing that the selection clause is unreasonable.  *BREMEN*, 407 U.S. at 17.  Furthermore, with respect to arbitration-forum clauses, a party "seeking to avoid arbitration must allege and prove that the arbitration clause itself was a product of fraud, coercion, or such grounds exist at law or in equity for the revocation of the contract."  *National Iranian Oil Co. v. Ashland Oil, Inc*., 817 F.2d 326, 332 (5th Cir. 1987), *cert. denied* 484 U.S. 943.  In this case, Northrop Grumman asserts that the legal system in Venezuela is unsuitable for a resolution of the dispute between the parties.  (Ct. R., Doc. 161, p. 2.)  Northrop Grumman contends that Venezuelan government would interfere with arbitration proceedings held in Caracas.  (*Id*.)

At the time Northrop Grumman filed its motion regarding the arbitration proceedings, it contended that a diplomatic rupture between the United States and the Republic resulted in the United States Ambassador being expelled briefly from Venezuela.  (*Id*., p. 7.)  Furthermore, according to Northrop Grumman, Professor Gonzalez's declaration indicates that any attempt to litigate against the Venezuelan government within the country would not result in a fair outcome, as the legal system within Venezuela favors judgments for the government.  (*Id*., pp. 8-9.)  Professor Gonzalez also avers that the legal system within Venezuela has deteriorated since the contract was signed between the parties in 1997.  (*Id*., p. 9, Doc. 186, pp. 9-10 )  Further information submitted in earlier documents to the Court indicates that at the time of contracting Northrop Grumman could not have foreseen the current situation within the Venezuelan legal

system.  (*Id*., pp. 9-10; Doc. 36, 38.)  All of these conditions satisfy the standard for non-enforcement of the forum selection clause, according to Northrop Grumman.  (*Id*.)

The Republic argues that the Convention on the Recognition and Enforcement of Foreign Arbitration Awards [the Convention Act], 9 U.S.C. § 201, is applicable in this case.  (Ct. R., Doc., 170,  pp. 16-20.)  If the arbitration clause falls under the Convention Act, the district court is required to order the arbitration.  *See Sedco, Inc. v. Petroleos Mexicanos Mexican Nat. Oil Co.*, 767 F.2d 1140, 1145 (5th Cir. 1985).  The Convention Act applies to international arbitration clauses when the following apply:  (1) there is agreement in writing within the meaning of the Convention; (2) agreement provides for arbitration in the territory of signatory of the Convention; (3) agreement arises out of legal relationship, regardless of whether contractual, that is considered commercial; and (4) agreement is with party who is not American citizen, or the commercial relationship has some reasonable relation with one or more foreign states.  9 U.S.C. § 202.  The Convention Act expressly states that courts "shall" compel arbitration when requested by a party to an international arbitration agreement.  *Safety Nat. Cas. Corp. v. Certain Underwriters at Lloyd's, London*, 543 F.3d 744, 750 (5th Cir. 2008), *petition for cert. filed* ___ S.Ct. ___ (Oct. 4, 2010).

The Court agrees with the parties that arbitration of the disputes between these entities should take place.  The contract provides that should a dispute arise in connection with the contract that the parties cannot resolve, the matter "shall" be submitted to arbitration.  (Ct. R., Doc. 157-2, p. 6.)  In addition, the contract provides that "[a]rbitration actions shall take place in Caracas, Venezuela, in Spanish-English."  (*Id*.)  The Court finds that the contract language

regarding the location of the arbitration is mandatory.  Accordingly, the Court will address whether that mandatory provision controls the location of the arbitration in this case.

"A forum selection provision in a written contract is *prima facie* valid and enforceable unless the opposing party shows that enforcement would be unreasonable." *Kevlin Servs., Inc. v. Lexington State Bank*, 46 F.3d 13, 15 (5th Cir. 1995).  The party opposing the forum-selection must demonstrate the following:  (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state.  *Haynsworth v. The Corp.*, 121 F.3d 956, 963 (5th Cir. 1997), *cert. denied* 523 U.S. 1072 (1998)*; Carnival Cruise Lines v. Shute,* 499 U.S. 585, 595 (1991); *BREMEN,* 407 U.S. at 12-3, 15, 18.  Enforcement of forum selection clauses is improper if the party resisting the clause can "clearly show that enforcement would be unreasonable and unjust." *National Iranian Oil*, 817 at  335.

