# EXHIBIT 3

REPUBLIC OF VENEZUELA
MINISTRY OF DEFENSE
GENERAL NAVY COMMAND
**NAVAL LOGISTICS COMMAND**

CONTRACT-CGA-CNALO-002-97

# Contract between the National Executive

# and

# INGALLS SHIPBUILDING, INC.

(flag of the
Venezuelan Navy)

REPUBLIC OF VENEZUELA
MINISTRY OF DEFENSE
OFFICE OF THE MINISTER
LEGAL ADVICE OFFICE

(STAMP OF THE MINISTRY OF DEFENSE,
LEGAL ADVICE OFFICE)

Caracas, DEC 18 1997

No. RO-001

Contract entered into by the Ministry of Defense and INGALLS SHIPBUILDING, INC., located in Pascagoula, Mississippi, United States of America, for overhaul and retrofitting of Frigates ARV "MARISCAL SUCRE" (F-21) and ARV "ALMIRANTE BRION" (F-22), for **THREE HUNDRED FIFTEEN MILLION US DOLLARS AND NO CENTS** (US$315,000,000.00), which at the referential exchange rate of **FOUR HUNDRED AND SEVENTY BOLIVARS AND NO CENTS** (470.00) corresponds to **ONE HUNDRED AND FORTY-EIGHT BILLION FIFTY MILLION BOLIVARS AND NO CENTS** (Bs. 148,050,000,000.00), approved by the General Controller of the National Armed Forces, as stated in File No. DCA-C-3340-7315 of December 04, 1997.

The company's representative submitted the following documentation AD EFFECTUM VIDENDI:

A. CERTIFICATE OF INCORPORATION - BYLAWS OF THE COMPANY "STATE OF DELAWARE", AT THE SECRETARY OF STATE'S OFFICE, FILED ON JUNE 11, 1987, UNDER AUTHENTICATION NUMBER 1271710, HEADQUARTERED ON 1000 ACCESS ROAD, P.O. BOZ 149.

B. REPRESENTED IN THIS ACT BY CECIL LEE RECTOR, A U.S. NATIONAL, USA PASSPORT NUMBER 082014205.

The contract is recorded in the Operations Records ledger, under Volume VIII of the IV Quarter of 1997.


(signed)

HOMERO OTERO MEDRANO
COLONEL (GN)
LEGAL ADVISOR

*REPUBLIC OF VENEZUELA*
# MINISTRY OF DEFENSE
*OFFICE OF THE MINISTER*
*LEGAL ADVICE OFFICE*

*CARACAS,* DEC 18 1997

*187ᵗʰ and 138ᵗʰ*

No. RO-001

(STAMP)

*THE DOCUMENT ABOVE HAS BEEN READ BY ME, AND IN MY PRESENCE WAS SIGNED BY THE PARTIES, VICEADMIRAL **TITO MANLIO RINCON BRAVO,** MINISTER OF DEFENSE, IDENTITY CARD NUMBER 3.366.278 AND **CECIL LEE RECTOR,** OF LAWFUL AGE, A US NATIONAL, PASSPORT NUMBER 082014205, LIVING IN THE US AND TEMPORARILY VISITING HERE, REPRESENTATIVE OF THE COMPANY **INGALLS SHIPBUILDING, INC.,** WHO, ACTING IN THE ABOVE MENTIONED CAPACITIES, HAVE STATED: "CONTENTS ARE TRUE AND THE SIGNATURES ARE OURS". CONSEQUENTLY, AND IN COMPLIANCE WITH THE PROVISIONS OF ARTICLE 321 OF THE ORGANIC LAW OF THE NATIONAL ARMED FORCES, THE ABOVE MENTIONED DOCUMENT IS HEREBY CERTIFIED AND RECORDED WITH NUMBER 001 VOLUME VIII OF THE IV QUARTER OF 1997, IN THE LEDGER KEPT AT OPERATIONS RECORDS.*

*"THE PARTIES"*

*(SIGNED)*

*(SIGNED)*
*"THE LEGAL ADVISOR"*

*(SIGNED)*

# SECRET

**NAVY**
**NAVAL OPERATIONS COMMAND**
**DIRECTION OF COMMUNICATIONS**

**MOD-PU-CGA-0049**

## COVER SHEET

**UNAUTHORIZED DISCLOSURE OF THE INFORMATION CONTAINED IN THE ATTACHED DOCUMENT MAY RESULT IN SERIOUS HARM TO THE DEFENSE OF THE INTERESTS OF THE COUNTRY OR ITS ARMED FORCES.**

---

RESPONSIBILITIES OF PERSONS HANDLING THE ATTACHED **SECRET** CLASSIFIED DOCUMENT.

1. Taking the appropriate protective measures to prevent unauthorized information disclosure, never leaving the document unattended, except when kept in a safe.

2. The document shall be disclosed only on a **NEED TO KNOW** basis, to individuals who are duly authorized to work with classified information (INS-IT-CGA-0012).

3. A receipt shall be obtained upon turning over control of the document.

4. In principle, no **SECRET** classified documents or materials shall be moved out of the buildings or offices where they are kept.

<u>STORAGE:</u> (Article 31 of the Regulations for classification, safe-keeping and handling of classified Armed Forces information, documents and materials).

"Documents and materials classified as "**SECRET**" shall be kept in combination lock safes". Only two people will know the combination.

<u>COPYING:</u> (Article 19 of the Regulation for Classification).

"Documents containing classified information shall not be reproduced, except when necessary, in which case copying must be approved by the Commander or Chief of the Department, through the Security Control Officer, who shall prepare a Commitment Certificate to be signed by two witnesses who are authorized to know the contents of the document. Each copy shall be identified and recorded. The number of copies shall be determined in the Certificate".

<u>LOSS:</u>

"Should you find this document, please return it to the nearest Naval Publications Office."

"Notify the Immediate Superior as soon as possible".

**(This Cover Sheet is Non-Classified when detached from the document)**

# SECRET

*NAVY*
*NAVAL OPERATIONS COMMAND*
<u>*DIRECTION OF COMMUNICATIONS*</u>

*APPLICABLE REGULATIONS FOR*
*HANDLING CLASSIFIED MATERIAL*

## <u>CODE OF MILITARY JUSTICE</u>

### <u>*Article 464 – Section 11:*</u>  <u>*"Of Treason Against the Country"*</u>

*"The following are crimes of treason against the country: providing the enemy with memories, data or reports about the creation, mobilization, resources, war industries, strength or the Nation's weaponry; revealing a campaign plan or the secret of an operation, expedition or negotiation; disclosing passwords, military orders and secrets, blueprints or descriptions of fortresses, port ships, arsenals, naval stations, strength points, canals, roads, railroads, ports, radars or airports; handing over private codes for the location and communication of lighting, telegraphic, radiotelegraphic, telephonic or radiotelephonic stations and other facilities that must be kept secret".*

### <u>*Article 471 – Section 4:*</u> <u>*"Of Espionage"*</u>

*"Taking, obtaining, photographing, copying, altering, deleting, damaging, deviating, even just temporarily, documents or objects of a **Secret, Confidential or Reserved** nature, pertaining to National Defense".*

<u>*Article 472:*</u> *Any individual who commits the crimes listed in the previous article, in the event of an international war, shall be punished with 12 or 18 years of prison.*

<u>*Article 550:*</u> *"Those who reveal orders, missions, documents, or news private or secret to the Armed Forces, shall be penalized with four to ten years of prison.*

## <u>ADMINISTRATIVE CAREER LAW</u>

<u>*Article 206:*</u> *"Any public official who communicates or publishes the documents or facts that have become known to him because of his post and that should be kept secret, shall be punished with three to fifteen months imprisonment, as shall be any official who in any way favors disclosure of said documents or facts".*

<u>*Article 55:*</u> *"Public officials respond criminally, civilly, administratively and disciplinarily for the crimes, misdemeanors, illegal acts or administrative faults committed on the job. This responsibility does not exclude any that might apply to them due to special laws or their citizen status".*

# SECRET

Between the Republic of Venezuela, through the Ministry of Defense, hereby represented by the head of that Office, Viceadmiral TITO MANLIO RINCON BRAVO, Minister of Defense, located in Caracas, Federal District, identity card number 3366278, duly authorized by the President of the Republic, as noted in Presidential Decree Number 1915 of July 01, 1997, published in the Official Gazette Number 36238 of July 01, 1007, and hereinafter, for the purposes of this contract, referred to as "THE MINISTRY" and "INGALLS SHIPBUILDING, INC", located in Pascagoula, Mississippi, United States of America, a company incorporated before the Secretary of State of the "State of DELAWARE", at the Secretary of State's office, filed on June 11, 1987, under authentication number 1271710 (Attachment "A"), with headquarters on 1000 Access Road, PO Box 149, herein represented by CECIL LEE RECTOR, a U.S. National, U.S. passport number 082014205, currently living in the U.S. and temporarily visiting here, who is acting for the company, as indicated in the power of attorney granted to him in compliance with the laws of his country, legalized before the General Consulate of Venezuela in New Orleans under number 332 on April 7, 1992 (Attachment "B"), who in the above mentioned capacity, is duly authorized to represent it and to bind it in compliance with the legal norms that rule it, and hereinafter referred to as "THE CONTRACTOR", have agreed to enter into this Contract with the following clauses and attachments:

## PURPOSE OF THE CONTRACT

FIRST: The purpose of this Contract is the overhaul and retrofitting work of frigates ARV "MARISCAL SUCRE" (F-12) and ARV "ALMIRANTE BRION" (F-22) to be performed by "THE CONTRACTOR" and paid for by "THE MINISTRY", as set forth in the Second Clause of this instrument, hereinafter referred to as "THE SHIPS", as well as the replacement of some equipment; the supply and installation of the Electronic War System; overhaul of Helicopters AB-212-ASW,

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

code ARV-0302 and ARV 0306, overhaul of the Otomat MK-2 Missile Launching System. TG-2 Teleguidance System and sixteen (16) Otomat MK-2 Missiles with their containers, "THE CONTRACTOR" also agrees to provide services, sell materials, parts, spare parts and equipment; to provide manuals and blueprints for new equipment and any modifications needed for the systems indicated in this contract, for proper operation of "THE SHIPS", all in accordance with the Technical Specifications Offer documents and other documents contained in Attachment "C", which along with the statements of Clause Forty–Three listing the attachments of this contractual document are an integral part of this contract.

First Paragraph: The platform, weapons, electronics and communications work described in this Contract shall be performed by "THE CONTRACTOR" at the plant or shipyard located in Pascagoula, Mississippi, United States of America; the overhaul of the helicopters shall be performed at the hangars of IAI Israel Aircraft Industries LTD located in Israel and shall be delivered in Venezuela upon conclusion of the work, the Manufacturing of the Electronic War System that will be conducted at the manufacturing facility of the company ELECTRONIC Systems LTD (ELISRA) in Israel, to be later installed in "THE SHIPS" at the Shipyard in Pascagoula, Mississippi; the maintenance of the Otomat MK-2 missile launching system, TG-2 Teleguidance system and sixteen (16) Otomat Missiles with their containers, to be performed in Italy at the facilities of the Alenia Difesa A Finmeccanica Company, Missiles Systems Division and reinstalled aboard "THE SHIPS" in Pascagoula, Mississippi, except for the Missiles with their containers that will be delivered in Venezuela, and the TG-2 which will be reinstalled in the Helicopters in Israel at the facilities of IAI Israel Aircraft Industries LTD, except for the warranty work that might be performed according to the Technical Warranty Clause contained in this Contract, by "THE CONTRACTOR" and the designated Subcontractors, which shall be performed in Venezuela.

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

Second Paragraph:  The machinery, equipment, parts, spare parts and new materials installed on "THE SHIPS" under this Contract shall be original from the appropriate system or equipment manufacturer, of top quality and proven functionality, not previously used and hereby agrees to supply spare parts (logistic support) for twenty (20) years as set forth in the Thirteenth Clause, according to the Specifications, Original Blueprints or Monographies of "THE SHIPS" and of the Systems, Designs, Programs, Calculations and other documents listed in the Technical Specifications that are Attachment "C" in this Contract; additionally,  any workmanship to be used in the work will be top quality according to the MIL-1-45208A norms of the Department of Defense of the United States of America and duly qualified to work on the equipment and systems to be repaired, Attachment "D".  Furthermore, it is agreed that the work and any other events will be conducted according to the schedules mentioned in the Twelfth Clause of this Contract and shall be supervised by specialized personnel appointed for this purpose; the equipment, systems, accessories, blueprints and technical documentation shall be ruled as set forth in this contractual instrument.  "THE CONTRACTOR" shall demand that the machinery, equipment and materials used by the Designated Subcontractors, indicated in the First Paragraph of this Clause, be manufacturer originals and top quality, not previously used and manufactured in compliance with the Technical Specifications  and scope of work included in the subcontracts, and accompanied by the appropriate quality control certificate and date of manufacture.

Third Paragraph:  "THE CONTRACTOR" shall utilize for the work covered by this Contract the specific equipment manufacturer manuals, as well as the original parts and spare parts therein described or any replacements authorized by "THE MINISTRY" through the chief of the Venezuelan Inspection Commission ("V.I.C.") or certified by the original manufacturer of the appropriate equipment.

Fourth Paragraph:  The execution of the work on "THE SHIPS" and other systems under

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

this Contract, as well as their supervision, inspection and testing shall be conducted in accordance with the Technical Specifications, hereinafter "THE SPECIFICATIONS", through Testing and Acceptance Protocols duly authorized and certified by "THE MINISTRY".

Fifth Paragraph: Should there be any discrepancies between some of the Clauses of this Contract and "THE SPECIFICATIONS" or the Technical Specifications of the Designated Subcontractors, the terms of this Contract shall prevail. Furthermore, should there be any discrepancies between "THE SPECIFICATIONS" and the original blueprints of "THE SHIPS", "THE SPECIFICATIONS" shall prevail, and "THE CONTRACTOR" agrees to provide the new documentation as required.

## PRICING AND TERMS OF PAYMENT

SECOND: The Republic of Venezuela, through the Ministry of Finance, shall pay "THE CONTRACTOR" for this Contract the sum of THREE HUNDRED FIFTEEN MILLION US DOLLARS (US$315,000,000.00) to the exclusion of any other currency, which at the exchange rate of FOUR HUNDRED AND SEVENTY BOLIVARS (Bs. 470.00) per US DOLLAR (US$1.00), corresponds to ONE HUNDRED AND FORTY-EIGHT BILLION FIFTY MILLION BOLIVARS AND NO CENTS (Bs. 148,050,000.000.00). The total price of this contract shall remain fixed and non-reviewable, and shall be paid as follows:

First Paragraph: In order to make the payments planned under this Contract, the Ministry of Finance of the Republic of Venezuela shall issue Eurobonds for the sum of $315,000,000.00 in a private placement by ING Barings (US) Securities converted to US dollars. The results of the issue will be placed in a trust fund created by the Ministry of Finance and the Bank of New York, New York, United States of America with the sole and specific purpose of making the payments

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

under this Contract.

Second Paragraph: The above mentioned sum is subdivided in the number of items in the Contract describing the Categories of Work. The parties acknowledge this is a single Contract for the total price indicated in this Clause and does not consist of a series of separate Contracts, and thus the following work is detailed:

| ITEM | DESCRIPTION | PRICE |
|---|---|---|
| 001 | PLATFORM<br>PLATFORM ATTACHMENT | US$ 87,026,406.00 |
| 002 | WEAPONS AND ELECTRONICS<br>WEAPONS ELECTRONICS ATTACHMENT | US$110,373,040.00 |
| 03 | COMMUNICATIONS<br>COMMUNICATIONS ATTACHMENT | US$ 16,998,210.00 |
| 04 | ELECTRONIC WAR<br>ACQUISITION | US$ 13,031,188.00 |
| 05 | HELICOPTER OVERHAUL | US$ 7,636,000.00 |
| 06 | MAINTENANCE SERVICE FOR SIXTEEN (16) OTOMAT MISSILES, MAINTENANCE OF THE OTOMAT MK-2 AND TG-2 TELEGUIDANCE SYSTEMS | US$ 15,543,372.00 |
| | **SUBTOTAL** | **US$ 250,608,216.00** |
| 07 | SPARE PARTS | US$ 21,439,766.00 |
| 08 | EXTRAS AND/OR CONTINGENCIES | US$ 42,952,018.00 |
| | **TOTAL** | US$ 315,000,000.00 |

Third Paragraph: For the work to be performed under this Contract, "THE CONTRACTOR" shall be entitled to and authorized to receive from the trust fund in DOLLARS in the United States of America the sums indicated below:

| PAYMENT | SUM | PERIOD |
|---|---|---|
| 1 | US$ 57,640,000.00 | DOWN PAYMENT UPON SIGNING CONTRACT |
| 2 | US$ 35,395,000.00 | END OF STAGE I |
| 3 | US$ 31,688,000.00 | END OF STAGE II |
| 4 | US$ 29,500,000.00 | END OF STAGE III |
| 5 | US$ 45,514,000.00 | END OF STAGE IV |
| 6 | US$ 25,387,000.00 | END OF STAGE V |
| 7 | US$ 10,047,216.00 | END OF STAGE VI |
| 8 | US$ 15,437,000.00 | END OF STAGE VII |
| Sum total for all the basic work<br>(excluding spare parts and extras and/or contingencies) | | US$ 250,608,216 |

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

Fourth Paragraph: The initial payment represents a down payment to "THE CONTRACTOR" and shall be guaranteed with a down payment bond in favor of "THE MINISTRY" for a sum equal to One Hundred Percent (100%) of the advance sum according the Clause 4, Paragraph a). Each subsequent payment as indicated above, shall be based on finished work after perceptive control and favorable approval by the General Controller of the National Armed Forces, and the execution of the events indicated in Attachment "W", Expense Schedule, in the periods therein set forth.

