IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| **NORTHROP GRUMMAN SHIP SYSTEMS, INC., formerly known as Ingalls Shipbuilding, Inc.** | **PLAINTIFF** |
| | |
| **SIDNEY A. BACKSTROM, SCRUGGS LAW FIRM, P.A., RICHARD F. SCRUGGS, ZACH SCRUGGS, PODHURST ORSECK, P.A., ATTORNEY GEORGE SHADDOCK** | **INTERVENOR PLAINTIFFS** |
| **v.** | **Civil No. 1:02cv785-HSO-RHW** |
| **THE MINISTRY OF DEFENSE OF THE REPUBLIC OF VENEZUELA** | **DEFENDANT** |
| **THE MINISTRY OF DEFENSE OF THE REPUBLIC OF VENEZUELA** | **COUNTER-CLAIMANT** |
| **v.** | |
| **NORTHROP GRUMMAN SHIP SYSTEMS, INC.** | **COUNTER-DEFENDANT** |

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF NORTHROP GRUMMAN SHIP SYSTEMS, INC.'S MOTION [391] FOR RECOGNITION AND EXECUTION OF ARBITRATION AWARD**

BEFORE THE COURT is Plaintiff Northrop Grumman Ship Systems, Inc.'s, formerly known as Ingalls Shipbuilding, Inc., Motion [391] for Recognition and Execution of Arbitration Award.  Defendant The Ministry of Defense of the Republic of Venezuela has filed a Response [400], to which Plaintiff has replied.  Because the Court finds that no grounds exist for refusing or deferring recognition of the arbitration award, Plaintiff Northrop Grumman Ship Systems, Inc.'s Motion [391]

for Recognition and Execution of Arbitration Award should be granted, and the award should be enforced.

## I. BACKGROUND

A.   The parties' contract

On or about December 18, 1997, Plaintiff Northrop Grumman Ship Systems, Inc., f/k/a Ingalls Shipbuilding, Inc., now known as Huntington Ingalls Incorporated ("Plaintiff" or "Huntington Ingalls"), entered into a contract with The Ministry of Defense of the Republic of Venezuela ("Defendant" or "Ministry") for the refurbishment of two frigates for the Venezuelan Navy (the "Contract"). Huntington Ingalls Ex. 4, Contract [391-4] at 3.  The Contract was worth $315,000,000.00, *id.* at 11, and contained an arbitration clause which provided in relevant part that:

> Should a dispute or breach or interpretation issue arise in connection with this Contract, "THE CONTRACTOR" and "THE MINISTRY" shall get together and negotiate in good faith [to] resolve the matter in a friendly manner.  Should the parties fail to resolve the matter within thirty (30) calendar days of the emergence of the dispute, then at the request of either party, the matter shall be submitted for arbitration according to this Clause.  Should the matter still not be resolved through arbitration, the parties shall be entitled to resort to the competent Courts of the Republic of Venezuela. [1]

*Id.* at 80-81.

The arbitration clause further stated that "[a]ny arbitration under this Contract shall take place in Caracas, Venezuela.  The parties agree that in the case of

---

[1] The Contract's official language was Spanish.  *See generally* Huntington Ingalls Ex. 3, Contract [391-3].  English quotations are taken from a translation of the Contract.  Huntington Ingalls Ex. 1, Yanos Decl. [391-1] at 2; *see generally* Huntington Ingalls Ex. 4, Translation of Contract [391-4].

arbitration, they will abide by the rules contained in the Civil Procedure Code of Venezuela." *Id.* at 81.  Finally, "[n]o amendment to this Contract shall be valid, unless made through written documents signed by the contracting parties with the approval of the General Controller's Office of the National Armed Forces.  Such modifications shall be an integral part of the contractual instrument." *Id.* at 84.

At some point after signing the Contract, Huntington Ingalls asserts that a dispute arose between the parties relating to payment for additional work on the frigates which they were unable to resolve amicably.  Mem. in Supp. [392] at 2.

B.   Procedural history

This dispute has a lengthy procedural history, beginning when Huntington Ingalls filed a Complaint in this Court on October 24, 2002, Compl. [1], and moved to compel arbitration, Mot. to Compel [29].  On April 16, 2003, this Court granted Huntington Ingalls' Motion to Compel Arbitration and stated that it "will retain jurisdiction . . . to resolve disputes relating to this Order and to enforce any arbitral award." Order [43].  The Court appointed an arbitrator on behalf of the Ministry, *see id.* at 3, and ordered that the arbitration proceed in Mississippi or at another location in the United States of America due to the political situation in Venezuela, *see id.* at 2.

