**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**

NORTHROP GRUMMAN SHIP SYSTEMS,
INC., f/k/a INGALLS SHIPBUILDING, INC.,

       Plaintiff,

v.                               CIVIL CASE NO: 02-cv-00785-HSO-RHW

THE MINISTRY OF DEFENSE OF THE
REPUBLIC OF VENEZUELA,

       Defendant.

_____

### MEMORANUDUM OF LAW IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR RELIEF PURSUANT TO 28 U.S.C. § 1610(C) AND 28 U.S.C. § 1963

      The Ministry of Defense of the Republic of Venezuela, by and through its undersigned counsel, hereby files this Memorandum of Law in Support of its Opposition to Northrop Grumman's Motion for Relief Pursuant to 28 U.S.C. § 1610(c) and 28 U.S.C. § 1963, ECF No. 429 (the "Motion"), and states the following:

### FACTUAL AND PROCEDURAL BACKGROUND

      On December 18, 1977, Northrop Grumman, formerly known as Ingalls Shipbuilding, Inc. (hereinafter "Ingalls"), and the Ministry of Defense (the "Ministry") concluded a contract (the "Contract") to overhaul and retrofit two navy vessels. ECF No. 391-4, p.8. In case of a dispute, the parties agreed to settle their dispute through arbitration located in Caracas, Venezuela.

      After a dispute arose, the Court compelled arbitration outside Venezuela, twice, despite the parties' agreement. The second order compelling arbitration is currently on appeal at the Fifth Circuit. Case No. 20-60347.

      The second arbitration produced an award, *see* ECF No. 391-2, which this Court recently enforced on March 31, 2020 (the "Enforcement Decision"). ECF. No. 406. The Enforcement

Decision is on appeal at the Fifth Circuit as well.

Upon Ingalls' Motion, ECF No. 409, the Court entered a Final Judgment on June 4, 2020. ECF. No. 425. As of the date of this filing, 33 days have elapsed since the Final Judgment was rendered.

The Bolivarian Republic of Venezuela ("Venezuela") is not, and has never been, a party to this case or the underlying arbitration.

<u>**MEMORANDUM OF LAW**</u>

## I.   Ingalls' Motion Under § 1610(c) Should Be Denied for Failure to Comply with the Statute.

Before a foreign state's property can be attached to satisfy a judgment, the court ordering such attachment must first determine that (i) a "reasonable period of time has elapsed following the entry of judgment," and that (ii) the state has received the required notices under 28 U.S.C. 1608(e) (in the case of default judgments). 28 U.S.C. § 1608(c). The purpose of § 1610(c) is two-fold: first, to ensure that the attachment is proper under subsections (a) and (b); and second to ensure that each state has a "fair and adequate opportunity to appear and contest any attachment or execution." *Agudas Chasidei Chabad of U.S. v. Russian Federation*, 798 F.Supp.2d 260, 271 (D.D.C. 2011).[1]

What constitutes a "reasonable period of time" is a matter within the court's discretion. But instead of exercising that discretion by reference to a number of days or months, the court must

---

[1] ("As the legislative history of the FSIA makes clear, Congress was very concerned that the normal procedures for attachment and execution of judgments—which often lack formal legal process—might fail to give foreign defendants adequate notice. Section 1610(c) was therefore written into the statute as a way to ensure, through judicial review, that property and interests of foreign entities are not only not immune—which is accomplished by review of a proposed writ's consistency with §§ 1610(a)-(b)—but also that each foreign power has a fair and adequate opportunity to appear and contest any attachment or execution—which is accomplished by § 1610(c)'s notice requirement.")

consider the foreign state's "procedures, including legislation, that may be necessary for payment of a judgment by a foreign state." *Owens v. Republic of Sudan*¸ 141 F.Supp.3d 1, 8 (D.D.C. 2015) (citing H.R. Rep. No. 94-1487, at 30). The analysis will "of course vary according to the nuances of each case." *Ned Chartering and Trading, Inc. v. Republic of Pakistan*, 130 F.Supp. 2d 64, 67 (D.D.C. 2001).