The Court has thoroughly considered the documents and affidavits provided in support of the motions, and finds that although the parties negotiated a contract which provided that any arbitration of disputes arising out of the contract would take place in Caracas, Venezuela, circumstances and diplomatic relations between the United States and Venezuela have changed considerably since the contract was formulated.  The present conditions in Venezuela were not only unknown but also unforeseeable to Northrop Grumman at the time the contract was negotiated; the conditions at issue did not exist at the time of the contract.  The Court, therefore,

finds that enforcing the Caracas forum selection clause will for all practical purposes deprive Northrop Grumman of its day in court. *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 241 (5th Cir. 2009), *cert. denied* ___ U.S.___, 130 S.Ct. 1054 (2010).  As such, the Court finds that enforcing the forum selection clause would be unreasonable, and that an alternative forum for the arbitration should be found by the parties. *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 538 (1995).  The Court concludes that the parties should find a mutually agreeable alternative forum as the location for the arbitration proceedings.

Regarding the Republic's motion for leave to file a counterclaim, Northrop Grumman contends that the Republic's motion should be denied because the Republic did not file the counterclaim as part of a pleading.  (Ct. R., Doc. 177, p. 3.)  The Republic seeks the right to file a counterclaim in this case to achieve a declaratory judgment from the Court that the venue and judicial forum selection provisions are enforceable.  (Ct. R., Doc. 165-2, p. 3.)  The Republic has advanced that position since it filed its motion to dismiss for lack of jurisdiction in January 2004. (Ct. R., Doc. 45.)  The Declaratory Judgment Act provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).

"A party waives arbitration by seeking a decision on the merits before attempting to arbitrate."  *Petroleum Pipe Ams. Corp. v. Jindal Saw, Ltd.,* 575 F.3d 476, 480 (5th Cir. 2009) . The Republic has advanced the same position since its appearance in this lawsuit, and if the Republic has determined that it need further protect its position by filing a claim, the Court finds

no reason to deny the motion, although the matter will be resolved in arbitration of this matter. The Court concludes that the motion to file a counterclaim should be granted.

The Court will retain jurisdiction over this matter as the BONY is an interested party which will not participate in the arbitration proceeding.  Northrop Grumman and the Republic should notify the Court within 15 days of the entry date of this order of the location agreed upon for the arbitration.   In the event the parties cannot agree up a location within the15-day period, the Court will select the location and advise the parties of its selection.   The arbitration shall take place within 60 days of the entry date of this order.  The parties shall also notify the Court of the decision of the arbitration panel within 10 days of the panel's decision so that any necessary action  involving BONY may be concluded.  It is therefore,

ORDERED that the Republic's motion [157] to compel arbitration and dismiss the complaint be granted in part and denied in part.  The motion is granted to the extent that the Court will compel arbitration, but denied in all other respects.  It is further,

ORDERED that Northrop Grumman's cross-motion [160]to compel arbitration in this district and retain jurisdiction be granted in part and denied in part.  The Court will deny the motion to the extent that it will not compel arbitration in this District, but will grant the motion to and retain jurisdiction in order to bring this matter to conclusion after arbitration.   It is further,

ORDERED that the parties shall advise this Court of a mutually agreed upon location for arbitration within 15 days.  Should the parties fail to come to an agreement at the end of this period, the Court will select the location and so notify the parties.  It is further,

ORDERED that this matter will be arbitrated within 60 days from the date of entry of this Order.  It is further,

ORDERED that the Republic's motion [165] for leave to file a counterclaim be, and is hereby, granted.  It is further,

ORDERED that the parties bear their respective costs associated with these motions.

SO ORDERED, this the 3rd day of December, 2010.


                                                *Walter J. Gex III*
                                UNITED STATES SENIOR DISTRICT JUDGE