Fifth Paragraph: Upon termination of the work for each stage, "THE MINISTRY", through the chief of the Venezuelan Inspection Commission ("C.I.V") and "THE CONTRACTOR", through its authorized representative, shall sign the "Certificate of Progress" that appears in Attachment "I", indicating that "THE CONTRACTOR" has completed the work for that stage.

Sixth Paragraph: Payments to "THE CONTRACTOR" for basic work shall be made from the above mentioned trust fund account upon submission of the following documents to the Trustee:

a)     Commercial invoice in one (1) original and seven (7) copies issued by "THE CONTRACTOR", approved by the Chief of the "V.I.C." proving that the invoice covers the value of the work performed under the Contract.

b) Certificate of Work Progress, signed by the Chief of the "V.I.C." indicating that the work has been completed satisfactorily and according to the Technical Specifications.

c)     Certificate of Perceptive Control performed by a representative of the General Controller's Office of the National Armed Forces, at the facilities of "THE CONTRACTOR" and favorable approval of the above mentioned control, which shall be issued within thirty (30) days of the signature of the Certificate of Perceptive Control.

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

Seventh Paragraph: Payments to "THE CONTRACTOR" for the purchase of spare parts, extras, or contingencies shall be made from the trust fund account accompanied by the documentation mentioned in Clauses Eighth and Thirteenth of this Contract.

Eighth Paragraph: The Perceptive Control of the work covered by this Contract shall be conducted at the facilities of "THE CONTRACTOR" on 1000 Access Road, Pascagoula, Mississippi, United States of America and in those places indicated in order to check the work of the Designated Subcontractors. "THE CONTRACTOR" shall inform "THE MINISTRY" thirty (30) calendar days in advance of the dates for such control, so that "THE MINISTRY" may inform the General Controller's Office of the National Armed Forces and it can appoint the personnel who will be conducting said Perceptive Control. When "THE MINISTRY" knows who the appointed official will be, it shall notify "THE CONTRACTOR" as to the rank and name of the officer and the representative appointed by "THE MINISTRY".

Ninth Paragraph: In order to conduct the Perceptive Control, the official from the General Controller's Office of the National Armed Forces shall use as a parameter the guidelines set forth in the Technical Specifications, and it shall issue the Certificate of Perceptive Control, reflecting the events, as well as the cost of the work done by "THE CONTRACTOR" and accepted by "THE MINISTRY".

Tenth Paragraph: Acceptance of the Certificate of Progress shall be done by the Chief of the "V.I.C."; simultaneously, the Perceptive Control shall be conducted by the official appointed by the General Controller's Office of the National Armed Forces.

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

## TERMS OF DELIVERY

THIRD: "THE CONTRACTOR" hereby agrees and binds itself before "THE MINISTRY" to execute and complete the work covered by this Contract, at the designated locations set forth in the First Clause, First Paragraph of this contractual instrument, within the deadlines set forth below: a) For work on "THE SHIPS" within twenty (20) months of the signature of the Certificate of Beginning of Work, to be undersigned by both parties, according to the model in Attachment "E", after "THE CONTRACTOR" receives the initial payment, set forth in the Third Paragraph of the Second Clause. b) For the overhaul of the Helicopters AGUSTA BELL AB-21-ASW, whose work will be done at the facilities of the ISRAEL AIRCRAFT INDUSTRIES LTD, within twenty (20) months of the date of arrival in Israel; it is the responsibility of ISRAEL AIRCRAFT INDUSTRIES to take the helicopters to Israel, within sixty (60) calendar days of the effective date of this contract. The delivery of the above mentioned helicopters in Venezuela shall be the responsibility of ISRAEL AIRCRAFT INDUSTRIES. c) For the purchase, installation and interfaces with the Electronic War System, whose installation shall be conducted by Electronic Systems LTD (ELISRA) within twenty (20) months of the effective date of this contractual instrument, installed and interfaced aboard "THE SHIPS" at the Pascagoula shipyard, and both systems ready for sea trials. d) And the delivery of the OTOMAT MK-2 Launching System to "THE CONTRACTOR", which will be installed and interfaced aboard "THE SHIPS" by Alenia Difesa A Finmeccanica Company, Missiles Systems Division, formerly OTO MELARA, S.P.A., in the city of Pascagoula, shall be within seventeen (17) months of receiving the Launchers at the facilities of Alenia Difesa A Finmeccanica Company, Missiles Systems Division formerly OTO MELARA, S.P.A., in Spezia, Italy. The sixteen (16) Otomat MK-2 missiles and their launching containers shall be delivered in Venezuela within twenty-two (22) months of the effective date of this Contract; for the maintenance of the TG-2 Teleguidance system, it shall be delivered

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

installed and interfaced aboard the AB-212 Helicopters at the facilities of ISRAEL AIRCRAFT INDUSTRIES in Israel, within seventeen (17) months of receiving the equipment in Italy. "THE MINISTRY", at its sole charge and cost, agrees to deliver the Otomat MK-2 Launching Missile Containers and the TG-2 Teleguide at the facilities of Alenia Difesa A Finmeccanica Company Missiles Systems Division, formerly OTO MELARA, S.P.A. in Italy within the thirty (30) calendar days of the effective date of this Contract.

First Paragraph: It is understood that the receipt of the AGUSTA BELL AB-212-ASW Helicopters, the Electronic War Systems, the Missiles and the TG-2 Teleguide System shall take place in Puerto Cabello, Estado Carabobo, Republic of Venezuela, and "THE SHIPS" and the MK-2 Launcher Systems shall be received in Pascagoula-Mississippi, which will be done after a satisfactory approval of the Perceptive Control practice by the General Controller's Office of the National Armed Forces and the subsequent signature of the Certificate of Final Acceptance.

Second Paragraph: "THE MINISTRY" hereby agrees to make available to "THE CONTRACTOR" at its shipyard, indicated in the First Clause, First Paragraph of this document, "THE SHIPS" under this Contract, without ammunition, within one (1) month of the effective date of this Contract. "THE MINISTRY" further agrees to prepare the Helicopters within fifteen (15) working days of the effective date of this Contract and to cooperate to obtain all the appropriate permits to take them to Israel at the cost and risk of the company ISRAEL AIRCRAFT INDUSTRIES LTD (IAI) within sixty (60) calendar days of the effective date of this Contract.

Third Paragraph: "THE MINISTRY", within thirty (30) working days of the date "THE CONTRACTOR" requests them, shall make available to "THE CONTRACTOR" the original blueprints of "THE SHIPS" and any Technical Instruction Manuals the Navy might have to facilitate execution by "THE CONTRACTOR" of the work under this document. Failure of "THE MINISTRY"

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

to provide the above mentioned documents to "THE CONTRACTOR" does not excuse "THE CONTRACTOR" for not performing or delaying the work.

Fourth Paragraph: As soon as "THE CONTRACTOR" has complied with this clause, it shall also submit the final version of the following documents to an authorized representative from the "Venezuelan Inspection Commission" or any other member designated by the Chief of the "V.I.C.", on which acceptance criteria for "THE SHIPS" by "THE MINISTRY" will depend.

a) "Workshop, Pier and Sea trial Acceptance" Certificates (Attachment "F") duly signed by the representative of the "Venezuelan Inspection Commission", showing compliance with "THE SPECIFICATIONS" (4 copies).

b) Certificate of Inventory of new equipment installed during the work covered by this Contract, including for each, the technical data and operating, spare part and maintenance manuals.

c) All the documentation derived from the purpose of this Contract, such as Technical Manuals, Blueprints, Designs, Diagrams and Calculations. The final version of the Manuals shall be delivered upon delivery of "THE SHIPS".

Fifth Paragraph: The deadlines indicated in this Clause for delivery of "THE SHIPS" and the appropriate documentation may be postponed without penalty to "THE CONTRACTOR" and be charged against the contingencies set forth in the Eighth Clause, among other reasons, for the following causes:

a) Circumstances or events due to unforeseen or force majeure events, as set forth in the Twenty-Ninth Clause of this Contract.

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

b) Failure to have "THE SHIPS" in the Shipyard within the time specified in the Second Paragraph of this Clause. In this case, the delivery of "THE SHIPS" shall be made with a delay equal to that with which they arrived at the Shipyard.

c) When additional and/or unforeseen work is performed according to the Eighth Clause, as long as an additional time is agreed upon for the execution of the work.

d) When tests are repeated for reasons outside the responsibility of "THE CONTRACTOR", its subcontractors or the Designated Subcontractors. Should that occur, an explanatory document shall be prepared, which must be accepted in writing and signed by both parties.

e) Should "THE MINISTRY" and/or the Designated Subcontractors fail to make available the equipment mentioned in this clause and its Second Paragraph, within the deadlines indicated therein, "THE CONTRACTOR" may extend the scheduling of the deliveries for a number of days equal to the delay in receiving the equipment at the facilities of "THE CONTRACTOR" or Designated Subcontractors, without penalty for "THE CONTRACTOR", leaving intact the responsibility of the Designated Subcontractors, if any. It is also understood that while "THE CONTRACTOR" is not liable for any delays incurred into by the Designated Subcontractors, it will be before "THE MINISTRY" when upon receiving written information from the "V.I.C." regarding the delayed Designated Subcontractors, it fails to exercise the legal actions that might derive from said subcontracts, in order to obtain the appropriate indemnities because of the delays.

f) The quality control services approved by the Government of the United States of America, or any other that "THE MINISTRY" deems convenient, for the inspection and verification of the work and the materials, equipment, spare parts and parts of "THE SHIPS".

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

Sixth Paragraph: The extension of the deadlines caused by the reasons set forth in the previous paragraph must be granted by "THE MINISTRY" with knowledge of the General Controller's Office of the National Armed Forces within thirty (30) working days of the event.

Seventh Paragraph: After "THE MINISTRY" accepts and receives the completed work in each of "THE SHIPS", it shall have thirty (30) working days from the signing of the Certificate of Final Acceptance, to remove them from the Shipyard. "THE CONTRACTOR" shall be responsible for pier expenses and utilities (water, electricity, power) and pier cleaning. After this period, "THE MINISTRY" agrees to cover these expenses.

Eighth Paragraph: "THE CONTRACTOR" shall send, at no cost or responsibility for "THE MINISTRY", a maximum of five (5) technicians per ship, to accompany "THE MINISTRY's" staff to take "THE SHIPS" from Venezuela to the U.S., where the Shipyard of "THE CONTRACTOR" is located, in the understanding that "THE MINISTRY" shall provide them with the elements needed to do their job and to test it.

## BONDS

FOURTH: "THE CONTRACTOR" shall present, to the satisfaction of "THE MINISTRY", and through the General Command Office of the Navy, Naval Logistics Command, for approval by the General Controller's Office of the National Armed Forces, the solidary bonds duly authorized by a notary as indicated below:

a) A bond issued by an Insurance Company or Banking Institution located in the Republic of Venezuela, according to the Advanced Payment Bond model in Attachment "H" of this instrument,

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

FIFTY-SEVEN MILLION SIX HUNDRED AND FORTY THOUSAND US DOLLARS (US$57,640,000.00), which at an exchange rate of FOUR HUNDRED AND SEVENTY BOLIVARS (Bs. 470) for ONE US DOLLAR (US$1.00) corresponds to TWENTY-SEVEN BILLION NINETY MILLION EIGHT HUNDRED THOUSAND BOLIVARS (Bs. 27,090,800,000.00) for one hundred percent (100%) of the sum of the first payment, indicated in the Third Paragraph of the Second Clause of this Contract to guarantee the return of the unexecuted part of the initial payment, in the event of a rescission, corresponding approximately to eighteen point twenty-nine percent (18.29%) of the total cost of this Contract. This bond must be presented within thirty (30) calendar days of the effective date of this Contract and will go into effect after its approval by the General Controller's Office of the National Armed Forces, upon reception of the Down Payment by "THE CONTRACTOR" and shall be released proportionally through a reduction of the appropriate sum upon delivery of the portion of the work executed equal to the down payment, upon submission of the appropriate Certificates of Progress for the work, included in Attachment "I", signed by the Chief of the "Venezuelan Inspection Commission" and representatives of "THE CONTRACTOR", after the Perceptive Control and favorable approval of the control, performed by the General Controller's Office of the National Armed Forces.

b) A bond issued by an Insurance Company or a Banking Institution located in the Republic of Venezuela, according to the Faithful Compliance Bond model in Attachment "J" of this instrument, for SIXTY-TREE MILLION US DOLLARS (US$63,000,000.00), which at an exchange rate of FOUR HUNDRED AND SEVENTY BOLIVARS (Bs. 470) for ONE US DOLLAR (US$1.00) corresponds to TWENTY-NINE BILLION SIX HUNDRED TEN MILLION BOLIVARS (Bs. 29,610,000,000.00) or twenty percent (20%) of the total cost of this Contract, to guarantee Faithful Compliance with each and every obligation derived from this Contract, to be presented by "THE CONTRACTOR" to "THE MINISTRY" within thirty (30) days of the effective date of this Contract

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

will go into effect upon approval by the General Controller's Office of the National Armed Forces .

This bond shall be released on the date of issue of the "Certificate of Final Acceptance" of the last

Ship, after the Perceptive Control to be performed by the General Controller's Office of the National

Armed Forces, with its favorable approval.

    c) A bond for each Ship issued by an Insurance Company or a Banking Institution located in the Republic of Venezuela, according to the Proper Functioning Bond model in Attachment "K" of this instrument, for FIFTEEN MILLION SEVEN HUNDRED FIFTY THOUSAND US DOLLARS (US$ 15,750,000.00) which at an exchange rate of FOUR HUNDRED AND SEVENTY BOLIVARS (Bs. 470) for ONE US DOLLAR (US$1.00) corresponds to SEVEN BILLION FOUR HUNDRED TWO MILLION FIVE HUNDRED THOUSAND BOLIVARS (Bs. 7,402,500,000.00) each, to guarantee and respond for the proper functioning of the equipment, materials, spare parts and parts of the work covered by this Contract. Each of these bonds will represent Five Percent (5%) of the total cost of this Contract, indicated in the Second Clause of this contractual instrument and shall be presented by "THE CONTRACTOR" to "THE MINISTRY" five (5) days before the signing of the Certificate of Final Acceptance for each ship and will be released twelve (12) months after the signing of the Certificate of Final Acceptance, after a revision of the end of the warranty and signing of the "End of Warranty Certificate" for each ship, as set forth in the Twenty-Sixth Clause of this document. Should there be any pending work or parts, after the warranty period mentioned above and the signing of the "End of Warranty Certificate" for work completed, "THE CONTRACTOR" shall extend the bond as appropriate until the end of the warranty for the affected part or work, and for an amount equal to the cost of the affected part or work covered by this Contract, releasing the amount corresponding to the completed portion of the work. Once the acceptance documents are presented for the work performed, this bond will be released proportionally.

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

## VENEZUELAN INSPECTION COMMISSION

FIFTH. "THE MINISTRY" for all purposes related to the purpose of this Contract, shall be represented before "THE CONTRACTOR" by a "Venezuelan Inspection Commission", hereinafter "V.I.C." made up of a Chief and as many members as necessary to effectively fulfill its tasks, which should not exceed twenty-five (25). As for the crew of "THE SHIPS", it shall be made up of forty-four (44) crewmen and the representatives contemplated in the Specifications of the Designated Subcontractors, which should not exceed seven (7) persons to do the work in Israel or in the appropriate country. "THE MINISTRY" shall have the right to designate its official representatives at the facilities of the Designated Subcontractors indicated in the Seventh and Thirty-Seventh Clauses. The "V.I.C." shall be designated by "THE MINISTRY", and it shall act according to the instructions it receives from the General Navy Command, Naval Logistics Command, according to its Organic Manual.

First Paragraph: "THE MINISTRY", through the General Navy Command, Naval Logistics Command, shall notify "THE CONTRACTOR" of the name and rank of the Chief of the "V.I.C.", his second-in-command and other members of the "V.I.C.", indicating the group that shall be accompanying them to the fifteen (15) day course after the effective date of this Contract. The Chief of the "V.I.C.", for the fulfillment of his job, shall be considered vested with the necessary powers to that effect. Likewise, "THE MINISTRY" shall notify "THE CONTRACTOR" of any replacement of members of the "V.I.C." within fifteen (15) working days of the appointment of the replacement.

Second Paragraph: The services and support required by the "V.I.C." shall be regulated according to the conditions set forth in "THE SPECIFICATIONS" and in this Contract.

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

## ACCESS TO "THE CONTRACTOR'S" FACILITIES

SIXTH: "THE CONTRACTOR" shall, at the request of "THE MINISTRY", and after previous mutual agreement, allow access to the Shipyard, workshops and/or "THE SHIPS", so as not to interfere with the work, to those suppliers-subcontractors or other inspection personnel of "THE MINISTRY" who might need this access. The above mentioned suppliers, subcontractors or other inspection personnel must observe the safety requirements, rules and regulations of the United States of America and "THE CONTRACTOR", as described in Attachment "L".