The Parties agree that the initial arbitral tribunal was ultimately formed in Mexico City under the Inter-American Commercial Arbitration Commission Rules ("Mexico City Arbitration").  Mem. in Supp. [392] at 3; Mem. in Opp'n [400] at 3.  On January 30, 2004, the Ministry formally appeared in this Court for the first time

and moved to vacate the Order [43] Compelling Arbitration and to dismiss Huntington Ingalls' Complaint for lack of subject-matter jurisdiction. Mot. to Vacate & Dismiss [45] at 3. It also objected to any arbitration occurring outside of Caracas, Venezuela, and sought a suspension of the Mexico City Arbitration. *Id.* at 4

On March 31, 2005, this Court stayed the Mexico City Arbitration while it considered the Ministry's Motion[2]. Order Staying Arbitration [60]. On October 5, 2005, the Court entered an Order [65] of Dismissal, Order [65], followed by an Amended Order [66] of Dismissal on October 11, 2005, based upon the parties' representations that they had settled the case, Am. Order [66]. The Court retained jurisdiction to enforce the settlement, *id.*, and on October 19, 2005, the Ministry contested that a settlement existed and requested that the Amended Order [66] of Dismissal be vacated, Mot. to Vacate [68] at 1. On September 24, 2007, the Court denied the Ministry's Motion to Dismiss, Mem. & Opinion [116] at 5, and upheld the settlement agreement, *id.* at 10. The Ministry then appealed to the United States Court of Appeals for the Fifth Circuit. Notice of Appeal [127].

On July 9, 2009, the Fifth Circuit vacated the judgment enforcing the settlement agreement and ruled that the termination of the Mexico City Arbitration had mooted the original order compelling arbitration. *Northrop Grumman Ship Systems, Inc., et al. v. The Ministry of Defense of the Republic of Venezuela*, 575 F.3d

---

[2] The Mexico City Arbitration discontinued its proceedings on November 27, 2008, because it had been suspended for more than three years and eight months and lifting of the suspension was "not foreseen in the near future." Huntington Ingalls Ex. 5, Arbitral Tribunal Termination Order [391-5] at 3.

491, 502 (5th Cir. 2009). The Court of Appeals remanded the case to this Court to determine whether to compel arbitration a second time. *Id.* at 503.

On remand, the parties each sought to compel arbitration in a different forum. The Ministry demanded arbitration in Venezuela, Ministry's Mot. to Compel [157], while Huntington Ingalls sought to compel arbitration in Mississippi, Huntington Ingalls' Cross Mot. to Compel [160]. On December 4, 2010, the Court issued an Order compelling arbitration, but found that the contractual forum selection clause specifying arbitration in Venezuela should not be enforced because the political situation at the time was such that Huntington Ingalls would essentially be deprived its day in court if forced to arbitrate there. Order [227] at 9. The Court directed the parties to jointly agree upon an alternate location to conduct the arbitration and advised that it would "retain jurisdiction in order to bring this matter to conclusion after arbitration." *Id.*

The Ministry appealed this Order, Notice of Appeal [230], but the Fifth Circuit dismissed the appeal for lack of jurisdiction on March 23, 2011, *see Northrop Grumman Ship Sys., Inc. v. Ministry of Def. of the Republic of Venezuela*, No. 11-60001, 2011 U.S. App. LEXIS 26921 (5th Cir. Mar. 23, 2011) (granting appellee's motion to dismiss appeal), reh'g denied (5th Cir. May 9, 2011) (per curiam).

On March 30, 2011, the parties agreed upon Washington, D.C., as the place of arbitration. Min. Entry, Mar. 30, 2011. The Ministry asserts that it felt compelled to agree to Washington, D.C., as the location for the arbitration because the Court had indicated that it would choose the location if the parties did not agree upon one.