### A. The Motion Seeks Relief in the Wrong Court.

Section 1608(c) limits which court can make this determination. The only court authorized to grant Ingalls' relief is the court charged with attaching the assets. Section 1608(c) reads:

> No attachment or execution referred to in subsections (a) and (b) of this section shall be permitted until the court has ordered such attachment and execution after having determined that a reasonable period of time has elapsed following the entry of judgment….

The phrase "until the court" authorizes only one court to make the determination at issue— the court ordering the attachment. *See American Bus Ass'n v. Slater*, 231 F.3d 1, 4-5 (D.C. Cir. 2000) ("The definite article 'the' particularizes the subject which it precedes. It is a word of limitation as opposed to the indefinite or generalizing force of 'a' or 'an.'"); *Freytag v. Commissioner*, 501 U.S. 868, 902 (1991) (Scalia, J., concurring) (contending that use of the definite article the Constitutional phrase "the Courts of Law" "obviously narrows the class of eligible 'Courts of Law' to those courts of law envisioned by the Constitution"). Had Congress intended to open the determination to any court, it would have used an indefinite article such as "a court," as it did throughout Section 1610. *See, e.g.*, 28 U.S.C. § 1610(g)(3) ("Nothing in this subsection shall be construed to supersede the authority of a court to prevent appropriately….").

This reading is bolstered by the object and purpose of the statute. Subsection (c) is designed to ensure that a foreign state's property interests are protected and that the state receives adequate notice prior to the attachment. *Agudas*, 798 F.Supp.2d at 271. These goals are not met however if

the question is bifurcated among different courts. If one court makes a §1610(c) determination before an attachment request is made, while another court receives the attachment request after the § 1610(c) determination is made, then the state is not ensured notice of the attachment.

Here Ingalls concedes that it is not seeking to attach any assets in this District. Motion, p. 5. Instead, Ingalls is purportedly targeting the Bolivarian Republic of Venezuela's assets in the District of Delaware, specifically "Venezuela's shareholdings…in PDV Holding." *Id*. If that is the case, then the District Court of Delaware will address whether such holdings are attachable. And to ensure proper notice, the District Court of Delaware will need to also address, pursuant to § 1610(c), whether a reasonable period of time has elapsed prior to that attachment.

**B. A Reasonable Period of Time has Not Elapsed in Light of Recent Events.**

As the movant, Ingalls bears the burden to satisfy the § 1610(c) standard. That is, Ingalls must show that a reasonable period has elapsed since the Final Judgement was rendered on June 4, 2020. But the Motion misunderstands the proper standard under § 1610(c). The focus is not on the number of days or months that have elapsed relative to other cases, but rather the amount of time that has elapsed in light of the foreign state's procedures and the particular nuances of each state. *Owens*, 141 F.Supp.3d at 8 (citing H.R. Rep. No. 94-1487, at 30); *see also Crystallex v. Bolivarian Republic of Venezuela*, 2017 WL 6349729, at *1, 2017 U.S. Dist. LEXIS 221611 (D.D.C. June 9, 2017) ("the reasonable time requirement exists because 'governments often must engage in time-consuming procedures, such as enacting laws or regulations, before judgments can be paid.'"). Ingalls does not even attempt to discuss Venezuela's procedures or its current political posture. This alone should lead the Court to deny the Motion.

What is more, the Bolivarian Republic of Venezuela is in the midst of a power struggle that affects its ability at this time to prepare for payment. On January 23, 2019, Juan Guidó declared

himself the leader of an opposition party that currently controls Venezuela's National Assembly. The Ministry on the other hand is controlled by the incumbent government led by President Nicolas Maduro. While the politics of this struggle are not relevant to the present issue, the effect of that internal struggle is relevant. *See Ned Chartering*, 130 F.Supp. at 67 ("Two days…is a mere paucity of time to even the most organized of governments, and much less time to the many less-organized governments that are covered by Foreign Sovereign Immunities Act.") (emphasis added).

The situation has been made worse by the COVID-19 pandemic. The number of COVID-19 cases and deaths are rising in the country, and the government and the opposition is focused on acquiring and maintaining the necessary resources to address the growing health crisis. Recently the government's efforts to obtain resources for aid have been stymied because of the internal power struggle.[2] Once again, removing the politics from the situation, the lack of resources and the lack of aid will create additional challenges for the state as the pandemic worsens.