## INSPECTION, SUPERVISION, AND DUTIES OF THE "V.I.C."

SEVENTH: Work on "THE SHIPS" and their systems and that performed according to the subcontracts granted according to the Thirty-Sixth Clause, as well as any other aspects considered in this Contract shall be done under the supervision and inspection of the "V.I.C."

First Paragraph: "THE MINISTRY", in addition to designating "V.I.C." members to perform their duties under this Contract, shall have the right and may appoint representatives of the Government of the Republic of Venezuela before "THE CONTRACTOR", to observe at any time during the life of this Contract, the progress and development of the work under this instrument, as well as to observe any tests performed in relation with said work. "THE CONTRACTOR" shall facilitate a breakdown of labor, equipment and service costs, if required by the "V.I.C."

Second Paragraph: The "V.I.C." shall have the right, acknowledged by "THE CONTRACTOR", to examine and inspect all the work covered by this Contract, during the process of execution. Likewise, it may examine or inspect the materials, machinery, equipments, spare parts, parts and qualified and specialized labor to be used in the above mentioned work, to verify that

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

these fulfill the requirements and "THE SPECIFICATIONS" mentioned in the First Clause of this Contract. Consequently, "THE CONTRACTOR" shall facilitate and allow members of the "V.I.C." free access to the Shipyard, workshops and places where work covered by this Contract is being performed, subject to the conditions set forth in the Sixth Clause. "THE CONTRACTOR" shall obtain from its subcontractors and subsuppliers the same access opportunities to their workshops for members of the "V.I.C." according to the safety norms and provisions of the above mentioned subcontractors. "THE CONTRACTOR" and its subcontractors agree to facilitate and cooperate with the "V.I.C." in all aspects related to its work under this Clause.

Third Paragraph: It is expressly understood and so the parties agree that any decision that needs to be made by the "V.I.C." in relation with the interpretation of this Contract or which in some way modifies the terms of any of "THE SPECIFICATIONS" and Contractual Clauses, must be negotiated in writing by the "V.I.C." before "THE MINISTRY" through the Naval Logistics Command of the General Navy Command, according to the Forty-Ninth Clause of this Contract. Notwithstanding the above, the Chief of the "V.I.C." will have the authority to sign the "Certificate of Final Acceptance" mentioned in the Twenty-Third Clause of this Contract, except when "THE MINISTRY" designates a special representative. The appointments of any special representatives will be provided to "THE CONTRACTOR" in writing and within fifteen (15) calendar days to allow for the completion of this activity.

Fourth Paragraph: The inspection and verification of the work and materials, equipment, spare parts and parts of "THE SHIPS" and labor required to do the work shall be conducted with the participation of the "V.I.C." and "THE CONTRACTOR" or their appointees at the end of each portion of the work (after having changed, repaired or installed a new ship equipment or part), during pier and sea trials, and according to "THE SPECIFICATIONS" . "THE MINISTRY" may use the

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

Quality Control service approved by the USA Government or any other deemed necessary. This service shall not affect delivery deadlines and the costs of this Contract. "THE CONTRACTOR" and "THE MINISTRY" shall continuously exchange information regarding the progress of these activities for the work mentioned in the First Clause of this Contract.

Fifth Paragraph: "THE CONTRACTOR" and its Designated Subcontractors shall facilitate to the "V.I.C." or any representatives appointed by "THE MINISTRY", for inspection purposes, the necessary instruments, blueprints and any other accessories, or equipment set forth in "THE SPECIFICATIONS" and Testing Protocols that might be required to perform the inspection tasks, both at "THE CONTRACTOR's" and at the subcontractors' workshops.

Sixth Paragraph: Should "THE CONTRACTOR" detect an irregularity from "THE MINISTRY's" Designated Subcontractors according to the Thirty-Sixth Clause while executing the work covered by this Contract that might affect "THE MINISTRY", it shall notify the "V.I.C." within fifteen (15) working days and take all pertinent actions for immediate correction.

Seventh Paragraph: "THE CONTRACTOR" agrees to obtain all the permits required by the American Government and shall demand similar provisions from the Designated Subcontractors to facilitate entry to and traveling in the United States or in the countries of the subcontractors, for a better fulfillment of the duties assigned to the "V.I.C." in or out of the Shipyard. "THE MINISTRY" shall provide, in a reasonable time, all the information pertaining to the "V.I.C." and the crews on "THE SHIPS" to facilitate compliance with the provisions of this Clause by "THE CONTRACTOR".

Eighth Paragraph: "THE MINISTRY" will have the right to appoint official representatives to perform the duties mentioned in the First, Second and Fourth Paragraphs of this Clause, at the

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

facilities of the Designated Subcontractors indicated in the Thirty-Sixth Clause of this Contract. "THE CONTRACTOR" shall include provisions substantially similar to those described herein in the subcontracts it undersigns with the Designated Subcontractors.

## EXTRAS AND/OR CONTINGENCIES

EIGHTH: "THE MINISTRY" through the General Navy Command, Naval Logistics Command and the "V.I.C." might request in writing that modifications, additions and maintenance work not previously planned in "THE SPECIFICATIONS" and that might be necessary for proper operation of "THE SHIPS" be performed, and "THE CONTRACTOR" shall proceed to analyze the request and agrees to inform the "V.I.C." in writing, within twenty-one (21) days of the date the request is made, indicating its estimated cost and how it would affect delivery deadlines so that the appropriate notification can be made to the General Controller's Office of the National Armed Forces. The price of all the modifications that will be agreed in writing in advance upon initiation of the work shall be charged against contingencies and the total may not exceed the sum allotted for this concept in the Second Clause. If necessary, the deadline will be extended to accommodate the additional work.

First Paragraph: It is hereby expressly agreed that in order to do the work referred to in this Clause, an approval will be required from "THE MINISTRY" through the Naval Logistics Command, General Navy Command, which will issue an approval in writing and will determine if the work should really be charged against contingencies. In any case, to proceed with any financial expenses, it will be necessary to have the approval of the General Controller's Office of the National Armed Forces.

Second Paragraph: "THE CONTRACTOR" may recommend in writing to "THE MINISTRY" to make a change necessary in the installation of equipment not previously planned for in "THE SPECIFICATIONS", explaining the need to make these changes and shall present a technical study

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

justifying them. It is hereby expressly agreed that in no event shall "THE CONTRACTOR" make any changes or technical studies without the express consent and approval of "THE MINISTRY", granted through the Naval Logistics Command of General Navy Command. Should "THE MINISTRY" be the one to propose the change to "THE CONTRACTOR", the latter must submit its budget for analysis by the Chief of the "V.I.C." before making it, and if, for any reason out of the control of "THE CONTRACTOR" this change were not made, the Naval Logistics Command, General Navy Command shall approve the administrative costs of the technical studies performed upon submission of the appropriate invoice.

Third Paragraph: Should the need for a change be found, either by "THE MINISTRY" or "THE CONTRACTOR", one of the parties shall immediately proceed to notify the other party in writing, in the understanding that while the change is in the process of being incorporated, it shall not affect the fulfillment of the Contract.

Fourth Paragraph: "THE MINISTRY", through the General Navy Command, shall present the General Controller's Office of the National Armed Forces with the documents indicating what work has been performed and the appropriate costs, the additional sums to be paid for all the changes or additions agreed upon in each particular case, and these will be paid after the submission of the broken-down invoices in an original and five (5) copies, following the Perceptive Control performed by the General Controller's Office of the National Armed Forces.

## CULPABLE DELAY AND PENALTIES

NINTH: Should there be a delay in the execution of the work covered by this Contract due to causes attributable to "THE CONTRACTOR", excluding those cases set forth in the Third Clause, Fifth Paragraph and based on the deadline indicated in the above mentioned Clause, "THE CONTRACTOR" shall pay penalties to "THE MINISTRY", calculated based on the total Contract

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

price indicated in the Second Clause of this document, up to a maximum of ten percent (10%) of the total Contract price, excluding the sum corresponding to Subcontractors Designated by "THE MINISTRY", as appears below:

| | | |
|---|---|---|
| More than one (1) day and up to one (1) | months | 0.50% |
| More than one (1) month and up to two (2) | months | 1.00% |
| More than two (2) months and up to three (3) | months | 1.25% |
| More than three (3) months and up to four (4) | months | 2.00% |
| More than four (4) months and up to five (5) | months | 2.25% |
| More than five (5) months and up to six (6) | months | 3.00% |
| | | ----------- |
| TOTAL | | 10.00% |

First Paragraph:  These penalties shall be cumulative and specifically refer to the part or equipment under this Contract that is late, except for the case of Designated Subcontractors, according to the deadlines set forth in the Third Clause and the specific work in the First Clause, and shall be calculated based on full and partial months of total delay in the delivery of "THE SHIPS" and their systems.  Full months shall be assigned the percentages listed above.  Partial months shall be expressed in days, and each shall count as one thirtieth (1/30) of the value for that month.  Similar penalties shall apply to delays caused by the Designated Subcontractors based on the price of the appropriate subcontract.

Second Paragraph:  In the event of a delay as described by this Clause, the penalty set is unrelated to any natural expenses that might derive from the stay of "THE SHIPS" at the Shipyard, which shall be covered by "THE CONTRACTOR".  Natural expenses under this Contract are those cause by "THE SHIPS" themselves (pier, air, electricity, water,

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

crane, cleaning, heating, tugboats), living expenses of the "V.I.C." personnel and the ships' crews.

<u>Third Paragraph:</u> In the event of a delay in the execution of the work covered by this Contract for a period greater than six (6) months over the deadline mentioned in the Third Clause, except when due to additional work, contingencies, acts of God or force majeure, or failure to receive payment from "THE CONTRACTOR", "THE MINISTRY" will have the right to rescind this Contract unilaterally, according to its Twenty-Eighth Clause.

<u>Fourth Paragraph:</u> "THE MINISTRY" shall notify "THE CONTRACTOR" of its decision to rescind this Contract if a decision to do so derives from the application of the Third Paragraph in this Clause, within the fifteen (15) working days following the end of the delay period set forth in this Clause through a certified letter or some other appropriate means of communication, as provided in the Twenty-Eighth and Thirty-First Clauses.

<u>Fifth Paragraph:</u> It is understood that, should penalties need to be enforced, there will be a twenty-one (21) consecutive day period, after notifying "THE CONTRACTOR" in writing, during which "THE CONTRACTOR" may submit an explanation justifying its delay to be analyzed. "THE MINISTRY" shall then notify "THE CONTRACTOR" of any decisions made, after the approval of the General Controller's Office of the National Armed Forces, should the above mentioned explanation be submitted.

<u>Sixth Paragraph:</u> The monies resulting from enforcing the penalties mentioned in this Clause and all appropriate expenses shall be obtained by "THE MINISTRY" through a check in the name of the National Treasury.

<u>Seventh Paragraph:</u> Any penalties paid for by "THE CONTRACTOR" to "THE MINISTRY" according to this Clause shall be considered an indemnity and liquidation of the penalized concepts and in no case shall they exceed ten percent (10%) of the total Contract price, excluding any sums corresponding to Designated Subcontractors.

<div style="display:flex;justify-content:space-between">

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

</div>

# SECRET

Eighth Paragraph: "THE CONTRACTOR" shall include in the Subcontracts mentioned in the Thirty-Sixth Clause, a Clause through which appropriate measures are taken to protect all classified information, documents, blueprints and specifications in the terms specified in these contracts.

## CLASSIFICATION OF INFORMATION AND SECURITY
## OF DOCUMENTS, BLUEPRINTS AND SPECIFICATIONS

TENTH: Any information obtained by members of the "V.I.C." and representatives of "THE MINISTRY" during visits to the facilities and workshops of "THE CONTRACTOR", as well as to the subcontractor or subsupplier establishments shall be considered "Proprietary Data" of "THE CONTRACTOR" and therefore may not be disclosed by them to any third parties without prior written consent from "THE CONTRACTOR". Members of the "V.I.C." and representatives of "THE MINISTRY" shall abide by the usual security rules, regulations and procedures of "THE CONTRACTOR" and its subcontractors. Should this affect the normal duties of the "V.I.C.", as described in the Seventh Clause of this Contract, "THE CONTRACTOR" and/or its subcontractors and subsuppliers hereby agree to make the necessary arrangements for the "V.I.C." to perform its duties, according to the Sixth Clause of this Contract.

First Paragraph: "THE MINISTRY" and all the subcontractors, as well as any individuals visiting "THE CONTRACTOR's" facilities, must comply with all the security requirements of the appropriate country, and any other safeguard rules, regulations, policies and procedures set forth by "THE CONTRACTOR", which appear in Attachment "L" of this Contract. The presence of all individuals visiting the facilities of "THE CONTRACTOR" is subject to approval from the Department of Defense (U.S. NAVY) of the United States of America.

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

Second Paragraph: "THE MINISTRY" and "THE CONTRACTOR" shall keep as top "Secret" the body of the Contract. "THE SPECIFICATIONS", blueprints and other documents provided under the Contract shall be "Confidential". Any documents, blueprints and any other kind of information provided by the Government of the Republic of Venezuela or "THE CONTRACTOR" for the execution of this Contract, shall be classified and handled in the same way as the above mentioned Government. This "SECRET" or "CONFIDENTIAL" classification, as applicable, is that used in compliance with security norms currently in effect in Venezuela.

Third Paragraph: Disclosure, negotiation, use, storage, distribution and disposal of all the information, data, documentation and hardware during production or produced and submitted by either party under the terms of this Contract shall be conducted according to the security procedures in the "Industrial Protection Security Manual" of the Department of defense of the United States of America, with the security classification determined by the Security Official at "THE MINISTRY" whose reasonable requests and requirements shall be promptly observed by "THE CONTRACTOR".

Fourth Paragraph: "THE CONTRACTOR" must have secret facility security clearance granted by the United States of America.

Fifth Paragraph: Any information classified by "THE MINISTRY" shall be safeguarded with a clear indication of all related materials, of the applicable classification mark as set forth in the security classification of the contract, "Security Format" used by "THE CONTRACTOR", called under this Contract "DD Form 254" Attachment "M" and/or another written notice and observing the following security controls:

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

a. All documents labeled "Proprietary Data" shall be stored in filing cabinets, desks or other similarly locked spaces to prevent access to them from unauthorized individuals.

b. The destruction of classified documents shall be by shredding or burning. Documents labeled "Proprietary Data" shall be destroyed by hand and disposed of like regular garbage.

c. Documents labeled "Proprietary Data" shall be sent within U.S. territory via express or first-class mail. Shipping is authorized through Federal Express or other similar courier services.

d. No U.S. classified information shall be used in the execution of this Contract. Furthermore, any classified information of the Republic of Venezuela and/or classified materials to be submitted as set forth in this Contract shall be handled through Government channels, as specified in writing by each Government.

Sixth Paragraph: It is hereby agreed that "THE SPECIFICATIONS", technical data and information provided in writing to "THE CONTRACTOR", prior to the signing of this Contract and throughout its duration, which are clearly and expressly labeled "Proprietary Data" shall not be disclosed by "THE CONTRACTOR" to any third parties and/or Designated Subcontractors under this Contract who might request it. "THE CONTRACTOR" shall not be liable for the disclosure of data that: 1) Are or will be disclosed to the public by sources other than "THE CONTRACTOR" or its subcontractors prior to or throughout the duration of this Contract; 2) Are disclosed in writing by the Republic of Venezuela; 3) "THE CONTRACTOR" proves beyond any doubt that it was aware of these data prior to the disclosure or obtained them legally from a third party; 4) "THE CONTRACTOR" proves through documents that the "PROPRIETARY DATA" were known to it before their disclosure; 5) Are developed separately from this Contract; 6) Become known to "THE

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

CONTRACTOR" through inspection or analysis of products available in the market; or 7) takes place five (5) years after the Contract ends.

Seventh Paragraph: "THE MINISTRY" and "THE CONTRACTOR" shall not be liable for involuntary or accidental –unintentional- disclosure of information labeled "Proprietary Data", when such disclosure occurs in spite of being as cautious as "THE MINISTRY" and "THE CONTRACTOR" normally are to preserve and protect their own proprietary information.

Eighth Paragraph: "THE MINISTRY" shall certify the security integrity of its personnel before "THE CONTRACTOR's" security official prior to their arrival at "THE CONTRACTOR's" facilities. "THE MINISTRY's" personnel shall subject themselves to "THE CONTRACTOR's" and the U.S. Government's security requirements.

Ninth Paragraph: All of "THE CONTRACTOR's" employees who will be doing work or providing services under this Contract in Venezuela shall subject themselves to the Venezuelan security requirements.

PERSONAL INSURANCE

ELEVENTH: "THE CONTRACTOR" shall purchase, at no cost to "THE MINISTRY", personal injury insurance for members of the "V.I.C." and the Crew for the duration of their duties and execution of the work covered by this Contract and the testing of "THE SHIPS" and their systems, until their approval, according to the following rates:

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

a) Life Insurance for each person (Death Benefits):

Officers and sub-officers maximum 25 people    US$    50,000.00

Dependents                                US$     5,000.00

(spouse and children under 18)

Sailors maximum 44 people            US$    10,000.00

b) Hospitalization (Injury or Illness)

     b.1)   Payable benefits for one hundred percent (100%) of reasonable expenses

     b.2)   Lifetime maximum of      US$ 1,000,000.00

     b.3)   Dental benefits as defined in the Insurance Policy.