Mem. in Opp'n [400] at 5.  The parties each selected an arbitrator.  Ministry's

Notice of Appointment [249]; Huntington Ingalls' Notice of Appointment [250].  In

making its appointment, the Ministry clarified that it did so

> subject to and without waiver of any and all of contractual, arbitral and
> litigation rights it has heretofore asserted, including, but not limited to,
> its right to request enforcement of the December 1997 Contract as
> written.  Further, the Republic expressly reserves the right to challenge
> the District Court's Orders of December 4, 2010 [Doc. 227] and March
> 10, 2011 [Doc. 241], as it is presently doing before the U. S. Court of
> Appeals for the Fifth Circuit in Case No. 11-60296, and as it may do at
> any other appropriate time and in any other appropriate proceeding
> and/or forum.

Ministry's Notice of Appointment [249].

The arbitration proceeding was convened in Washington, D.C., *see* Min.

Entry, Mar. 30, 2011; Huntington Ingalls Ex. 6, Tribunal's Procedural Order No. 2

[391-6] at 31, and administered by the Court of Arbitration of the International

Chamber of Commerce ("Tribunal"), Huntington Ingalls Ex. 6, Tribunal's

Procedural Order No. 2 [391-6] at 3.  The Ministry raised multiple preliminary

procedural challenges before the Tribunal, including: (1) an objection to the

jurisdiction of the Tribunal, *id.* at 17-19; and, alternatively, (2) a request that the

Tribunal change the legal seat of the arbitration back to Caracas, Venezuela, *id.* at

30-32.  On July 16, 2013, the Tribunal rejected the Ministry's challenges and found

that it had jurisdiction to hear the dispute, *id.* at 25, and that there had been a

valid modification of the forum selection clause, *id.* at 34.

In the end, the Tribunal concluded that the parties' conduct before this Court

served to amend the Contract's arbitration clause but that Venezuela's repudiation

of its agreement to move the legal seat of the arbitration to Washington, D.C.,
required it to equitably reform the Contract further and establish a neutral legal
seat outside of Venezuela and the United States. *Id.* To safeguard the neutrality
and integrity of the arbitration proceedings, the Tribunal concluded that the legal
seat of the arbitration should be changed to Rio de Janeiro, Brazil. *Id.* at 35.

The arbitration was conducted on the merits from January 12-18, 2015, in
Rio de Janeiro, Brazil. Huntington Ingalls Ex. 2, Final Award [391-2] at 25. On
February 19, 2018, the Tribunal issued its Award. *Id.* at 355. As stated in the
Award, the Tribunal found that: (1) Huntington Ingalls had performed work outside
of the scope of the Contract for which it was entitled to compensation of
$42,303,312.50; (2) delays caused by the Ministry's conduct entitled Huntington
Ingalls to additional compensation of $16,755,862.50; (3) delays caused by
Huntington Ingalls' conduct entitled the Ministry to compensation of
$13,900,000.00; (4) Huntington Ingalls was entitled to interest at a rate of 8.713%
computed from April 5, 2002, to the date of actual payment of the Award; (5) the
Ministry was entitled to interest at a rate of 8.713% computed from March 10, 2011;
and (6) Huntington Ingalls was entitled to arbitration costs of $672,501.71
(collectively "Award"). *Id* at 348-52. The net value of the Award, after offsetting
sums due the Ministry against sums due to Huntington Ingalls, and including
interest until the date of the Award, was $128,862,457.27 in favor of Huntington
Ingalls, not including post-Award interest. *See id.* at 352.

7

On April 5, 2018, the Ministry submitted a Request for Correction of the
Award, which the Tribunal rejected as untimely.   Huntington Ingalls Ex. 8,
Decision on the Ministry's Request for Correction of the Arbitral Award [391-8] at
10.   In its decision, the Tribunal clarified that it had moved the legal seat—and not
just the venue—of the arbitration to Rio de Janeiro, Brazil.   *Id.*

On February 27, 2018, Huntington Ingalls filed a petition before the United
States District Court for the District of Columbia seeking to enforce the Tribunal's
Award.   Huntington Ingalls' Petition to Confirm Arbitration Award, *Huntington
Ingalls Inc. v. Ministry of Defense*, 1:18-cv-00469 (D.D.C. Feb. 27, 2018).   The
Ministry filed a motion to dismiss the petition on July 13, 2018, arguing that the
court lacked subject-matter jurisdiction.   Huntington Ingalls Ex. 9, Ministry's Mot.
to Dismiss, (D.D.C. July 13, 2018) [391-9] at 13.   The district court held a hearing
on the Ministry's Motion to Dismiss on February 13, 2019, and following additional
briefing, on June 13, 2019, it dismissed Huntington Ingalls' Petition to Enforce the
Award on grounds that this Court had "intended to retain jurisdiction over the post-
arbitration proceedings, including enforcement of the arbitration award."
Huntington Ingalls Ex. 12, Memorandum Opinion (D.D.C. June 13, 2019) [391-12]
at 19, 23.