In light these events, which are not mutually exclusive, the Court should not rely on the cases and time-frames cited on page 3 of the Motion. None of those determinations were made in the midst of a global pandemic that has caused over 500,000 deaths worldwide to date; nor were any of the 1610(c) decisions made against states facing an internal power struggle.

Instead, the Court must consider how much time Venezuela would need under the current circumstances. Since March, when the award was enforced, the effects of COVID-19 have worsened worldwide, and the power struggle has intensified. Under these circumstances, a reasonable period of time—approximately one month—has <u>not</u> elapsed.

---

[2] *See UK court blocks Maduro's bid to access $1 billion in Venezuelan gold*, CNN (July 2, 2020), available at https://www.cnn.com/2020/07/02/business/venezuela-bank-of-england-gold-ruling/index.html.

**C.  A Reasonable Period of Time has Not Elapsed Based on Prior Precedent.**

At the time of filing this Response, a mere 33 days have elapsed since the final judgment was rendered on June 4, 2020. As discussed above, the court must determine whether a reasonable period of time has elapsed based on the individual circumstances of the case⸺not a comparison of multiple cases. But even when compared to other cases, the amount of time here is less than almost every case cited in the Motion,[3] and Ingalls does not account for the difference.  *See also Owens¸* 141 F.Supp. at 9 (three months); *Crystallex*, 2017 WL 6349729, at *1, 2017 U.S. Dist. LEXIS 221611 (two months).

Moreover, even if a comparison of cases is appropriate, the number of days is not the only factor to consider. Courts must also consider the governments being compared. *See Ned Chartering*, 130 F.Supp. at 67 (comparing organized and less-organized governments). The Motion is silent however in this regard. For instance, the Motion cites to the decision in *Elliott Assocs., L.P. v. Banco de la Nacion* (Peru), 2000 U.S. Dist. LEXIS 15649 (S.D.N.Y. June 22, 2000), where the court granted § 1610(c) relief after ten days. But the Motion fails to say anything about whether Peru and Venezuela should be compared side-by-side; indeed they should not. A payment from a bank is much simpler than a ministry, which can longer appropriations and budgeting timelines. Once again, the Motion fails to consider the nuances of each case, although it recognizes that such nuances are to be considered. Motion, p. 3.

**II.     Ingalls' Motion Does Not Meet the Requirements Under 28 U.S.C. § 1963**

**A.  The Standard Under 28 U.S.C. § 1963**

Ingalls' motion pursuant to 28 U.S.C. § 1963 is also improper. Section 1963 provides that

---

[3] The exception is *Elliott Assocs., L.P. v. Banco de la Nacion* (Peru), 2000 U.S. Dist. LEXIS 15649 (S.D.N.Y. June 22, 2000), which, for the reasons above, is distinguishable based on the character of the two states involved.

"a judgment in an action for the recovery of money…entered in any…district court…may be registered by filing a certified copy of the judgment in any judicial district, when the judgment has become final by appeal or expiration of the time for appeal." 28 U.S.C.A. § 1963. But when an appeal is pending, a judgment will only be registered only upon finding a good cause. *See Right of Way Maint. Co. v. Gyro-Trac, Inc*., 2007 WL 9747391, at *1 (S.D. Tex. Oct. 31, 2007) *citing* to *Chicago Downs Ass'n, Inc. v. Chase,* 944 F.2d 366, 372 (7th Cir.1991) ("The statute calls on a district judge to make 'good cause' findings while an appeal is pending."); *Park v. Hudson*, 2018 WL 8804823, at *1–2 (C.D. Ill. Nov. 26, 2018) ("The judgment in this case is on appeal, making registration possible only when ordered by the court that entered the judgment for good cause shown."); *Non-Dietary Exposure Task Force v. Tagros Chemicals India, Ltd*., 309 F.R.D. 66, 69 (D.D.C. 2015). Good cause is said to exist if a judgment creditor makes a "showing" that "the defendant has substantial property in the other district and insufficient in the rendering district to satisfy the judgment." David D. Siegel, *Commentary on 1988 Revision*, 28 U.S.C. § 1963 (West.Supp.1989); *Right of Way Maint. Co.*, 2007 WL 9747391, at *1 (S.D. Tex. Oct. 31, 2007) *citing* to *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 2002 WL 32107930, *1 (S.D.Tex. Feb. 20, 2002).