     First Paragraph: "THE MINISTRY" shall cooperate with "THE CONTRACTOR" and provide the information required by the insurance company, to fulfill the objectives of this Clause, at least thirty (30) working days prior to the beginning of work by each of the members of the "V.I.C." and the crew.

     Second Paragraph:   Specific details for the above mentioned insurance policies shall be included in Attachment "N" of this Contract.

## WORK PROGRAMS

     TWELFTH: "THE MINISTRY" and "THE CONTRACTOR" shall jointly perform a detailed inspection of the ships covered by this Contract once they arrive at the facilities of "THE CONTRACTOR"; "THE CONTRACTOR" shall submit to the "V.I.C." a report of said inspection. The sequence of work covered by this Contract shall be carried out in accordance with the PER TYPE

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

DEPENDENT SEQUENCE NETWORK PROGRAM General Program, which will be the result of the above mentioned inspection performed by the "V.I.C." and "THE CONTRACTOR". "THE CONTRACTOR" shall also submit the following programs, in Spanish, to the "V.I.C.":

a) The Grounding Program, which will provide a report of Dock availability to be submitted within thirty (30) calendar days of the effective date of this Contract.

b) The Preliminary Program for the Development of Required Blueprints that shows their designation and delivery dates within ninety (90) calendar days of the effective date of this Contract.

c) The Program giving details of the main equipment, describing the types, quantities and dates each equipment is required at the Shipyard, for manufacturing and installation; anything that might affect the schedule of this Contract; early delivery date. This program must be submitted within ninety (90) calendar days of the effective date of this Contract.

d) Any applicable standards for the work to be done, such as welding, painting, pipeline testing, partitions, etc. within ninety (90) calendar days of the effective date of this Contract.

First Paragraph: Work programs must be kept up to date through monthly programs to be submitted to the "V.I.C." prior to their execution and will contain a list of work to be done for information, analysis and approval.

Second Paragraph: In order to keep the Program mentioned in section c) of this Clause up-to-date, "THE CONTRACTOR" shall inform the "V.I.C." of the date large materials and equipment

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

are received at the Shipyard.

    Third Paragraph:  On a monthly basis, or when required by any of the parties, meetings will be held between the "V.I.C." and "THE CONTRACTOR" in order to examine the progress of the programs and decide on measures to be taken in order to comply with the plan.

## NEW MATERIALS, EQUIPMENT AND SPARE PARTS

    THIRTEENTH:  "THE CONTRACTOR" shall provide the spare parts based on the requirements and specifications of "THE MINISTRY" according to the Second Clause, Second Paragraph of this Contract, to be used for spare parts stock, which might be increased and charged against extras and/or contingencies, with the approval of the General Controller's Office of the National Armed Forces.  "THE CONTRACTOR" shall be authorized to start purchasing at least Fifty Percent (50%) of the spare parts twelve (12) months before the delivery of the first ship, and the remaining Fifty Percent (50%) when the "V.I.C." tells it to do so, with the approval of the Naval Logistics Command, General Navy Command.

    First Paragraph:  It is understood that the parts and spare parts to be supplied by "THE CONTRACTOR" must comply with "THE SPECIFICATIONS" and have the certification and quality control of the appropriate equipment or system manufacturer, as well as the manufacturing date.

    Second Paragraph:  "THE CONTRACTOR" will not have to manufacture or purchase and deliver to "THE MINISTRY" any spare parts that have an added billing value that exceeds the sums set forth in the Second Clause of this Contract, unless it is so done at the request of "THE MINISTRY", in which case it shall be ruled by the Eighth Clause.  The term "billing value" means the sum of "THE CONTRACTOR's" actual costs for labor and materials used in the manufacturing or purchase of said spare parts plus any applicable overhead, profits and indirect costs.

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

Third Paragraph: Any spare parts, hand tools, portable test equipment and portable equipment items, including those that are part of "THE SHIPS'" supplies, must be labeled, stored and kept by "THE CONTRACTOR" in appropriate places prior to the delivery of "THE SHIPS".

Fourth Paragraph: Any spare parts onboard, and any materials belonging to "THE MINISTRY" shall be stored by "THE CONTRACTOR" according to "THE SPECIFICATIONS" or the norms set forth in the previous Paragraph.

Fifth Paragraph: The materials, spare parts, parts and equipment to be supplied for storage must be crated or packed onboard for safekeeping by "THE CONTRACTOR" free of charge for "THE MINISTRY", according to appropriate standards for each type of material, considering its characteristics. On the outside of the crating or packing, there must be a complete identification of the material, equipment and spare parts separated for each item; this information must contain the description of the item, quantity, manufacturer's part number and equipment the spare parts belong to. This information must match that used in the monographies and/or original manuals of the equipment installed onboard, including the model, spare part number and any other identification provided by the manufacturer.

Sixth Paragraph: "THE MINISTRY" may, at the request of "THE CONTRACTOR", loan spare parts belonging to "THE MINISTRY's" stock to be utilized in the work covered by this Contract. "THE CONTRACTOR" must report in writing and on a monthly basis about all the spare parts provided by "THE MINISTRY" from the above mentioned stock and when inappropriate for future utilization, "THE CONTRACTOR", in mutual agreement, may restore them or replacement at no cost to "THE MINISTRY". Should the above mentioned spare parts or parts be adequate for future utilization, they will be returned to the general stock of "THE SHIPS" prior to their delivery. It

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

is hereby understood that the price of this Contract does not include "THE CONTRACTOR's" obligation to respond for the purchase of spare parts related to the existing materials and equipment, removed or replaced in "THE SHIPS", which are not covered by this Contract. "THE CONTRACTOR" will not be responsible for the purchase of spare parts related to any equipment of the Subcontractors Designated by "THE MINISTRY", the manufacturer and supplier of the electronic war systems or the company chosen to perform helicopter maintenance and the work to be done by Alenia Difesa A Finmeccanica Company, Missiles Systems Division.

Seventh Paragraph: "THE CONTRACTOR" hereby agrees to sell directly to "THE MINISTRY" any new machinery, equipment and/or spare parts, as well as any other accessories related to the work covered by this Contract and that might be required over a twenty (20) year period of the date of delivery of the second Ship, at competitive, fair and reasonable market prices, clearly proven.

Eighth Paragraph: Should the above mentioned equipment, machinery, parts and spare parts, as well as any other accessories related to them, be discontinued or not available from the manufacturers, "THE CONTRACTOR" agrees to sell substitutes that meet the requirements laid out for the acceptance of "THE SHIPS", with the same quality of the item being replaced and whose quality does not negatively alter the performance of the equipment and machinery of the Ship in which they are installed, for at least twenty (20) years.

Ninth Paragraph: "THE MINISTRY" reserves the right to choose the equipment and system spare parts that will become part of the stock for the units, through the direct suppliers or manufacturer in the quantities and types of spare parts required. Should "THE MINISTRY" negotiate directly the spare parts and parts with the manufacturer, the participation of "THE

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

CONTRACTOR" shall be limited to administrative aspects, that is, payment of the appropriate invoices, thus relieving "THE CONTRACTOR" of any liability derived from the above mentioned negotiation. In this case, "THE CONTRACTOR" may only assign administrative costs to the purchased spare parts and/or parts, clearly proven and approved by the "V.I.C.".

## MATERIALS AND EQUIPMENT

FOURTEENTH: "THE CONTRACTOR" hereby guarantees that all the materials, equipment, supplies, components, spare parts and parts supplied under this Contract and according to "THE SPECIFICATIONS", will be new and not previously used or refurbished, recently manufactured and will also have the manufacturer's quality certification. Except when those materials, equipment, instruments, components, spare parts and parts are used according to the Thirteenth Clause, Third Paragraph of this Contract.

First Paragraph: The materials, equipment and spare parts that are identified in detail, with indication of the manufacturer, model and/or part number in the manufacturer's manual indicated in "THE SPECIFICATIONS", shall be considered authorized source items and acquired from that source.

Second Paragraph: The materials, equipment, supplies, components, spare parts and parts identified in detail with indication of the manufacturer, model and/or part number in the manufacturer's manual indicated in "THE SPECIFICATIONS", but are followed by the words "or equivalent" or "acceptable substitutes", are considered authorized source items and shall be purchased from that source; in that case, "THE CONTRACTOR" will have to purchase the materials, equipment, supplies, components, spare parts and parts from an authorized source, equivalent or acceptable substitutes.

Third Paragraph: If after three (3) months of the signing of this Contract, any item from

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

an authorized source among those designated by "THE MINISTRY", as described in the above paragraphs, has been discontinued or is not available from the manufacturer, "THE CONTRACTOR" should notify "THE MINISTRY" within five (5) days, providing information regarding alternate sources of supply, and present notification of this fact from the system's manufacturer as well as a study justifying it. Should the change of supplier mean an increase in costs, these will be authorized by "THE MINISTRY". Any cost increases resulting from equipment substitution when the equipment listed in the original specifications has been discontinued or is not available in the market shall also be charged against contingencies.

## INSTALLATION OF PLAQUES AND SIGNS

**FIFTEENTH:** All the identification plaques on equipment, warning signs or instruction plaques for the operation of motors to be installed aboard "THE SHIPS" by "THE CONTRACTOR" as per the current criterion and according to "THE SPECIFICATIONS", shall be engraved in Spanish. "THE CONTRACTOR" shall provide "V.I.C." for revision and approval, with enough and adequate information regarding the plaques and their text, in Spanish. "V.I.C." shall notify "THE CONTRACTOR" of any observations within thirty (30) working days of receiving them. The material covered by this Clause should be in place by the beginning of sea trials.

## MANUALS, BLUEPRINTS, DESIGNS AND DOCUMENTATION OF "THE SHIPS"

**SIXTEENTH:** "THE CONTRACTOR" shall submit to "V.I.C." the Blueprints, Documents and Design Calculations related to the work covered by this Contract, which technically supports the characteristics of the new equipment and systems in terms of their capacities and features, according to the requirements set forth in "THE SPECIFICATIONS" (Attachment "C") and any modification made to the equipment and/or systems covered by this Contract.

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

Single Paragraph: The Blueprints, Documents and Calculations mentioned in this Clause, shall be delivered to the "V.I.C." at least fifteen (15) calendar days before the beginning of the work each of them covers, so that the "V.I.C." can fulfill its duties as indicated in the First Clause of this Contract. Afterwards, as the work is being done, they will be submitted to the "V.I.C." in a minimum of two (2) and a maximum of four (4) copies per ship and its systems, for the "V.I.C." to be able to fulfill its duties.

## BLUEPRINTS AND DOCUMENTS

SEVENTEENTH: "THE CONTRACTOR" shall provide to the "V.I.C." the Blueprints and Documents mentioned in "THE SPECIFICATIONS" (Attachment "C") and listed below:

a) BLUEPRINTS:

General water load blueprint

General location blueprints for motor devices indicating their locking mechanisms and those of reducing gears

Grounding Blueprint

Diagram of tank location record

Blueprints of the new electrical circuits

Blueprints of the pipeline systems

Blueprints of the ducts and air conditioning

Blueprints of the engine device and its layout

Blueprints of new locations and new installations

2) STUDY OF THE PROPULSION SYSTEM

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

3) ELECTRICAL BALANCES

4) AUTONOMY CALCULATIONS

5) List of new Machinery of the Ships and Engine System, with their identification numbers and technical characteristics.

6) Compilation Table of the pressures and Final Tests in the workshop for the various systems onboard.

7) Characteristics and Description of the materials used onboard, if not specified in any other document.

8) New Equipment Removal manual.

9) Technical manuals for new equipments and/or systems

First Paragraph: The documents shall be written in Spanish and in accordance with "THE SPECIFICATIONS".

Second Paragraph: "THE CONTRACTOR" further agrees to provide copies of the Detail Blueprints, linked to possible repairs to "THE SHIPS" and any pertinent supplementary information for the modification of existing documentation within one hundred and twenty (120) calendar days of the effective date of this Contract.

Third Paragraph: The "V.I.C." has twenty (20) working days after these blueprints are submitted for revision, during which it reserves the right to request a revision and possible change. If after this time, "THE CONTRACTOR" were to determine any discrepancies with the blueprints, this submission shall be made as modifications are made and blueprints are ready for approval.

<div style="display:flex; justify-content:space-between">

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

</div>

# SECRET

Should there be no observations from the "V.I.C." within the time indicated in this Paragraph, the blueprints will be considered approved. Should there be any observations, any necessary modifications will be agreed upon in the fifteen (15) calendar days following the date when the observations were made.

Fourth Paragraph : "THE CONTRACTOR" shall prepare two (2) copies of the preliminary version of the Ships' Manuals as indicated in the previous Clause and shall deliver them to the "V.I.C." gradually, within ten (10) months of the effective date of this contract, to be reviewed and approved. These manuals shall be returned by the "V.I.C." to "THE CONTRACTOR" within sixty (60) days of receiving them for corrections and final printing.

Fifth Paragraph: The contents of the Manuals mentioned in this Clause shall be as required in "THE SPECIFICATIONS" and they must indicate original manufacturer part numbers for spare parts and new equipment.

## REJECTED MATERIAL, MACHINERY AND/OR EQUIPMENT

EIGHTEENTH: "THE MINISTRY" and "THE CONTRACTOR" shall consider Materials, Documentation, Machinery and Equipment rejected when they fail to meet the requirements set forth in "THE SPECIFICATIONS", or are not certified by the manufacturer of the equipment or system, as appropriate.

Single Paragraph: Whenever the "V.I.C." rejects an equipment, material or machinery due to its failure to meet the requirements set forth in "THE SPECIFICATIONS", "THE CONTRACTOR" must submit said equipment, material or machinery to new tests under the same conditions as when rejected, at no cost to "THE MINISTRY". Any delays caused by retesting cannot be used as

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

grounds for exemption under Caluse Twenty-Nine of this Contract.


## FACTORY OR SHIPYARD TESTING


NINETEENTH: "THE CONTRACTOR" shall present to the "V.I.C." for approval either at the factory or shipyard, only those tests conducted on new materials and/or equpments as set forth in "THE SPECIFICATIONS". The "V.I.C." and the representatives, along with "THE CONTRACTOR" and/or its subcontractor and/or its representatives, shall proceed to conduct the "Factory (or Shipyard) Acceptance Tests" as set forth in "THE SPECIFICATIONS" and in the subcontractor test requirements. These tests shall take place at "THE CONTRACTOR's" or its subcontractors' workshops and their costs shall be borne by "THE CONTRACTOR". The "V.I.C." hereby reserves the right to conduct and verify procedures, requirements and reports pertaining to tests performed by subcontractors under this Contract, in order to ensure compliance with "THE SPECIFICATIONS". The use of inventory items such as screws, nuts, pins, rivets, welding arcs, packing, etc., will be of the type and quality described in "THE SPECIFICATIONS".


First Paragraph: Testing procedures and requirements set forth in "THE SPECIFICATIONS" to be observed by the Factory or Shipyard Acceptance Tests shall be submitted by "THE CONTRACTOR" to the "V.I.C." at least one (1) month prior to the actual tests.


Second Paragraph: In the case of "Factory or Shipyard Tests" for Materials, Machinery and Equipment on each to "THE SHIPS" and their systems under this Contract, "THE CONTRACTOR" shall inform the chief of the "V.I.C." in writing, ten (10) working days in advance, of the date when such materials, machinery and equipment will be ready for the appropriate tests.


(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

Third Paragraph: All expenses incurred in relation with the tests mentioned in this Clause shall be borne by "THE CONTRACTOR" and are included in the total Contract price, except for the costs to take the "V.I.C." to locations outside the Shipyard. For any "Factory Tests" to be conducted outside the Shipyard, "THE MINISTRY" shall bear the costs of transportation for "V.I.C." members.

Fourth Paragraph: "THE MINISTRY" shall have the right to request "THE CONTRACTOR" to provide help or technical support to supervise the "Factory Tests" performed on equipment as required in "THE SPECIFICATIONS", or any additional tests considered necessary by "THE CONTRACTOR" or its subcontractors; this assistance shall be free of charge.

## FACTORY OR SHIPYARD CERTIFICATES OF APPROVAL

TWENTIETH: Approval of the "Factory or Shipyard Test" results by the "V.I.C." under THE Nineteenth Clause of this Contract binds the "V.I.C." to issue "Factory or Shipyard Certificates of Approval" according to the model in attachment "O" of this Contract.

First Paragraph: The "V.I.C." shall issue the "Factory or Shipyard Approval Certificate" signed by the Chief of the "V.I.C." -as long as the results are found to be in compliance with the provisions of the Nineteenth Clause- within twenty (20) calendar days of the tests.

Second Paragraph: Should the "V.I.C." or its representatives fail to be present at the Tests on the date notified by "THE CONTRACTOR" according to the work program indicated in the Twelfth Clause, "THE CONTRACTOR" shall proceed with testing in the absence of the "V.I.C." and

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

shall submit the appropriate documents to the "V.I.C.", who shall revise them and, if found to be in accordance with "THE SPECIFICATIONS", it shall issue the Factory or Shipyard Approval Certificate mentioned in this Clause, within twenty (20) calendar days of completion of the tests.