On June 26, 2019, Huntington Ingalls filed the instant Motion [391] before
this Court for Recognition and Execution of Arbitration Award.   Mot. for
Recognition [391].   The Ministry filed a Response in Opposition on July 10, 2019,

Resp. in Opp'n [399], to which Huntington Ingalls replied on July 17, 2019, Rebuttal [402].

Huntington Ingalls contends that the Court should recognize and enforce the Tribunal's Award under Section 207 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 301-307, because none of the grounds for refusal of recognition and enforcement under the Panama Convention, made applicable by operation of Federal Arbitration Act Section 302, are present here.  Mem. in Supp. [392] at 12-16.  The Ministry responds that the Award should not be enforced because the Tribunal held the proceedings in Rio de Janeiro, Brazil, as opposed to Washington, D.C, the parties' agreed upon seat of arbitration[3]. Mem. in Opp'n [400] at 13.

## II. DISCUSSION

### A.    Standard of review

Both Huntington Ingalls and the Ministry agree that the Panama Convention governs the issue of the recognition of the Award.  Mem. in Supp. [392] at 11; Mem. in Opp'n [400] at 9.  However, the parties disagree with regard to what standard of review is required under the Panama Convention.  Huntington Ingalls contends that the arbitrator's decision should be given "considerable deference" and that this Court's review should be "extraordinarily narrow and exceedingly deferential."  Mem. in Supp. [392] at 9 (quoting *BG Group v. Republic of Argentina*, 134 S. Ct.

---

[3] The Ministry also argues at length regarding the Tribunal's decision to arbitrate outside of the contractually negotiated forum, Venezuela.  Mem. in Opp'n [400] at 12-15, 17-18.  This Court has already addressed the issue of the impracticability of conducting an arbitration in Caracas, Venezuela, Order [227] at 9, and the parties agreed to move the seat of arbitration of Washington, D.C, Min. Entry, Mar. 30, 2011.  These issues have already been litigated and resolved.  The Court declines to revisit them at this late stage of the proceeding.

1198, 1210 (2014) and *Prestige Ford v. Ford Dealer Computer Servs., Inc.*, 324 F.3d 391, 392 (5th Cir. 2003)).  The Ministry asserts that the Panama Convention sets a *de novo* standard of review for an arbitration award where the arbitrator goes beyond the scope of the arbitration agreement, as it contends happened in this case. Mem. in Opp'n [400] at 9-10 (citing *Polimaster Ltd. v. RAE Systems, Inc.*, 623 F.3d 832, 836 (9th Cir. 2010)).  To determine the proper standard of review of an international arbitration award, the Court must briefly discuss the relevant international treaties.

The parties agree that the Inter-American Convention on International Commercial Arbitration ("Panama Convention") and its implementing legislation, Chapter 3 of the Federal Arbitration Act, govern this dispute.  Mem. in Supp. [392] at 11; Mem. in Opp'n [400] at 9.  Title 9, United States Code, Section 302, makes Title 9, United States Code, Sections 202 through 207 applicable "to this chapter as if specifically set forth herein."  9 U.S.C. § 302.  These provisions are the implementing legislation for the June 10, 1958, New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention"). The parties have both conceded, and other courts have recognized, that for questions of enforcement of an arbitration award, interpretations of the Panama Convention and New York Convention (collectively "Conventions") are applicable to one another.  Mem. in Opp'n [400] at 9 (citing *TermoRio S.A. E.S.P. v. Electranta, S.P.*, 487 F.3d 928, 933 (D.C. Cir. 2007) and *Productos Mercantiles E Industriales,*

*S.A. v. Faberge USA, Inc.*, 23 F.3d 41, 45 (2d Cir. 1994)); Reply in Supp. [403] at 4

(citing *Corporacion Mexicana de Mantenimiento Integral, S. de R.L. de C.V.*

*v. Pemex-Exploracion y Produccion*, 962 F. Supp. 2d 642, 653 (S.D.N.Y. 2013), *aff'd*,