Ingalls has failed to establish good cause for the reasons outlined below.

## B. The Ministry and the Bolivarian Republic of Venezuela Are Separate Juridical Entities

An entity or instrumentality of a foreign state is presumed to be separate and independent from the foreign state. *See Flatow v. Islamic Republic of Iran*, 308 F.3d 1065, 1070 (9th Cir. 2002) ("even though an entity or instrumentality is wholly-owned by a foreign state, the entity is accorded the presumption of independent and separate legal status."); *First Nat. City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 626–27, (1983) ("government instrumentalities

established as juridical entities distinct and independent from their sovereign should normally be treated as such."); *DRC, Inc. v. Republic of Honduras*, 71 F. Supp. 3d 201, 208 (D.D.C. 2014). Therefore, an "instrumentality's assets and liabilities must be treated as distinct from those of its sovereign" *First Nat. City Bank*, 462 U.S. at 625. A ministry of a state enjoys the same treatment. *See Wye Oak Tech., Inc. v. Republic of Iraq*, 2018 WL 5983385, at *16 -18 (D.D.C. Nov. 14, 2018) (affirming that the Republic of Iraq and the Ministry of Defense of the Republic of Iraq are separate juridical persons and, hence, the Republic is not bound by the contract concluded between the Ministry and Wye Oak).

The presumption of legal separateness can only be overcome where it "is interposed to defeat legislative policies" or would otherwise "work fraud or injustice." *De Letelier v. Republic of Chile*, 748 F.2d 790, 794 (2d Cir. 1984) citing to *First Nat. City Bank,* 462 U.S. at 628. The burden of rebutting the presumption rests on the party claiming lack of separation. *See De Letelier v. Republic of Chile*, 748 F.2d 790, 795 (2d Cir. 1984) ("Plaintiffs had the burden of proving that LAN was not entitled to separate recognition."); *Wye Oak Tech., Inc.*, 2018 WL 5983385, at *18.

Here, there is no good cause to grant Ingalls' motion. Ingalls does not claim that the Ministry has substantial assets in the District of Delaware, the registration forum. *See* ECF No. 430, p.5; Declaration of Alexander A. Yanos. Rather, the crux of its motion is that Venezuela has no asset in the Southern District of Mississippi but "has assets in the District of Delaware−specifically <u>Venezuela's shareholdings</u>, through its state oil company and *alter ego* Petróleos de Venezuela S.A ("PDVSA")—in PDV Holding ("PDVH"), the indirect parent of CITGO Petroleum ("CITGO")." ECF No. 430, p.5 (emphasis added). Ingalls' attempt to conflate the Ministry with Venezuela finds no support. As initially recognized by Ingalls, Venezuela was not party to the Contract. *See* ECF No. 391-4., p3; ECF 1, ¶ 1. Nor was it a party to the arbitration

that resulted in the Award. *See* ECF No. 391-6, ¶ 71. Indeed, the Tribunal further found that "there is no trace of the exercise by the Republic of its "*ius imperium* [sovereign power]" in connection with the Contract." *Ibid*.   The Court also recognized the distinction between the Ministry and Venezuela. Despite Ingalls' repeated suggestion that Venezuela is Defendant in the case, the Court in its judgments affirmed that only the Ministry is a party to the case. *See* e.g., ECF No. 409, p.2; ECF No. 425, ECF No. 406. Yet, Ingalls is undeterred by its failure. Referring to Venezuela as a party to the case, it claims to have established good cause because Venezuela has an asset in Delaware. ECF No. 430. But Ingalls does not explain why the Court should abolish the presumption of separateness between these two entities. Accordingly, the Court should find there is no good cause to permit Ingalls to register the judgment in the District of Delaware.