## DOCK AND SEA TRIALS

TWENTY-FIRST: The "Dock and Sea Trials" will be conducted according to "THE SPECIFICATIONS" in the presence of members of the "V.I.C." and "THE CONTRACTOR" or their representatives in the terms previously agreed upon between "THE CONTRACTOR" and the "V.I.C.", which will indicate the terms of evaluation, test execution methods and acceptance parameters.

First Paragraph: "THE CONTRACTOR" shall agree to provide thirty (30) working days prior to the beginning of the "Dock and Sea Trials", the programs and protocols for each Test. The procedures to be followed must match "THE SPECIFICATIONS"´.

Second Paragraph: "THE CONTRACTOR" shall inform in writing the Chief of the "V.I.C." at least thirty (30) working days in advance, of the date when each of "THE SHIPS" will be ready to begin the "Dock and Sea Trials", and will make the arrangements for each of the tests to be conducted in the presence of the "V.I.C." and its representatives.

Third Paragraph: Should the results of the dock and sea trials fail to conform to "THE SPECIFICATIONS" due to machinery, equipment, materials, spare parts, parts and/or labor supplied or hired by "THE CONTRACTOR", "THE CONTRACTOR" will have to repair any faults or

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

defects and repeat the tests under the same conditions as when the reject took place, at no cost to "THE MINISTRY".

Fourth Paragraph: If, during testing, any defects or faults are found which are caused by the machinery, equipment, materials, spare parts and/or labor provided by or used by "THE CONTRACTOR", and such defects or faults result in an interruption of the test or irregular machinery or equipment performance that can be corrected during testing, the test may continue with the approval of the "V.I.C.". In this case, after repair, the test will be considered valid in all respects, if completed according to "THE SPECIFICATIONS".

Fifth Paragraph: Any expenses derived from the tests mentioned in this Clause or related to such tests, shall be borne by "THE CONTRACTOR". When test delays or retesting are caused by faults or breakdowns in machinery or equipment not provided or worked on under this Contract, and which cannot be resolved during testing, "THE CONTRACTOR" may present the necessary documentation justifying this fact to the "V.I.C." for approval, in order to recover the time invested in the appropriate repairs and tests under the contract. In this case, any expenses derived from repeating the suspended tests shall be borne by "THE MINISTRY". Repair of these faults shall be treated as additional work under the Eighth Clause of this contract.

Sixth Paragraph: Operation of "THE SHIPS" during sea trials shall be under the care and supervision of "THE CONTRACTOR's" personnel. "V.I.C." shall be present during these trials and will participate in their execution as required in this Contract. "THE CONTRACTOR" will have operators, technicians and technical representatives for the new equipment and machinery onboard, both with "THE CONTRACTOR" and its subcontractors, available to provide training and advice to the members of the "V.I.C." and the crew, at no additional cost.

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

Seventh Paragraph: All sea trials will be conducted with the onboard crew. The ship and its crew will be responsibility of its Command. For these sea trials, all expenses shall be borne by "THE CONTRACTOR"; consumption will be measured with duly calibrated counters.

Eighth Paragraph: During the execution of the dock or sea trials, members of the "V.I.C." or anybody duly authorized by "THE MINISTRY" shall be present and make any pertinent previous remarks, always observing the principles of the safety plan developed for this program.

Ninth Paragraph: "THE CONTRACTOR" shall conduct the official velocity check for the maximum continuous power of the propulsion engines in order to determine their maximum speed. Similar tests shall be conducted to determine economy and cruise speed, as well as the respective sustainability of these velocities.

Tenth Paragraph: "THE MINISTRY" hereby proposes that upon completion of work on "THE SHIPS", they should attain a speed of 20.5 knots with diesel power and 33.0 knots with gas turbine power, with the minimum speed at 20.0 knots with diesel power and 31.0 knots with gas turbine power. "THE CONTRACTOR" hereby accepts the parameters mentioned above. Sea trials will be conducted to determine the actual speed attained by "THE SHIPS" and fulfillment of these criteria by "THE CONTRACTOR". Should these speeds fail to be reached due to causes exclusively related to materials or labor provided by "THE CONTRACTOR" or its subcontractors under his Contract, "THE CONTRACTOR" shall pay an indemnity to "THE MINISTRY" as follows:

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

Per ship:

Diesel: For every 0.5 knots below the 20.5 knots, "THE CONTRACTOR" shall pay an indemnity of TWO HUNDRED AND FIFTY THOUSAND DOLLARS (US $250,000.00) up to a maximum of TWO HUNDRED AND FIFTY THOUSAND DOLLARS (US $250,000.00), with the lowest acceptable speed being 20.0 knots.

Gas Turbine: For every 0.5 knots below the 33.0 knots, "THE CONTRACTOR" shall pay an indemnity of ONE HUNDRED AND TWENTY-FIVE THOUSAND DOLLARS (US $125,000.00) up to a maximum of FIVE HUNDRED THOUSAND DOLLARS (US $500,000.00), with the lowest acceptable speed being 31.0 knots.

In the case of an inability to reach the minimum speeds of 20.0 knots with diesel power and 31.0 knots with gas turbine power due to causes attributable to defects in the materials or labor provided by "THE CONTRACTOR" or its subcontractors, such defects will immediately be corrected by "THE CONTRACTOR".

In the case of an inability to reach the minimum speeds of 20.0 knots with diesel power and 31.0 knots with gas turbine power due to causes not attributable to defects in the materials or labor provided by "THE CONTRACTOR" or its subcontractors, "THE CONTRACTOR" will perform –within the scope of this contract- an engineering study to provide recommendations to the Navy regarding the actions needed to reach these speeds.

Every test conducted by "THE CONTRACTOR" to determine the velocity of "THE SHIPS" must start with a displacement of 2,500 metric tons, adjusted for the weather conditions prevailing

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

at the time of testing and the displacement specified in the sea trials documentation in the original acceptance of the ships.

During the execution of this contract, "THE CONTRACTOR" shall indicate in writing to the "V.I.C." any conditions outside of the scope of the Contract that might adversely affect the ability of "THE SHIPS" to reach the speeds mentioned above. Should these conditions fail to be corrected before sea trials, "THE CONTRACTOR" and the "V.I.C." will negotiate the impact on the parameters and minimum speed set forth in this Clause and will review the appropriate speeds.

The indemnity to be paid by "THE CONTRACTOR" for the concepts indicated in this Clause, shall not exceed ONE MILLION FIVE HUNDRED THOUSAND DOLLARS (US$ 1,500,000.00) for both ships.

DOCK AND SEA TRIAL ACCEPTANCE CERTIFICATES

TWENTY-SECOND: For each of the "Dock and Sea Trials", test documents prepared jointly by the "V.I.C." and "THE CONTRACTOR" according to "THE SPECIFICATIONS" will be used. Upon successful completion of each of the "Dock and Sea Trials", the "V.I.C." shall issue one of the documents mentioned in the Twenty-First Clause for each test. Then it shall issue a "Dock and Sea Trials Acceptance Certificate" according to the model in Attachment "F".

CERTIFICATE OF FINAL ACCEPTANCE AND ASSISTANCE AFTER SIGNING

TWENTY-THIRD: When the "Certificate of Acceptance" is issued by the "V.I.C." for the Dock and Sea Trials of each of "THE SHIPS" and once the documents mentioned in the Third Clause, Fourth Paragraph, and Fourth Clause of this Contract are submitted by "THE

# SECRET

CONTRACTOR", "THE MINISTRY", through the "V.I.C." or the designated special representative and "THE CONTRACTOR" shall sign within fifteen (15) calendar days three copies of the "Certificate of Final Acceptance" for the work under this Contract in the appropriate Ship, after the Perceptive Control and favorable approval of the work issued by the General Controller's Office of the National Armed Forces and in the terms indicated in Attachment "P" of this instrument. When signing the "Certificate of Final Acceptance" for the work performed on each ship, "THE MINISTRY" shall hand over the documentation to release the faithful compliance bond set forth in the Fourth Clause, section b) of this Contract.

First Paragraph: Once the "Certificate of Final Acceptance" is signed by representatives of "THE MINISTRY" and "THE CONTRACTOR", the validity of the document shall be final and the work under this Contract, regarding each Ship shall be deemed completed by "THE CONTRACTOR", except for the work to be performed under the warranty provisions of this Contract and any other pending work that may be performed during the pre-transit period or any other work that the parties mutually agree to execute during the warranty period, as well as that related to the release of the Bond indicated in the Fourth Clause, section b).

Second Paragraph: "THE CONTRACTOR" hereby agrees to provide "Technical Support" to "THE MINISTRY" for a period no shorter than twenty (20) years after the signing of the "End of Warranty Certificate", in the form of work and/or special support services regarding the new equipment and systems furnished by "THE CONTRACTOR" as required by "THE MINISTRY", at a cost to be previously agreed upon by "THE MINISTRY" and "THE CONTRACTOR".

Third Paragraph: During the execution of the work under this contract, "THE CONTRACTOR" shall provide Technical Support to "THE MINISTRY" using the "Technical Specifications", manuals, drawings and information obtained from the manufacturers of the

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

equipment purchased for "THE SHIPS". This Technical Support is detailed in Attachment "G" of this instrument.

## PRE-TRANSIT PERIOD

TWENTY-FOURTH: The pre-transit period, for the purposes of this contract, shall be the period from the date when the Chief of the "V.I.C." undersigns the "Certificate of Final Acceptance" to the date when the ship is formally authorized to set sail for Venezuela.

First Paragraph: After signing the "Certificate of Final Acceptance", the Ships will be under the full operational control of the Venezuelan Navy; "THE MINISTRY" therefore assumes any risk for loss of the ship and all its components, supplies and equipment, and for death or injury to any employee aboard the ships after delivery.

Second Paragraph: "THE CONTRACTOR" shall provide dock services, ground services, electricity, safety and storage during this preparation period. After this pre-transit period, which shall not exceed thirty (30) calendar days, the ship shall set sail for Venezuela. Armament and/or ammunition loading services are not included in this contract and cannot be carried out at "THE CONTRACTOR's" facilities.

Third Paragraph: "THE CONTRACTOR", during this period, may execute any additional work required in the ships; it will also cooperate with the crew in obtaining supplies or supply replacements as required for the trip to Venezuela. In this case, these expenses shall be borne by "THE MINISTRY".

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

<u>TWENTY-FIFTH</u>: After signing the "Certificate of Final Acceptance" for each ship, as indicated in the Twenty-Third Clause of this Contract, there will be a warranty period of twelve (12) months for each ship. "THE CONTRACTOR" shall guarantee new equipment and materials furnished, as well as word performed under this Contract that might be defective or break down in "THE SHIPS" and their systems. Likewise, "THE CONTRACTOR" must and is therefore committed and agrees to repair all deficiencies or faults caused by design error, use of lower-quality materials and defective workmanship by "THE CONTRACTOR".

<u>First Paragraph</u>: If within the periods mentioned in this Clause, following the signing of the "Certificate of Final Acceptance" for either of the two (2) Ships and their systems under this Contract, "THE MINISTRY" should notify "THE CONTRACTOR" in writing and through the General Command Office of the Navy of any defect or fault in the above mentioned assets, within fifteen (15) days of finding the defect or fault, as long as the cause of the defect or fault is not inadequate maintenance, incorrect operations or normal wear and tear, or due to damages caused by acts of God or force majeure, "THE CONTRACTOR" shall proceed to replace or repair the defective products or parts, at no cost to "THE MINISTRY", in its Shipyards or at its subcontractors' workshops. It is understood that if a communication regarding a deficiency is submitted to "THE CONTRACTOR's" warranty representative, it shall be considered delivered to "THE CONTRACTOR".

<u>Second Paragraph</u>: Correction of any warranty deficiencies required to be done under this Clause shall be performed, if possible, at "THE CONTRACTOR's" facilities in Pascagoula, Mississippi, or once "THE SHIPS" have been released, at the location indicated by "THE MINISTRY" in the Republic of Venezuela. "THE CONTRACTOR" may, in agreement with "THE MINISTRY", have this work performed at another Shipyard or another repair location. If the parties

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

agree for the work to be performed at a Shipyard or Ship repair location other than the facilities of "THE CONTRACTOR", "THE CONTRACTOR" shall bear the cost of such work at the rates of continual work in commercial Shipyards or ship repair facilities in effect in such port areas, including the cost of dry dock for the ship, therefore, "THE CONTRACTOR" may have the work done in such shipyards or ship repair facilities.  When calculating the warranty period according to this Clause, any time "THE SHIPS" are not available for service as a consequence of a warranty fault shall be excluded.  Consequently, the warranty shall be extended for the whole ship and its components for a period of time equal to that of unavailability of the appropriate ship due to a warranty deficiency, of which "THE CONTRACTOR" is responsible as set forth in this Contract.

Third Paragraph:  If after delivery of "THE SHIPS" a fault is found that requires transportation of some equipment, material or replacement to "THE CONTRACTOR's" Shipyard, the administrative and transportation costs related to the returned item or items shall be borne by "THE CONTRACTOR", as will be the transportation costs for the repaired, modified or replaced items, as long as "THE CONTRACTOR" is responsible for the repair, modification or replacement under the terms of this warranty.  Such items shall be sent and forwarded preferably by air. Otherwise these costs shall be borne by "THE MINISTRY".

Fourth Paragraph:  The one and only right of "THE MINISTRY" for any warranty deficiency claims shall be the obligation of "THE CONTRACTOR", according to this Clause, to repair and/or replace and/or send to be repaired and/or replaced any Warranty deficiency.  In no case shall "THE CONTRACTOR" be liable for any amount of money resulting from delays, storage charges, loss of use or resulting damages and loss of profit.

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

<u>Fifth Paragraph:</u>   "THE MINISTRY" shall notify "THE CONTRACTOR" of any warranty deficiencies according to what is set forth in this Clause, indicating in the notification the specific defect found along with a request for it to be corrected.  Should "THE SHIPS" be at sea when the deficiency is found, this notification shall be delivered within thirty (30) days of ending the trip. Failure by "THE MINISTRY" to furnish a timely notification to "THE CONTRACTOR" of the warranty deficiency after it is found shall be considered a waiver by "THE MINISTRY" regarding such warranty deficiency.  In no case shall "THE CONTRACTOR" be obligated under this contract for a warranty deficiency known or found by "THE MINISTRY" during an inspection conducted at any time within the warranty period except when a written notice of said deficiency is issued no later than fifteen (15) calendar days after the warranty period has expired.

<u>Sixth Paragraph:</u>   "THE CONTRACTOR" will bear no responsibility regarding a warranty deficiency not reported by "THE MINISTRY" in writing within the fifteen (15) calendar days following the expiry of the warranty period in spite of any negligence by "THE CONTRACTOR" or its employees or any materials supplier related to it and "THE MINISTRY" shall free "THE CONTRACTOR", its employers, subcontractors and their employees of any liability derived from such warranty deficiency; therefore, any deficiency reported after the above mentioned period shall be borne by "THE MINISTRY".

<u>Seventh Paragraph:</u>  In the event of a serious and urgent fault attributable to the equipment, new materials and workmanship used by "THE CONTRACTOR" that directly affects the safety and/or navigationability of "THE SHIPS" under this Contract, "THE MINISTRY" shall be entitled to choose the most appropriate Shipyard for a prompt and efficient emergency repair.  Simultaneously with this action, "THE MINISTRY", through the Naval Logistics Command of the General Navy Command, agrees to inform "THE CONTRACTOR" in writing of the decision made so that "THE

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

CONTRACTOR" may proceed in a period of fifteen (15) calendar days to make the necessary arrangements for the repairs to be performed at the selected Shipyard.

**Eighth Paragraph:** Should "THE CONTRACTOR" choose to perform only provisional emergency repairs at the above mentioned Shipyard or repair facilities mentioned in the Seventh Paragraph and transport the faulty SHIPS to another Shipyard accepted by "THE MINISTRY", "THE CONTRACTOR" hereby agrees to bear all the costs associated with the transportation or hauling required for the trip from the Shipyard chosen by "THE MINISTRY" to the other Shipyard and pier.

**Ninth Paragraph:** Should the work mentioned above be conducted at the facilities of a Venezuelan Shipyard, "THE MINISTRY" hereby agrees to collaborate with "THE CONTRACTOR" to obtain cost and delivery time conditions as if the work were to be done for "THE MINISTRY".

**Tenth Paragraph:** Any part, component or spare part required for a Warranty Repair shall be sent CIF Puerto Cabello, Estado Carabobo, Venezuela, if transported by sea, and CIF La Guaira (Maiquetia Airport), Distrito Federal, Venezuela, if transported by air in both cases, paid for by "THE CONTRACTOR". "THE MINISTRY" may purchase the original guaranteed spare parts in other locations, in which case "THE CONTRACTOR" shall reimburse "THE MINISTRY" of the price paid, including transportation and insurance.

**Eleventh Paragraph:** "THE MINISTRY" shall enforce all matters related to the execution of the "Technical Warranties" through the General Navy Command, Naval Logistics Command.