832 F.3d 92 (2d Cir. 2016) and *EGI-VSR, LLC v. Mitjans*, No. 15-20098-Civ-Scola,

2018 U.S. Dist. LEXIS 92714, at *4 n. 1 (S.D. Fla. May 31, 2018)).

Under the Conventions, there are two kinds of jurisdiction a country may

exercise over an arbitral award: primary or secondary.  *Karaha Bodas Co. v.*

*Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 287-88

(5th Cir. 2004).  "The country in which, or under the [arbitration] law of which, [an]

award was made" is said to have primary jurisdiction, while all other signatory

states are secondary jurisdictions.  *Id.* at 287.  Courts in countries with secondary

jurisdiction over an arbitral award may only decide whether the award may be

enforced in that country.  *Id.*  In this case, the arbitral Tribunal convened in Brazil,

Huntington Ingalls Ex. 6, Tribunal's Procedural Order No. 2 [391-6] at 35, and was

governed by Venezuelan arbitration law, Huntington Ingalls Ex. 4, Contract [391-4]

at 81.  It is clear that this Court has secondary jurisdiction and need only decide

whether to enforce the Award in the United States. *See Karaha Bodas Co.*, 364 F.3d

at 287-88.

A court with secondary jurisdiction must enforce an arbitration award unless

it finds one of the grounds for refusal or deferral of recognition or enforcement that

are specified in the Conventions.  *Id.*  A court may not refuse to enforce an arbitral

award solely on the ground that the arbitrator may have made a mistake of law or

fact, and "[a]bsent extraordinary circumstances, a confirming court is not to reconsider an arbitrator's findings." *Id.* The party defending against enforcement of the arbitral award bears the burden of proof. *Id.* Defenses to enforcement under the Conventions are construed narrowly, "to encourage the recognition and enforcement of commercial arbitration agreements in international contracts . . . ." *Id.* The Court concludes that the correct standard of review, as stated by Huntington Ingalls, is that this Court must give the Tribunal's decision "considerable deference." *See BG Group*, 134 S. Ct. at 1210.

B.   Defenses to enforcement

The Panama Convention offers the following defenses to enforcement:

1. The recognition and execution of the decision may be refused, at the request of the party against which it is made, only if such party is able to prove to the competent authority of the State in which recognition and execution are requested:

   a. That the parties to the agreement were subject to some incapacity under the applicable law or that the agreement is not valid under the law to which the parties have submitted it, or, if such law is not specified, under the law of the State in which the decision was made; or

   b. That the party against which the arbitral decision has been made was not duly notified of the appointment of the arbitrator or of the arbitration procedure to be followed, or was unable, for any other reason, to present his defense; or

   c. That the decision concerns a dispute not envisaged in the agreement between the parties to submit to arbitration; nevertheless, if the provisions of the decision that refer to issues submitted to arbitration can be separated from those not submitted to arbitration, the former may be recognized and executed; or

   d. That the constitution of the arbitral tribunal or the arbitration procedure has not been carried out in accordance with the terms of the agreement signed by the parties or, in the absence of such agreement, that the constitution of the arbitral tribunal or the

              arbitration procedure has not been carried out in accordance with the law of the State where the arbitration took place; or

              e. That the decision is not yet binding on the parties or has been annulled or suspended by a competent authority of the State in which, or according to the law of which, the decision has been made.

2. The recognition and execution of an arbitral decision may also be refused if the competent authority of the State in which the recognition and execution is requested finds:

              a. That the subject of the dispute cannot be settled by arbitration under the law of that State; or

              b. That the recognition or execution of the decision would be contrary to the public policy ("ordre public") of that State.

Panama Convention, Art. V.

The only relevant argument the Ministry advances to support its position that the Court should refuse to enforce the Award is that the Tribunal did not comply with the terms of the arbitration agreement because it conducted the arbitration in Rio de Janeiro, Brazil, which was not the contractually negotiated forum in violation of Article V(1)(d) of the Panama Convention[4].  Mem. in Opp'n [400] at 15-17.  Huntington Ingalls counters that under the Venezuelan Commercial Arbitration Law, which governs the terms of the Contract, an arbitral tribunal may determine the place of arbitration if the parties' agreement fails.  Mem. in Supp. [403] at 6 (citing Huntington Ingalls Ex. 3, Venezuelan Commercial Arbitration Law [402-3] at 9).  It reasons that because this Court found that the parties' choice of forum was no longer enforceable, Order [227] at 9, the Tribunal was within its authority to move the seat of arbitration, Mem. in Supp. [403] at 7.