### C.   Venezuela As Controlled by the De-recognized Government Does Not Have an Asset in the District of Delaware

Ingalls' motion also failed to consider the political context in Venezuela and the decision passed in the District of Delaware. Had Ingalls conducted the necessary due diligence, it would have found that Venezuela, as governed by the *de facto* government of President Nicolas Maduro, does not currently have any control over PDV Holding and its subsidiary Citgo Petroleum.

On January 23, 2019, Juan G. Guaidó invoked art. 233 of the Venezuelan Constitution and declared himself the Interim President of Venezuela. *See* Venezuelan National Assembly (the "National Assembly"), *Estatuto que rige la Transición a la Democracia para Restablecer la Vigencia de la Constitución de la República Bolivariana de Venezuela* (Feb. 5, 2019) (the "Statute"). *See* **Exhibit A**. Thereafter, President Trump issued a statement (the "Trump Statement"), recognizing Mr. Guaidó as the Interim President of Venezuela.[4]

---

[4] *See* Press Statement, U.S. Dep't of State, Continuing U.S. Diplomatic Presence in Venezuela (Jan. 23, 2019) *available at* https://www.state.gov/continuing-u-s-diplomatic-presence-in-venezuela/

On February 5, 2019, the National Assembly adopted a Statute to Govern a Transition to Democracy to Reestablish the Validity of the Constitution of the Republic of Venezuela (the "Transition Statute"). *See id*. Relying on the Statue, Mr. Guaido appointed a new *ad hoc* PDVSA board "for the purpose of carrying out all necessary actions to appoint a Board of Directors" for PDV Holding." *See* **Exhibit B**. On February 13, 2019, the National Assembly approved this action by resolution. *See* **Exhibit C**. The following day, the Venezuelan Constitutional Court declared the appointment as well as the resolution null and void. *See* **Exhibit D**, pp. 1,8, 9. But unhindered by the Court's decision, the PDVSA *ad hoc* board elected a new board for PDV Holding. *See* **Exhibit E**.

In June 2019, the board members of PDV Holding, Citgo Holding, and Citgo Petroleum Corporation, as appointed by the *de facto* government of Venezuela, contested the *ad hoc* board's action before the Chancery Court of Delaware. *See Jimenez v. Palacios*, No. CV 2019-0490-KSJM, (June 25, 2019), Complaint, **Exhibit F**. However, the Chancery Court dismissed their action, noting that the act of the Guaido government was valid as it emanated from a government recognized by the President of the United States. *See Jimenez v. Palacios*, No., 2019 WL 3526479, at *1 (Del. Ch. Aug. 2, 2019), *as revised* (Aug. 12, 2019), p.2.  While plaintiffs have appealed this decision to the Supreme Court of Delaware, as of today, Venezuela as controlled by the *de facto* government, has no control or ownership of these entities which Ingalls basis to seek registration. *See Jiménez v. Palacios,* Notice of Appeal, No. 399,2019, **Exhibit G**. In light of this circumstance, its request to register its judgment in Delaware should be rejected.

### D.  Ingalls Has Not Shown Urgency for Granting its 28 U.S.C. § 1963 Motion

In a desperate attempt to show good cause, Ingalls portrays a false sense of urgency. It argues that the judgment must be urgently registered for two reasons. First, Ingalls claims that there are multiple judgment creditors seeking to execute against Venezuela's assets in Delaware. ECF No. 430, pp 6-8. As noted above, this is irrelevant. The Ministry and Venezuela are separate entities and Ingalls has not established why the Court should yield the presumption of separateness.

Second, Ingalls submits that Venezuela is "unwilling[] to honor its obligation." ECF No. 430, p.8. It argues that Venezuela has "consistently sought to avoid paying compensation that it owes to foreign claimants under international arbitration awards." ECF No. 429-1, ¶ 4.  In support of its claim, Ingalls lists out 9 enforcement proceedings against Venezuela pending in different district courts of the United States. See. *Id*., pp 2-4. But this does not help Ingalls' submission. These cases are against Venezuela and not the Ministry. In addition, the cases do not show that Venezuela has "sought to avoid" payment. It shows the opposite. The cases indicate that Venezuela, pursuant to its obligation under the ICSID Convention, is participating in U.S. enforcement proceedings brought by award creditors under the Foreign Sovereign Immunities Act (the "FSIA"). Nothing more can be read from the listed cases. Ingalls also ignores the fact that Venezuela has settled various arbitration awards, including the awards issued in favor of Gold Reserve and Rusoro.[5] Hence, Ingalls' assertion of urgency should be rejected.

### E.  Ingalls had not Conferred with the Ministry's Counsel Prior to Filing the Motion

A movant must confer with the opposing counsel prior to filing a non-dispositive motion.

---

[5] *See Brisas Arbitral Award*, Gold Reserve Inc., available at https://www.goldreserveinc.com/international-arbitration-new/; *Rusoro and Venezuela reaches billion-dollar settlement*, GAR (October 12, 2018) available at https://globalarbitrationreview.com/article/1175582/rusoro-and-venezuela-reach-billion-dollar-settlement

*See* MS R USDCT L.U.Civ.R. 7(10) ("a non-dispositive motions must advise the court whether there is opposition to the motion."). Failure to comply with this requirement can lead to the denial of the motion. *Kent v. International Paper Company et a*l, 3:17-cv-00350-DPJ-JCG, Text Order, April 27, 2018 (S.D. Miss.) (denying the motion to extend the settlement conference "for noncompliance with L.U.Civ.R. 7(b)(10), which provides that all non-dispositive motions must advise the Court whether there is opposition to the motion. "); *Gartman v. Panera, LLC*, 3:18-cv-00626, Text Order, January 14, 2019 (S.D.Miss.) ("denying without prejudice Defendant's Motion to Amend Scheduling Order for noncompliance with the Local Uniform Civil Rules…7(b)(10).") *Cantor v. Sienna on the Coast Condominium Owners Association, Inc. et al*, 1:17-cv-00239, Text Order, March 28, 2018 (S.D.Miss.) ("denying Plaintiff's Motion to Stay Proceedings for noncompliance with L.U.Civ.R. 7(b)(10)"

Ingalls has failed to adhere to this requirement. Prior to filing this motion, Ingalls had not reached out to the Ministry's Counsel. Accordingly, and consistent with its previous practice, the Court should decline Ingalls' motion.

<u>C<small>ONCLUSION</small></u>

For the reasons set out above, the Ministry respectfully requests that the Court deny the Motion and grant any other relief it deems proper and just.

Respectfully submitted,
*/s/ Quinn Smith*
**GST LLP**
Rodney Quinn Smith
Fla. Bar No. 59523
*Admitted pro hac vice*
e-mail: quinn.smith@gstllp.com
1111 Brickell Avenue
Suite 2715
Miami, Florida 33131
(T) (305) 856-7723
(F) (305) 856-7724

## CERTIFICATE OF SERVICE

I hereby certify that on July 7, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF filing system. I also certify that the foregoing document is being served this date on all counsel of record or pro se parties on the Service List below in the manner specified, either via transmission of Notices of Electronic Filing generated by the CM/ECF system or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: s/ Rodney Quinn Smith
Rodney Quinn Smith
Fla. Bar No. 59523
*Admitted pro hac vice*

## SERVICE LIST

Joseph F. Coyne - PHV, Jr.
Sheppard, Mullin, Richter & Hampton
333 South Hope St., 48th Floor
Los Angeles, CA 90071
Email: jcoyne@sheppardmullin.com

Kenneth A. O'Brien - PHV, Jr.
Sheppard, Mullin, Richter & Hampton
333 South Hope St., 43rd Floor
Los Angeles, CA 90071
213-617-5402
Fax: 213-443-2805
Email: kaobrien@smrh.com

Richard P. Salloum
Franke & Salloum, PLLC
P. O. Drawer 460
10071 Lorraine Road (39503)
Gulfport, MS 39502
228/868-7070

Fax: 22868-7090
Email: rps@frslaw.com
Alexander Yanos - PHV
Alston & Bird, LLP - New York
90 Park Avenue
New York, NY 10016
212-210-9400
Email: alex.yanos@alston.com

Carlos Ramos-Mrosovsky - PHV
Alston & Bird, LLP - New York
90 Park Avenue
New York, NY 10016
212-210-9400
Email: carlos.ramos-mrosovsky@alston.com