**Twelfth Paragraph:** Should "THE MINISTRY" modify the materials or part of the materials without the approval of "THE CONTRACTOR", "THE CONTRACTOR" shall not have a warranty

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

obligation for matters related to said materials or modified parts. The warranty obligations pertaining to "THE CONTRACTOR" and the corresponding recourses of "THE MINISTRY" shall be only and exclusively those indicated in this Clause.


Thirteenth Paragraph: "THE CONTRACTOR" shall consider as Warranty Claims every fault reported according to the provisions of this clause by "THE MINISTRY" through the General Navy Command, Naval Logistics Command to the Warranty Representative with "THE CONTRACTOR". "THE CONTRACTOR" shall accept them once the warranty representative has confirmed the fault or faults. Should no such report be made, "THE CONTRACTOR's" obligations regarding the fault will end. The corresponding "Fault Report" should be prepared in writing as acceptance of said report. "THE CONTRACTOR" hereby agrees to respond within the following fifteen (15) days to any Warranty request made by "THE MINISTRY" and to initiate the appropriate actions. Should there be a disagreement between the parties, the provisions of the Forty-Second Clause of this Contract shall apply.


Fourteenth Paragraph: All the software, including any belonging to a software package furnished by "THE CONTRACTOR" or by the subcontractors chosen by "THE CONTRACTOR", other than the Designated Subcontractors mentioned in the Thirty-Sixth Clause, delivered to "THE MINISTRY" shall comply with the requirements of "THE SPECIFICATIONS" for a warranty period of twelve (12) months, when such Software is used in order to use Hardware, as required, any remaining software not furnished by "THE CONTRACTOR" or not ordered by "THE CONTRACTOR" or by the subcontractors selected by "THE CONTRACTOR", will only have a warranty issued by its creator to "THE CONTRACTOR" in the benefit of "THE MINISTRY". After the expiry of the warranty period, all software shall have the same warranty and ownership rights as granted by the creator of the software to "THE CONTRACTOR", to be transferred as allowed to "THE MINISTRY". Software warranties from Designated Subcontractors shall be the exclusive

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

responsibility of the subcontractor under its "Technical Specifications", which shall be transferred by "THE CONTRACTOR" to "THE MINISTRY" and guaranteed by the Warranty Bond of said Designated Subcontractors. "THE CONTRACTOR" does not guarantee that any software supplied by the Designated Subcontractors will operate without interruptions or errors. "THE CONTRACTOR" shall do what it can to correct any errors that might occur, only in software furnished by "THE CONTRACTOR" or furnished by subcontractors selected by "THE CONTRACTOR" during the twelve (12) month warranty period indicated above. "THE CONTRACTOR" shall require its subcontractors, for the integration of the war system, to take the responsibility of providing the warranty for the war system software to "THE MINISTRY" after the warranty period mentioned above for original equipment stated in "THE SPECIFICATIONS" in connection with the lifetime of such equipment. When used in the Contract or in "THE SPECIFICATIONS", the term "for life" shall refer to the equipment's lifetime. This warranty shall be void should the software or hardware be inappropriately operated, used for a purpose other than intended or modified.

Fifteenth Paragraph: The liability of "THE CONTRACTOR" regarding the warranty obligation under this Contract shall be limited to Ten Percent (10%) of the total contract price paid to "THE CONTRACTOR", excluding the sum corresponding to the Designated Subcontractors, which shall be covered by the provisions of the Thirty-Seventh Clause.

## END-OF-WARRANTY CHECK AND CORRECTION

TWENTY-SIXTH: At the end of the twelve (12) months following the signing of the "Certificate of Final Acceptance" for either of the Ships and their Systems, "THE CONTRACTOR", through its warranty engineers or technicians, along with the person or persons appointed by "THE MINISTRY", hereby agrees to perform an "End-of-Warranty Check" of "THE SHIPS" and their systems for the equipment mentioned in "THE SPECIFICATIONS", following the criteria to be

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

agreed upon between the "V.I.C." and "THE CONTRACTOR", preparing beforehand the appropriate protocols and adopting the criteria set forth to this purpose with the "Mariscal Sucre" Class Frigates. This check shall be conducted before the signing of the "End of Warranty Certificate", in the understanding that any deficiencies, faults and/or abnormal wear of the equipment and materials furnished and workmanship used by "THE CONTRACTOR" shall be corrected and paid for by "THE CONTRACTOR".

Single Paragraph: At the end of the "Technical Warranty" terms for each Ship and its systems, subsequent to the end-of-warranty check, "THE MINISTRY", through the General Navy Command and "THE CONTRACTOR" shall sign the "End of Warranty Certificate" for "THE SHIPS", included in Attachment "Q" of this Contract, at which time, the "Proper Functioning Bond" mentioned in the Fourth Clause, section c) of this Contract shall be released.

## WARRANTY ENGINEERS AND TECHNICIANS

TWENTY-SEVENTH: "THE CONTRACTOR" shall designate Warranty Engineers and Technicians to tend to the faults or breakdowns in "THE SHIPS" and their Systems, for work done under this Contract, during the Warranty period, with sufficient experience to efficiently serve the areas of the hull, propulsion, auxiliary services, electricity, weapons and electronics and communications of "THE SHIPS" and their systems, who will stay in Venezuela as long as necessary in the understanding that "THE CONTRACTOR" shall be responsible for the results of the work and advice of the Warranty Engineers or Technicians. "THE CONTRACTOR" shall include detailed requirements of the technical specifications for each of the Designated Subcontractors in the appropriate subcontracts.

First Paragraph: "THE CONTRACTOR" shall pay for the wages, salaries, social security, benefits and transportation expenses from the United States to Venezuela, of the Warranty

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

Engineers and Technicians, and during their stay in Venezuela. The Designated Subcontractors shall also be responsible for their own personnel in the aspects mentioned above.

Second Paragraph: "THE MINISTRY", through the General Navy Command, Naval Logistics Command, shall provide housing, entertainment and health care, in its own facilities at the "CA. AGUSTIN ARMARIO" Naval Base, Puerto Cabello, Estado Carabobo, to the Warranty Engineers and Technicians and their families; it will also provide transportation within Venezuela and for any procedures related to the Warranty check. Likewise, it will provide advice to fulfill all legal formalities relating to their entry to and departure from the country. However, "THE CONTRACTOR" reserves the right to make any appropriate changes, at its own expense.

Third Paragraph: "THE MINISTRY" will give Junior Officer treatment to Engineers and Petty Officer treatment to Technicians with "THE CONTRACTOR" regarding housing, food, entertainment, work conditions and health care, both on ground naval facilities and aboard "THE SHIPS".

Fourth Paragraph: "THE MINISTRY" shall provide the Warranty Engineers and Technicians with a furnished office for their administrative functions, filing and processing of fault reports, ordering materials and spare parts. Likewise, it shall provide telephone communications, access to telex, fax and photocopier at the "Contralmirante Agustin Armario" Naval Base, Puerto Cabello, Estado Carabobo, secretary services (bilingual, Spanish-English) similar to the treatment established for the "V.I.C." during its stay in the Shipyard.

Fifth Paragraph: Warranty Engineers and Technicians, when required onboard, shall have free access to all the equipment installed on "THE SHIPS". They will have onboard quarters in

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

either of "THE SHIPS", but must disembark when "THE MINISTRY" deems it convenient and shall not have access to classified places without prior authorization.

Sixth Paragraph: Warranty Engineers and Technicians will not be required to navigate or to be present aboard any of "THE SHIPS" during war missions or if an emergency state is declared or Constitutional Rights are suspended in Venezuela.

Seventh Paragraph: No classified information obtained by the Warranty Engineers and Technicians during the course of their jobs shall be disclosed to third parties.

## CONTRACT RESCISSION

TWENTY-EIGHTH: "THE MINISTRY" shall have the right to rescind this contract if "THE CONTRACTOR" fails to fulfill any of the obligations covered by this Contract, or if "THE CONTRACTOR" is subjected to bankruptcy procedures, is liquidated by an order, decision or resolution of the Court resulting in seizure of its property, without such seizure being resolved in a period of thirty (30) days except when "THE CONTRACTOR" files for voluntary liquidation with the intent to merge, for example, with another company. In these cases, "THE CONTRACTOR" agrees to make sure that the new company, if any, takes on the obligations of "THE CONTRACTOR" with "THE MINISTRY" under this document. Otherwise, it shall secure another company to fulfill the obligations under this Contract.

First Paragraph: "THE MINISTRY" shall also be entitled to rescind this Contract for any or all of "THE SHIPS", if the work contracted for them have to be suspended due to force majeure events as provided in the Twenty-Ninth Clause of this contractual document, for a consecutive

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

period longer than six (6) months.

Second Paragraph: To rescind this contract, "THE MINISTRY" shall notify "THE CONTRACTOR" in writing in the event of any of the circumstances or causes for rescission contained in this contractual instrument, in the understanding that its rescission cannot be effected before thirty (30) calendar days after the above mentioned notice and "THE CONTRACTOR" shall, in this time, have an opportunity to try to solve the causes that originated the rescission.

Third Paragraph: "THE MINISTRY" shall under no circumstances be entitled to rescind this Contract regarding the work covered by it, once they have been accepted by the parties under the terms of this instrument.

Fourth Paragraph: Any rights to rescind this Contract shall be void if the causes that motivated such action cease to exist prior to the Contract rescission notification going into effect as indicated in this Clause or if it is determined that for some reason "THE CONTRACTOR" did not incur in a breach under the provisions of this Clause or that the breach was excusable. In this case, the rights and obligations of the parties shall remain as if the notice had not been issued.

Fifth Paragraph: Should "THE MINISTRY" rescind this Contract exercising its rights under this Clause, "THE CONTRACTOR" shall pay "THE MINISTRY" a sum corresponding to the following:

a) The sum total of all the amounts paid by "THE MINISTRY" to "THE CONTRACTOR" prior to the rescission date, minus any amounts paid or to be paid for work performed prior to the rescission and the amounts paid or to be paid to its subcontractors and/or additional work and/or

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

contingencies according to the provisions of the Eighth Clause of this instrument, after their evaluation and documented proof, with the mutual agreement of the parties.

b) Interest on the amount to be reimbursed under this Clause in its Fifth Paragraph, section a) at the Prime Rate in effect on the date of rescission, calculated from the delivery of the last payment made to "THE CONTRACTOR" until the date when such sums are returned to "THE MINISTRY". This payment of interest shall be considered a compensation for damages for "THE MINISTRY" under this rescission.

c) "THE MINISTRY" shall require "THE CONTRACTOR" to transfer the rights over and to hand over any complete supplies, partially complete supplies, parts, tools, pieces, devices, blueprints, drawings, information and contract rights, hereinafter referred to as "Manufacturing Materials" produced or purchased specifically for the execution of the rescinded Contract. "THE MINISTRY" shall deduct from the amount to be paid by "THE CONTRACTOR" under this Paragraph the amount agreed for these Manufacturing Materials delivered to "THE MINISTRY".

d) The overall sum owed to "THE MINISTRY" as a result of rescission according to the provisions of the Fifth Paragraph of this clause shall be guaranteed by the provisions of section b) of the Fourth Clause of this Contract and "THE MINISTRY" shall have the right to execute the bond for an amount equal to the cost of the work under this Contract not completed at the time of rescission. In no case shall "THE CONTRACTOR" be forced to pay an amount greater than the aforementioned bond.

Sixth Paragraph: "THE MINISTRY" may rescind this Contract in the interest of the Republic. Should this happen, "THE MINISTRY" shall compensate "THE CONTRACTOR" with the

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

amount the contracting parties agree upon, according to expenses incurred for the following concepts:

a) The price of the materials supplied and/or work performed under this Contract and the price of any materials and/or work that on the date of rescission are ready to be presented for approval by "THE MINISTRY" and/or execution by "THE CONTRACTOR".

b) The price of the equipment or systems completed and accepted at Factory tests or that on the date of rescission are ready to be presented for approval and acceptance by "THE MINISTRY".

c) The price of the work and materials, machinery, equipment and services that on the date of rescission are partially executed.

d) All proven and justified expenses made or committed to by "THE CONTRACTOR" and that are not indicated in sections a), b) and c) of this Clause, including the costs of "THE CONTRACTOR's" obligations with its Designated Subcontractors.

Seventh Paragraph: "THE CONTRACTOR" may suspend the work under this Contract due to a delay in payment for over sixty (60) working days, for causes attributable to "THE MINISTRY". This circumstance shall be informed to the General Controller's Office of the National Armed Forces and shall have the right to resolve the contract in its entirety or in part, if payment obligations contained in the Second Clause of this contract were unfulfilled when due. Failure by "THE CONTRACTOR" to immediately exercise any of these rights under this Contract shall not operate as a waiver.

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

## UNFORESEEN OR FORCE MAJEURE EVENTS

TWENTY-NINTH: "THE MINISTRY" and "THE CONTRACTOR" shall interpret as Unforeseen or Force Majeure Events any circumstances or events and their consequences that are out of "THE CONTRACTOR's" or its subcontractors' and Designated Subcontractors' control, that may arise after the effectivity of this Contract, that might prevent any of the parties from fulfilling their obligations such as: war or conditions similar to war, strikes, rebellion, insurrection, riots, civil war, revolution, blockade, sabotage, vandalism, prohibition of imports or exports, natural catastrophes, floods, abnormal weather conditions, dock worker strike, fire and epidemics, arbitration, acts of the Governments of the United States of America or the Republic of Venezuela, Israel and Italy, that arise after the effective date of this Contract, which shall be duly justified by "THE CONTRACTOR".

Single Paragraph: For the Unforeseen or Force Majeure Events provided for in this clause to act as a release from responsibility for "THE CONTRACTOR", it is essential that when arguing the existence of an Unforeseen or Force Majeure Event, "THE MINISTRY" be notified within fifteen (15) working days of the date when the event takes place and to be proven for those cases that are not public and notorious within twenty (20) working days following the notification, in the understanding that the parties may agree on a different deadline should this not be enough. It is hereby set forth that failure to comply with any of these deadlines shall not justify any extensions. Should the Unforeseen or Force Majeure Events persist, "THE CONTRACTOR" shall notify the other party of the persistence of the cases or termination of the event every fifteen (15) calendar days.

## EXPORT AND IMPORT LICENSES

THIRTIETH: "THE CONTRACTOR" hereby agrees to obtain the appropriate import licenses required by the United States government for materials and equipment purchased from

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

foreign sources except for Designated Subcontractors; furthermore, "THE CONTRACTOR" shall be responsible for obtaining the necessary export licenses for the transportation of materials, equipment, information and services to be delivered to "THE MINISTRY" and subsequently sent to Venezuela, and if necessary during the validity of the Contract, "THE MINISTRY" agrees to obtain the appropriate import licenses from the relevant authorities.

First Paragraph: "THE MINISTRY" shall cooperate with "THE CONTRACTOR" as required to obtain the approvals and licenses mentioned in this Clause, including the execution of the Technical Support agreement with "THE CONTRACTOR", Attachment "R". Additionally, "THE MINISTRY" shall obtain such approvals and/or from the Republic of Venezuela to aid in the execution of this Contract.

Second Paragraph: The parties hereby agree that each will cooperate with the other to obtain the approvals and/or certificates to allow people to travel as required by this Contract.

## NOTIFICATIONS

THIRTY-FIRST: Any notification that needs to be sent by one of the contracting parties to the other may be delivered in person, by first class registered or certified airmail, telegram, telex or fax, and such notifications delivered in person shall be considered completed on the date of receipt by the recipient, and those received by telex or fax shall be later confirmed by the recipient; any notifications personally delivered to the Chief of the "V.I.C." or his representative, with acknowledgment of receipt, will be considered delivered to "THE MINISTRY" or by an individual

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

duly authorized by "THE CONTRACTOR". These notifications shall be in Spanish and addressed to:


### THE MINISTRY

Ministerio de la Defensa

Comandancia General de la Armada

Av. Vollmer, San Bernardino, Caracas

Comando Naval de Logística

Caracas 1011 – Venezuela

Telex: 21168 CGMCO VC.

Fax:  5096753


### THE CONTRACTOR

Ingalls Shipbuilding, Inc.

1000 Access River Road

P.O. Box 149

Pascagoula, Mississippi MS 39567-0149

Att'n:  Mr. J.C. Arledge, III or Mr. C.L. Rector

TWX: (601) 935-1122

FAX: (601) 935-4742

Telephones:  (601) 935-3626 or (601) 935-5464


First Paragraph:  Notifications sent to entities other than those indicated in this Clause shall be considered void.

Second Paragraph:  Any changes to the Addresses indicated in this Paragraph shall be presented in writing.

<div style="display:flex; justify-content:space-between;">

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tilo M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

</div>

# SECRET

## LICENSE AND PATENT RIGHTS

THIRTY-SECOND: No terms in this Contract grant "THE MINISTRY" any rights over any patents or licenses owned by "THE CONTRACTOR" or under its control, and no information contained in the Blueprints, Manuals and Technical Specifications can be disclosed to affect "THE CONTRACTOR".

First Paragraph: "THE CONTRACTOR" shall indemnify "THE MINISTRY" for the liability (including any costs derived from it) resulting from the violation of any patent or invention of the United States of America (except patents approved by an application whose publication is or may be withheld by a Secret Order, under the conditions contained in volume 35, Section 181 of the U.S. Code (35 U.S.C. 181) Attachment "S", as a result of the manufacturing or delivery of "THE SHIPS", or the execution of services under this Contract, or the use of those mentioned below; this indemnity by "THE CONTRACTOR" shall not apply unless "THE CONTRACTOR" is notified in writing no later than thirty (30) days after "THE MINISTRY" receives a legal action notice from an institution and the approval by "THE MINISTRY" to provide information and assistance for the defense or settlement at "THE CONTRACTOR's" discretion.

Second Paragraph: When the use or operation of "THE SHIPS" has been forbidden by a legal action, or in the opinion of "THE CONTRACTOR" may be forbidden by the such an action, in both cases, "THE CONTRACTOR" shall, at its own discretion and expense, get "THE MINISTRY" the right for such use or operation, or modify them so as not to be considered in violation. This indemnity shall not include the costs of related damages or damages derived from lost use of "THE SHIPS" under this Contract. Likewise, it shall not apply if a claimed violation comes from the fulfillment of a written instruction from "THE MINISTRY" or from those specifications, documents,

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

drawings, equipment, plants, machinery, materials or similar items supplied to "THE CONTRACTOR" by "THE MINISTRY", or if it comes from additions or changes to "THE SHIPS", additions and changes made after delivery to "THE MINISTRY" by "THE CONTRACTOR", or if they are agreed upon by or for "THE MINISTRY" without the prior consent of "THE CONTRACTOR", or are based in a combination of "THE SHIPS" with other equipments or services not furnished by "THE CONTRACTOR". The extent of "THE CONTRACTOR's" liability under this Contract for any such violation shall be the costs and damages awarded by a final sentence ruled by a competent Court or Tribunal in any legal action for an amount not to exceed three (3%) percent of the total contract price. Such costs and damages shall also be reduced with "THE MINISTRY's" additional protection from costs and damages.

Third Paragraph: "THE MINISTRY" shall be responsible for any claims made for the violation of any patent or invention of the United States of America or any patent of the Republic of Venezuela, including those related to the design, specifications, documents, drawings, equipment, processes, machinery, materials or similar items supplied to "THE CONTRACTOR" by "THE MINISTRY", or the use, sale or disposal of them, and "THE MINISTRY" shall hold harmless and indemnify "THE CONTRACTOR" against those claims, costs and expenses, charges and damages that "THE CONTRACTOR" may and is forced to pay for the same reasons.

Fourth Paragraph: No payment related to any patent violation claims either alleged or actual will be made by "THE MINISTRY" or "THE CONTRACTOR" unless there is written consent from both parties, as applicable, such consent may not be withheld without justified cause except according to the final sentence of a competent Court or Tribunal.

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

## QUALITY CONTROL

> **THIRTY-THIRD:** "THE CONTRACTOR" shall implement a quality control program using as a guideline U.S. Department of Defense Instruction MIL-I-45208A and "THE CONTRACTOR's" Quality Manual dated October 1993. Any changes to this program shall be delivered in writing by "THE MINISTRY" fifteen (15) calendar days prior to their incorporation in the manual by "THE CONTRACTOR".

## TRANSFERS

**THIRTY-FOURTH:** This Contract and the rights derived from it may not be transferred or sold to third parties by "THE CONTRACTOR" without the written consent of "THE MINISTRY" according to Article 58 of the Regulation of Acquisition of Goods and Services for the National Armed Forces.

## SUBCONTRACTORS AND SUBSUPPLIERS

**THIRTY-FIFTH:** "THE CONTRACTOR" may use subcontractors and subsuppliers as it sees fit, in the understanding that any responsibility before "THE MINISTRY" shall always lie with "THE CONTRACTOR", and "THE CONTRACTOR" may not invoke as causes to exempt it from its obligations, any delays or inconveniences that might arise from the subcontractors or suppliers with the exception of those cases covered under the Twenty-Ninth Clause of this instrument, and the Designated Subcontractors as indicated in the Thirty-Sixth Clause of this Contract.

**Single Paragraph:** It is understood that regarding the weapons and electronics, platform and communications systems indicated in the First Clause of this Contract, "THE MINISTRY" shall

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

be entitled to approve the purchase of the new systems and subcontractors-suppliers from the options presented by "THE CONTRACTOR", based on their levels of strategic technical advantages and Updated Technology. When the selection of the subcontractor-supplier implies inevitably an additional cost for "THE CONTRACTOR" this increase shall be charged against the contingency items. Approval for this purpose shall be made by "THE MINISTRY" through the General Navy Command, Naval Logistics Command, without this subcontractor-supplier selection and approval negatively affecting the deadlines for completion of the work or delivery of "THE SHIPS" under this Contract. Regarding the selection process, "THE CONTRACTOR" shall present the various options within up to thirty (30) working days after the signing of the "Certificate of Beginning of Work", and "THE MINISTRY" shall have fifteen (15) calendar days after each option presented to give its approval in writing. Should the options approved by "THE MINISTRY" result in a delay in delivery, this situation can be considered an exemption from liability for "THE CONTRACTOR", with the prior approval of "THE MINISTRY".

## DESIGNATED SUBCONTRACTORS

THIRTY-SIXTH: As required by "THE MINISTRY", "THE CONTRACTOR" shall enter into subcontracts for the performance of the following work:

a) Purchase of the Electronic Work System with the company ELECTRONIC SYSTEMS LTD (Elisra)

b) Overhaul of two (2) AGUSTA BELL AB-121-ASW helicopters with the company Israel Aircraft Industries LTD (IAI), ARV-303 and ARV-306.

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

c) Major Maintenance of the Missile Launch System Otomat MK-2, sixteen (16) Otomat MK-2 missiles and Teleguidance T-G2 System with the company Alenia Difesa A Finmeccanica Company, Missiles Systems Division, formerly OTO MELARA, S.P.A.

First Paragraph: Designated Subcontractors previously identified in sections a) and b) were selected by "THE MINISTRY" after a competitive bidding process according to thè Venezuelan Bidding Law and its Regulations, where "THE MINISTRY" detailed the Technical Specifications to be fulfilled. Subsequently, "THE MINISTRY" agreed with said Designated Subcontractors the review of the Technical Specifications to adjust them to the technical services offered by them, in order to develop the scope of the work and technical services to be provided under the subcontracts. These work scopes are included in this Contract under Attachments "T" and "U" and are contained in the contracts to be entered into by "THE CONTRACTOR" and the Subcontractors mentioned above. These Subcontractors shall be paid by "THE CONTRACTOR" under this Contract.

Second Paragraph: "THE CONTRACTOR" shall include provisions in the contracts to be entered into with the Designated Subcontractors in sections a), b) and c) of this Clause, which show the obligations of the latter with "THE MINISTRY" in terms of the work to be done.

Third Paragraph: The Designated Subcontractor indicated in section c) of this Clause was selected by "THE MINISTRY" through a Direct Award, as set forth in the Venezuelan Bidding Law and its Regulations, just as in the paragraph above, "THE MINISTRY" negotiated the scope of the work and the technical services to be supplied by Alenia Difesa A Finmeccanica Company, Missiles Systems Division, formerly OTO MELARA, S.P.A. This scope of work is included under this Contract as Attachment "V" and is contained in the Subcontract entered into by Subcontractor

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

Alenia Difesa A Finmeccanica Company, Missiles Systems Division and the price to be paid to said Subcontractor.

Fourth Paragraph: "THE CONTRACTOR" shall manage the Subcontracts mentioned in this Clause in the following terms and conditions (which shall adjust themselves in all respects to the provisions herein):

a) Regarding the administration of the subcontracts, "THE CONTRACTOR" shall be responsible for the following:

1) Including the price of the subcontracts in this Contract.

2) Paying the Subcontractors according to the terms of the appropriate subcontracts.

3) Developing, negotiating and managing the terms and conditions of the subcontracts, according to this Contract.

b) Regarding the Technical Specifications of these subcontracts, "THE CONTRACTOR" shall perform the following duties:

1) Incorporating Technical Specifications in the subcontracts, including the requirements for any applicable tests according to the agreements between "THE MINISTRY" and the Subcontractors, as set forth in the First and Second Paragraphs of this Clause.

2) Purchasing, receiving and inspecting the materials, equipment, supplies and components under the aforementioned subcontracts.

3) Empowering the members of the "V.I.C." in the country of the Designated Subcontractor to directly perform supervision, surveillance and control duties regarding the application of "THE SPECIFICATIONS" as well as making any notifications generated in the execution of the work under these subcontracts; these members of the "V.I.C." shall be treated as specified in the

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

bids contained in the Subcontractors' "Technical Specifications".

4) Coordinating the installation of said materials, equipment, supplies and components with the global production plans of "THE CONTRACTOR".

5) Cooperating with "THE MINISTRY" to coordinate and assist in moving the supplies and components under these subcontracts.

6) Coordinating dock and sea trials for the items mentioned in the section above, with testing of other components, systems or functions of "THE SHIPS" that are the responsibility of "THE CONTRACTOR".

7) Allowing access to "THE CONTRACTOR's" facilities and to "THE SHIPS" and to the technical representatives of the subcontractors, who will install the materials, equipment, supplies and components in "THE SHIPS" with the assistance of "THE CONTRACTOR".

8) Implementing the Delivery Program as agreed between "THE MINISTRY" and the Designated Subcontractors and including in their PER-TYPE DEPENDENT SEQUENCE NETWORK PROGRAM the equipment, supplies and components according to what's been agreed upon by "THE MINISTRY" and the subcontractors. Additionally, coordinating delivery deadline programs in the global Contract program for "THE SHIPS" as set forth in the Third Clause.

9) Guaranteeing the down payment, "Down Payment" bond for one hundred percent (100%) of the first payment, "Faithful Compliance" and "Proper Functioning" bonds for twenty percent (20%) and ten percent (10%) of the total subcontract price respectively, according to the provisions of the Fourth Clause of this Contract and any other Warranties that might be required by "THE MINISTRY"

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

and "THE CONTRACTOR" to ensure "Faithful Compliance" with all the obligations contained in the subcontracts. Additionally, managing them for "THE MINISTRY".

Fifth Paragraph: The liability of "THE CONTRACTOR" before "THE MINISTRY" regarding the subcontracts specified in this Clause shall be limited as follows:

a) Failure of Subcontractor materials, equipment, supplies and components to comply with "THE SPECIFICATIONS" contained in such subcontracts or to performing according to them. "THE CONTRACTOR's" liability shall be limited to the amounts of the "Faithful Compliance Bonds" and/or Warranty required under these subcontracts. "THE MINISTRY" shall hold "THE CONTRACTOR" harmless for any costs in excess of the entities mentioned it might incur in its efforts to solve the faults of said Subcontractors or for any additional cost under this Contract due to delays resulting from failure to execute by the Subcontractors.

b) Failure by the Subcontractors to deliver the materials, equipment, supplies and components within the timeframe specified for delivery in such subcontracts, the liability of "THE CONTRACTOR" shall be limited to the application of the penalties set forth in the Contracts undersigned between "THE CONTRACTOR" and the Designated Subcontractor at issue, and by the "Faithful Compliance Bond" created for this purpose, according to each subcontractor's bond amounts.

c) "THE CONTRACTOR" shall not be liable for the execution of those equipment items (contained in the scope of work of "THE CONTRACTOR") which interrelate with the materials, equipment, supplies and components of the Subcontractors in the following cases:

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

1) When execution depends on the correct handling or operation of the subcontractor's materials. Additionally, when such handling or operation is not according to "THE SPECIFICATIONS" as they apply to the Subcontracts.

2) When execution is affected due to the defective or incorrect operation of the materials, equipment, supplies and components by the subcontractor.

3) When the operation of the materials, equipment, supplies and components of the Subcontractor cause damage to other equipment of "THE CONTRACTOR" with which they interface.

In these cases, "THE MINISTRY" shall protect and hold harmless "THE CONTRACTOR" in the liabilities mentioned above, and the indemnification provisions contained in the Fifth Paragraph, sections a) and b) of this Clause shall apply.

Sixth Paragraph: "THE CONTRACTOR" shall not be liable before "THE MINISTRY" for any amounts of money that might be imposed upon it for claims, lawsuits, requirements, executions, legal actions (including attorneys' fees and other litigation expenses) or in any other way by third parties or entities in relation with the Subcontracts or the work performed by the Designated Subcontractors mentioned in this Clause under this Contract. "THE MINISTRY" hereby agrees to hold harmless, defend and pay "THE CONTRACTOR" the amount of money that might be claimed, awarded or paid by "THE CONTRACTOR" for the concepts herein listed. "THE CONTRACTOR" shall notify "THE MINISTRY" of any claim filed and "THE CONTRACTOR" shall not settle or reach an agreement regarding said claims on behalf of "THE MINISTRY" without its prior written approval.

Seventh Paragraph: For the equipment and services supplied by the Designated Subcontractors, "THE CONTRACTOR" shall be responsible only for their installation according to

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

"THE SPECIFICATIONS" of the supplier and of the systems engineering for its installation, and shall respond to "THE MINISTRY" on the same grounds and warranties as established for such installation.

Eighth Paragraph: "THE CONTRACTOR" shall agree to include in the Subcontracts herein a Clause by which the Subcontractors shall use for the work under this contract the specific equipment manufacturer manuals, as well as the original parts and spare parts described therein or replacements authorized by "THE MINISTRY" through the Chief of the Venezuelan Inspection Commission ("V.I.C.") or certified by the original manufacturer of the appropriate equipment.

Ninth Paragraph: "THE CONTRACTOR" shall agree to include in the Subcontracts herein a Clause by which the Subcontractors agree for the Perceptive Control and favorable approval of the goods under this contract to be performed by the General Controller's Office of the National Armed Forces as a pre-requisite for the appropriate payments to be made.

Tenth Paragraph: "THE CONTRACTOR" shall agree to include in the Subcontracts herein a Clause by which the Subcontractors observe the provisions demanded by "THE MINISTRY" in the Third Clause of this Contract regarding delivery deadlines.

Eleventh Paragraph: "THE CONTRACTOR" shall agree to include in the Subcontracts herein a Clause by which the Subcontractors have an obligation to indemnify for delay damages and for penalties, in the minimum terms demanded from "THE CONTRACTOR" in the Ninth Clause and that once these indemnities are obtained they shall be made available to "THE MINISTRY" so they can be reintegrated to the National Treasury.

Twelfth Paragraph: "THE CONTRACTOR" shall agree to include in the Subcontracts herein

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

a Clause by which the Subcontractors are subjected to the appropriate provisions for the protection of information, documents, blueprints and classified specifications under the same terms set forth in this Contract.

Thirteenth Paragraph: "THE CONTRACTOR" shall agree to include in the Subcontracts herein a Clause by which the Subcontractors shall be required to observe the provisions related to the technical warranties of the work performed, in terms similar to those demanded in this Contract.

Fourteenth Paragraph: "THE CONTRACTOR" shall agree to include in the Subcontracts herein a Clause by which provisions regarding licenses and patents are included under the same terms as required from "THE CONTRACTOR" under this Contract.

THIRTY-SEVENTH: "THE CONTRACTOR" shall have no obligations beyond those in the warranty provisions regarding these subcontracts, after the signing of the "Final Acceptance of the TG-2 Teleguidance System" in Venezuela, the Missiles in Venezuela, the Helicopters in Venezuela and the Electronic War System in Venezuela. It is hereby understood that the final tests and Final Acceptance of the Helicopters, Electronic War and TG-2 Teleguidance System shall take place in Venezuela, after a Perceptive Control and favorable approval by the General Controller's Office of the National Armed Forces with "THE CONTRACTOR's" only responsibility of keeping current the "Faithful Compliance bond" until such time as the aforementioned equipment is received and finally accepted and the "Technical Warranty Bond" required from the Designated Subcontractors until the end of the warranty period. "The Dock and Sea Trials" and the final tests shall be conducted based on the specifications included in the subcontracts. To this effect, "THE CONTRACTOR" agrees to make available to "THE MINISTRY", once obtained, the amount paid for that bond should it be executed due to failure to comply by the Designated Subcontractor.

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

Single Paragraph: The final payments to the Designated Subcontractors shall be authorized by "THE MINISTRY". For the IAI ISRAEL AIRCRAFT INDUSTRIES LTD, with the approval of the "V.I.C." of the results of the functional flights performed in Israel. For Elisra with the sea trials described in the "Technical Specifications" performed in Pascagoula, Mississippi and for Alenia Difesa A Finmeccanica Company, Missiles Systems Division, formerly OTO MELARA, S.P.A. with the delivery of the Missiles in Venezuela.

## BENEFITS AND COMMISSIONS

THIRTY-EIGHT: No individual who is or has been employed by the Government of the Republic of Venezuela in the past five (5) years may on his own behalf or through intermediaries participate in the benefits that this Contract might yield for "THE CONTRACTOR" or any of its affiliates or subsidiaries, or its suppliers or subcontractors, nor can he receive any gratification, bonus or similar benefit. Failure to observe this Clause by "THE CONTRACTOR" shall empower "THE MINISTRY" to request the immediate rescission of this Contract.

## DOMICILE

THIRTY-NINTH: For any purposes related to a breach of this Contract, the parties choose as a special domicile the city of Caracas, Distrito Federal, Republic of Venezuela, with "THE MINISTRY" being free to choose any other domicile for these purposes.

## LEGAL COMPETENCE

FORTIETH: This Contract shall be subjected to Venezuelan laws. Any doubts or controversies that might arise in its execution and that do not reach a friendly resolution shall be

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

resolved by the competent Courts of the Republic of Venezuela, according to the laws of this country, and they cannot, for any reason be subjected to foreign claims, all according to Article 27 of the Constitution of the Republic of Venezuela.

FORTY-FIRST: However, prior to invoking legal recourses, the contracting parties hereby agree that in the case of any doubts or differences of opinion regarding a technical matter, they shall submit the matter to be decided by a Three Expert Commission to be selected by mutual agreement of the parties.

First Paragraph: The party requesting the decision shall specifically explain the claim and shall communicate to the other party the name and address of the Technical Expert appointed by it; the other party agrees in turn to communicate the name and address of the Technical Expert that will represent it within fourteen (14) calendar days of receiving the communication. The two (2) Experts so appointed shall then agree about the selection of the third Technical Expert, within the fourteen (14) calendar days of the appointment of the second Expert. The third Technical Expert selected shall preside over the Commission. This Commission shall operate in the city of Pascagoula, United States of America during the stay of "THE SHIPS" in that country and in the city of Caracas, Republic of Venezuela, during the Warranty Period. The decisions of these Technical Experts shall be made by a simple majority, will be final and binding on the contracting parties.

Second Paragraph: Should the Technical Experts fail to reach an agreement after three (3) months, the contracting parties shall out of mutual agreement submit the matter to the competent Courts of the Republic of Venezuela.

FORTY-SECOND: Should a dispute or breach or interpretation issue arise in connection with this Contract, "THE CONTRACTOR" and "THE MINISTRY" shall get together and negotiate in

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

good faith resolve the matter in a friendly manner. Should the parties fail to resolve the matter within thirty (30) calendar days of the emergence of the dispute, then at the request of either party, the matter shall be submitted for arbitration according to this Clause. Should the matter still not be resolved through arbitration, both parties shall be entitled to resort to the competent Courts of the Republic of Venezuela.

First Paragraph: Any disputes, lawsuits, controversies and/or differences that arise from this Contract or related to its interpretation, fulfillment, completion or invalidation, shall be subjected to the rules provided herein and secondarily to the rules of the Civil Procedure Code of Venezuela. Arbitration actions shall take place in Caracas, Venezuela, in Spanish-English. The arbitration jury shall consist of three (3) independent arbitrators, who must be members of the International Chamber of Commerce, fluent in Spanish-English, in the understanding that each party shall appoint one arbitrator, with the third arbitrator, who shall preside over the arbitration jury, being chosen by the two (2) arbitrators appointed by the parties. If thirty (30) calendar days after being appointed, the two (2) arbitrators have not reached an agreement regarding the third arbitrator, the third arbitrator shall be appointed by the International Chamber of Commerce or any successors of the two arbitrators. The arbitrators shall act as arbitrators-at-law and shall pronounce their decision within a maximum of three (3) months.

Second Paragraph: Any arbitration under this Contract shall take place in Caracas, Venezuela. The parties agree that in the case of arbitration, they will abide by the rules contained in the Civil Procedure Code of Venezuela.

Third Paragraph: Should either of the parties start legal proceedings in relation to any alleged breach or interpretation issue in connection with this Contract, the defeated party shall

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

indemnify and hold harmless the other party of any sentence, costs or expenses related with said legal proceedings.

## DOCUMENTS THAT INTEGRATE THIS CONTRACT

FORTY-THIRD: This Contract consists of this Main Document and the other attached supplementary documents specified below. The Certificate models herein contained and identified as Attachments, are only for reference, and should not be considered binding or final in any way. They shall all be signed on every page by both contracting parties as proof of acceptance.

a) Certificate of Incorporation and By-Laws of "INGALLS SHIPBUILDING, INC.", mentioned in the introduction of this Contract (Attachment "A").

b) "Power of Attorney" documents mentioned in the introduction of this Contract (Attachment "B").

c) "THE SPECIFICATIONS" and other instruments mentioned in the First Clause of this Contract (Attachment "C").

d) "MIL-I-45208A Norms" Model (Attachment "D").

e) "Certificate of Beginning of Work" model as mentioned in this Contract (Attachment "E").

f) "Certificate of Acceptance of Dock and Sea Trials" (Attachment "F")

g) Details of "Technical Support" provided by "THE CONTRACTOR" (Attachment "G").

h) "Down Payment Bond" model (Attachment "H").

i) "Certificate of Work Progress" model (Attachment "I").

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET



j)  "Faithful Compliance Bond" model (Attachment "J").

k)  "Proper Functioning Bond" model (Attachment "K").

l)  "USA Safety Norms" model (Attachment "L")

m)  "DD Form 254" model (Attachment "M")

n)  Logistics Supports Documents (Attachment "N")

o)  "Certificate of Approval of Factory or Shipyard Tests" model (Attachment "O")

p)  "Certificate of Final Acceptance" model (Attachment "P")

q)  "Certificate of End of Warranty" (Attachment "Q")

r)  "Technical Support" model (Attachment "R")

s)  Section 181 USC Volume 35 model (Attachment "S")

t)  Scope of the work to be performed by the company "ELECTRONIC SYSTEMS LTD" (ELISRA) (Attachment "T")

u)  Scope of the work to be performed by the company "ISRAEL AIRCRAFT INDUSTRIES LTD" (IAI) (Model "U")

v)  Scope of the work to be performed by the company "ALENIA DIFESA A FINMECCANICA COMPANY, MISSILES SYSTEMS DIVISION" (Attachment "V").

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

w) Expenditure timeline

Single Paragraph:  For the purposes of this Clause, the documents mentioned in the sections above may be signed for "THE MINISTRY" by the persons designated by the Minister of Defense through the General Navy Command, except for those that correspond to its exclusive competence.  Likewise, the documents mentioned in the sections above may be signed for "THE CONTRACTOR" by the persons designated by "THE CONTRACTOR" to such effect, except for those that correspond to its exclusive competence.

## VALIDITY

FORTY-FOURTH:  This Contract shall go into effect once signed by the contracting parties with the approval of the General Controller's Office of the National Armed Forces with the appropriate certification by the Legal Advice Office of "THE MINISTRY".

## AMENDMENTS

FORTY-FIFTH:  No amendment to this Contract shall be valid, unless it is made through written documents signed by the contracting parties with the approval of the General Controller's Office of the National Armed Forces.  Such modifications shall be an integral part of the contractual instrument.

## CONTRIBUTIONS AND TAXES

FORTY-SIXTH:  The contracting parties agree that the expenses, taxes, rates and liens derived from this Contract shall be paid by "THE CONTRACTOR" for any payments to be made in

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

the United States of America, and by "THE MINISTRY" for any payments to be made in the Republic of Venezuela.

First Paragraph: The price of this Contract includes all federal, state and local taxes, charges and contributions of the United States of America, but does not include those duties payable in Venezuela and that correspond to "THE MINISTRY". Each party shall be responsible for the appropriate taxes for their participation in this Contract.

## RESPONSIBILITY AND SAFETY

FORTY-SEVENTH: During the execution of the work under this Contract, the members of the crew appointed by "THE MINISTRY" shall be authorized to watch, without interrupting or impeding the realization of the work. "THE CONTRACTOR", while "THE SHIPS" are at the Shipyard's facilities, shall be responsible for the safety of "THE SHIPS" and all their materials, equipment, components and tools. The Chief of the "V.I.C." shall be responsible for the conduct, behavior and safety of its members. Acknowledging that "THE SHIPS" shall remain the property of "THE MINISTRY", the Commander and the Crew shall participate along with "THE CONTRACTOR" in providing safety, fire surveillance, safety checks, etc., as agreed upon by the parties. The Commander of each of "THE SHIPS" may cooperate with "THE CONTRACTOR" to execute the movements of "THE SHIPS" as required by "THE CONTRACTOR".

First Paragraph: "THE CONTRACTOR" shall provide the safety and surveillance service that shall work with the collaboration of the crew to prevent accidents and injuries resulting from the work being performed onboard and when the work is being performed; it shall provide the fire fighting service, including the fire extinguishing supplies and shall also make sure the necessary

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

precautions are observed by "THE CONTRACTOR's" workers and the members of the crew.

Second Paragraph:  The materials resulting from the dismantling of the subsystems, planned modifications and any equipment or machinery disassembled and not reusable are the property of "THE MINISTRY", without this implying a damage or expense in the activities of "THE CONTRACTOR".  Disembarked materials shall be stored in deposits available for "THE MINISTRY" until they are prepared to be sent to Venezuela.

FORTY-EIGHTH:  Work accidents sustained by "THE MINISTRY's" workers during the execution of this Contract shall be covered by "THE MINISTRY".  Likewise, work accidents sustained by "THE CONTRACTOR's" workers during the execution of this Contract shall be covered by "THE CONTRACTOR".

First Paragraph:  "THE CONTRACTOR" shall be liable for any damages caused by its employees to the property of "THE MINISTRY" during the execution of the work under this Contract. Consequently, "THE CONTRACTOR" hereby agrees and promises to repair the damages at no cost to "THE MINISTRY" for an amount of up to TWENTY MILLION US DOLLARS (US $20,000,000).

Second Paragraph:  When doing joint work or testing, "THE CONTRACTOR" and the "V.I.C." shall determine in writing prior to the execution of such work or tests, the areas of responsibility pertaining to each.

## OF CONTROL AND RELATIONSHIPS

FORTY-NINTH:  "THE MINISTRY" shall exercise as it best sees fit the control, supervision

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

and auditing of the execution of this Contract through the General Navy Command, Naval Logistics Command, without affecting the provisions of Article 2 of the Regulations of the General Controller's Office of the National Armed Forces.

## GENERAL PROVISIONS

FIFTIETH: "THE CONTRACTOR" hereby agrees that all the new equipment, materials and spare parts to be installed on "THE SHIPS" shall be adapted to weather conditions predominant in the tropic, that is, they shall be tropicalized.

FIFTY-FIRST: No cancellation, modification, amendment, deletion, addition or any other change or provision in this Contract or waiver of any right or recourse set forth herein shall be effective for either part unless specifically set forth in writing and signed by the bound party and approved by the General Controller's Office of the National Armed Forces.

First Paragraph: This Contract supersedes all agreements, verbal or written, made before in connection with the matter covered by this instrument; the provisions herein contain the agreement of the parties.

Second Paragraph: The provisions of this Contract shall bind and benefit "THE CONTRACTOR" and "THE MINISTRY", their successors and beneficiaries.

FIFTY-SECOND: "THE MINISTRY" shall not accept in the execution of this Contract the figure of the Prototype or Experimental Model to be included in "THE SHIPS" based on technical elements from blueprints and written projects, even when approved by the "V.I.C." when they do not comply with "THE SPECIFICATIONS". Any provision or change must be approved by "THE MINISTRY" through the Naval Logistics Command.

FIFTY-THIRD: It is understood that for the purposes of this Contract and its attachments, whenever the term "obsolescence" is used in "THE TECHNICAL SPECIFICATIONS" of "THE MINISTRY", it refers to those items whose technology has been surpassed by a more sophisticated

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

one rendering them discontinued, all in accordance with the contents of the "Technical Specifications" under Attachment "C" of this Contract.

Single Paragraph: It is also hereby established that for the purposes of this Contract, when the term "Original from the Manufacturer" is used, it shall be understood as referring to any equipment, materials and spare parts to be used by "THE CONTRACTOR" in the execution of the work under this Contract.

FIFTY-FOURTH: It is understood that the members of the crew on "THE SHIPS" shall receive from "THE CONTRACTOR" a treatment becoming of their rank, as well as the necessary arrangements for their stay at the Shipyard facilities during the execution of the work under this Contract.

FIFTY-FIFTH: Should there be any questions during the execution of the work under this Contract regarding any aspects not covered in "THE SPECIFICATIONS", such as the characteristics or data for some equipment or material that prevents its acceptance, it is hereby agreed that the highest level norms or provisions used by "THE CONTRACTOR" in similar cases and/or applied by the US Navy shall be applied with the prior agreement of the parties. Likewise, should "THE CONTRACTOR" prove that there are better options than those set forth in "THE SPECIFICATIONS", or that some options not set forth therein are available, they should notify "THE MINISTRY" for implementation after analysis and approval by the General Navy Command, through the Naval Logistics Command and the General Controller's Office of the National Armed Forces.

FIFTY-SIXTH: It is hereby understood that if "THE CONTRACTOR" were to do any work without previously presenting the appropriate quotation to be analyzed and then approved by "THE MINISTRY", these costs shall not be recognized by "THE MINISTRY". Likewise, if during the

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

performance of the work under this Contract some of the work were to be conducted by members of the "V.I.C." or the crews of "THE SHIPS", the cost of such work shall be credited in favor of "THE MINISTRY".

### CONTRACT CLASSIFICATION

FIFTY-SEVENTH: This Contract is classified as "SECRET" according to the security rules of Venezuela; the Specifications are classified as "CONFIDENTIAL", and shall therefore be handled according to the security regulations in effect for these classifications only for official use. All the information obtained by the contracting parties during their execution shall be considered "SECRET" or "CONFIDENTIAL" as applicable and shall therefore not be disclosed by the parties to third parties, except for those persons duly authorized by them.

### APPROVAL

FIFTY-EIGHTH: This Contract has been approved by the General Controller's Office of the National Armed Forces according to File No. DCA-C-3340-7315 dated December 4, 1997.

### FINAL PROVISIONS

FIFTY-NINTH: If during the execution of this Contract it is decided to do additional work, repairs, services, supplies and tests not included in "THE SPECIFICATIONS" which are considered absolutely necessary to fulfill the purpose of this Contract and that are not included in the agreed total price, "THE CONTRACTOR" and "THE MINISTRY" shall determine by mutual agreement the work and prices of the work and how these will influence the delivery deadlines and shall sign the supplemental agreements as needed, with the approval of the General Controller's Office of the National Armed Forces. Any supplemental agreement or agreements signed by the contracting parties shall become a part of this contractual document. Their terms and conditions

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

# SECRET

shall be applicable to their whole content as if such agreements were reproduced in this document, except when otherwise stated. Including payment conditions, they must be determined prior to the signing of the "Certificate of Final Acceptance" of "THE SHIPS" under this Contract.

SIXTIETH: Eight (8) copies are made of this Contract with the same contents and for the same purpose in Spanish, to be signed by the contracting parties, who shall also initial each of its pages.

Caracas, on the     day of the month of     nineteen ninety-seven.

By "THE MINISTRY"            By "THE CONTRACTOR"

(SIGNED)               (SIGNED)

TITO MANLIO RINCON BRAVO        CECIL LEE RECTOR
Viceadmiral                Legal Representative
Minister of Defense

(SIGNED)
C. L. RECTOR
DIRECTOR OF CONTRACTS
INGALLS SHIPBUILDING, INC.
USA 082014205

(SIGNED)
Tito M. Rincón Bravo
Viceadmiral
Minister of Defense
I.C. 3.366.278

## DECLARATION OF TRANSLATOR

I, the undersigned, say:

I declare I am a qualified language professional working as an independent contractor with OMNI INTERPRETING & TRANSLATING NETWORK, 1329 Thousand Oaks
Blvd., 2nd Floor, Thousand Oaks, CA 91361.

Upon evaluation of the content matter, degree of difficulty and language, my signature below confirms that I am familiar with the subject matter, I have translated this document in its entirety, and that I have the language skills as required for this translation assignment.

To the best of my knowledge and ability, the translation is a true, accurate and complete translation of the attached original document from Sheppard and Mullin containing the name of Venezuelan contracts (Network Omni's Project # 51737).

I have personal knowledge of the facts set forth in this declaration and if called upon to do so could and would competently testify thereto under oath.

I certify under penalty of perjury of the laws of the State of California that the foregoing is true and correct.


Signature _____
          Antonio Baglietto


Executed on _March 28_ in _San Diego_ County in the State of
_California_ _2002_

Thursday, March 28, 2002

# Certificate of Accuracy



## TRANSLATOR'S ACKNOWLEDGEMENT

Our translator has reviewed the documents submitted by Shepard, Mullin, Richter & Hampton in the matter of a legal contract between The National and Executive Ingalls Shipbuilding Inc. for translation.  Upon evaluation of the content matter, degree of difficulty and language, our translator confirms that he is familiar with the subject matter, qualified to translate such subject matter and possesses the necessary qualifications and experience to complete the job accurately and promptly.  This further stipulates that he has the language skills as required for this translation assignment.

## DECLARATION OF TRANSLATOR

I, the undersigned, say:

I declare I am a qualified professional working as an employee of OMNI INTERPRETING & TRANSLATING NETWORK, 1329 Thousand Oaks Blvd., 2nd Floor, Thousand Oaks, CA 91361; I have assigned this translation to an independent contractor proficient in the subject matter in this project and languages who has translated this document in its entirety.

To the best of my knowledge and ability, the translation is a true, accurate and complete translation of the original name described above.

The translator has personal knowledge of the facts set forth in this declaration and if called upon to do so could and would competently testify thereto under oath;

I certify under penalty of perjury of the laws of the State of California that the foregoing is true and correct.

Signature _____

Executed on _3/28/02_ in _Ventura_ County in the State of _California_
         /(Date)

## Certificate Number: T51737

*nothing gets lost in the translation®*