---

[4] As previously discussed, *supra* I at 9 n. 3, the Ministry also raises arguments which have already been resolved by this Court in its Order [227] at 9, and need not be addressed again.

The parties concur that Article 9 of the Venezuelan Commercial Arbitration Law governs the resolution of this issue.  Mem. in Opp'n [400] at 16; Reply in Supp. [403] at 6.  Under this provision, the parties were free to determine the place of arbitration.  Huntington Ingalls Ex. 3, Venezuelan Commercial Arbitration Law [402-3] at 9.  However, if the parties cannot agree Venezuelan law is clear that "the place of arbitration will be determined by the arbitral tribunal . . ."  *Id.*

The Ministry contends that if the Court accepts that the parties agreed to arbitrate in Washington, D.C., then the arbitral Tribunal was without the power to change the seat of arbitration.  Mem. in Opp'n [400] at 16.  Ingalls argues that while the parties initially agreed to arbitrate in Washington, D.C., the Ministry later objected to arbitrating the dispute in that location, thus waiving this argument.  Reply in Supp. [403] at 7.   The Court agrees.

It is clear from this Court's March 30, 2011, Minute Entry, and there can be no serious dispute, that Huntington Ingalls and the Ministry initially agreed to arbitrate in Washington, D.C.  Min. Entry, Mar. 30, 2011.  Thereafter, arbitration proceedings were convened in Washington, D.C. *See* Min. Entry, Mar. 30, 2011; Huntington Ingalls Ex. 6, Tribunal's Procedural Order No. 2 [391-6] at 31.  The Ministry raised multiple preliminary procedural challenges before the Tribunal in Washington, D.C., including: (1) an objection to the jurisdiction of the Tribunal, *id.* at 17-19; and alternatively, (2) a request that the Tribunal change the legal seat of the arbitration back to Caracas, Venezuela, *id.* at 30-32.  In the end, the Tribunal concluded that the Ministry's repudiation of its agreement to move the legal seat of

14

the arbitration to Washington, D.C., required it to equitably reform the Contract further and establish a neutral legal seat outside of Venezuela and the United States. *Id.* at 34. It then changed the legal seat of the arbitration to Rio de Janeiro, Brazil. *Id.* at 35.

The record is clear that Huntington Ingalls and the Ministry initially agreed upon arbitration in Washington, D.C., and the Ministry later repudiated this agreement. It was reasonable for the Tribunal to conclude that there was no agreement on the location for the arbitration at that point in the process. It was also permissible and reasonable under Venezuelan law for the Tribunal to move the seat of the arbitration proceedings to another location, including Rio de Janeiro, Brazil. Article V(1)(d) of the Panama Convention permits this Court to decline to enforce an arbitration award when the "procedure has not been carried out in accordance with the terms of the agreement signed by the parties." Panama Convention, Art. V(1)(d). Here, the record reflects that the Tribunal complied with the terms of the Contract when it adhered to Venezuelan law in determining whether to change the legal seat of arbitration. Thus, there is no evidence that this constitutes the "extraordinary circumstance" where the Court should "reconsider an arbitrator's findings." *Karaha Bodas Co.*, 364 F.3d at 288. As such, the Ministry has not carried its burden of proof and has not demonstrated that the Award should not be enforced. This Court should recognize and enforce the Award of the Tribunal.

15

III. CONCLUSION

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Plaintiff Northrop Grumman Ship Systems, Inc.'s Motion [391] for Recognition and Enforcement of Arbitration Award is **GRANTED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, the Court recognizes and executes the Tribunal's arbitration Award of February 19, 2018, against The Ministry of Defense of the Republic of Venezuela.  The amount of judgment shall be equal to:

(i) The net amount of the Tribunal's Award, including interest until the date of the Award, in the amount of $128,862,457.27;

(ii) Post-award interest at 8.713% from the date of the Award until the date of this Order, in the amount of $864,539.50;

(iii) Post-judgment interest, pursuant to 28 U.S.C. § 1961, from the date of entry of final judgment in this case; and

(iv) Costs and fees.

**SO ORDERED AND ADJUDGED,** this the 31st day of March, 2020.

*s/ Halil Suleyman Ozerden*

HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE